**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**DAVID YANOFSKY**
582 Market Street
Suite 314
San Francisco, California 94104

       Plaintiff,

    v.

**UNITED STATES DEPARTMENT
OF COMMERCE**
1401 Constitution Avenue, NW
Washington, D.C. 20230

       Defendant.

Civil Action No. _____

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

David Yanofsky ("Plaintiff" or "Mr. Yanofsky"), by and through his undersigned

counsel, hereby alleges as follows:

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552

("FOIA"), for declaratory, injunctive, and other appropriate relief brought by David Yanofsky, a

journalist and staff reporter for Quartz (qz.com), a digital news publication of The Atlantic

Monthly Group, Inc.

2.     By this action, Plaintiff seeks to compel the Department of Commerce ("DOC" or

"Defendant") to comply with its obligations under FOIA to release records concerning foreign

travel to and from the United States that Mr. Yanofsky requested in connection with his

reporting.  Despite acknowledging that the records requested by Plaintiff are agency records

subject to FOIA, Defendant has unlawfully withheld the requested records by, *inter alia*,

unlawfully denying Plaintiff's request for a fee waiver and informing Plaintiff that he would

1

have to purchase the requested records at a cost of at least $173,775.00, an amount far in excess of the fees Defendant is permitted to charge under FOIA.

## PARTIES

3.      Plaintiff David Yanofsky is a journalist and reporter for Quartz (qz.com), a digital publication of The Atlantic Monthly Group, Inc.  His reporting is primarily data-driven, relying on the analysis of datasets to identify newsworthy trends and to otherwise gather the news and report on matters of public interest and concern.  Mr. Yanofsky reports extensively on issues relating to travel and tourism for Quartz.  For example, he has written news stories concerning airport security screening by the Transportation Security Administration ("TSA"), a U.S. Department of Justice ("DOJ") investigation into possible airfare price collusion, the potential spread of the Zika virus as a result of international travel, technical problems that interfere with airline operations, the increased volume of passenger air travel within the United States, and trends in foreign travel to the United States.  *See* David Yanofsky, *"TSA is our No. 1 problem right now": Long security lines are frustrating US airlines, too*, Quartz, Apr. 12, 2016, at http://qz.com/659461; David Yanofsky, *The TSA can now require you to be body scanned*, Quartz, Dec. 24, 2015, at http://qz.com/581525; David Yanofsky, *The United States is investigating airfare price collusion*, Quartz, July 1, 2015, at http://qz.com/443028; David Yanofsky, *Zika is just one flight away from these 57 countries*, Quartz, Jan. 30, 2016, at http://qz.com/605711; David Yanofsky, *Tech glitches keep plaguing US airlines.  This dashboard keeps track of them all.*, Quartz, Oct. 29, 2015, at http://qz.com/535967; David Yanofsky, *More people are flying in the US than ever before*, Quartz, Jan. 5, 2016, at http://qz.com/585887; David Yanofsky, *More than a third of Brazilians who travel to the US go to the happiest place on earth*, Quartz, Sept. 27, 2013, at http://qz.com/128367.

4.      Defendant United States Department of Commerce is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiff seeks.  The International Trade Administration ("ITA") is a bureau within the DOC.  The National Travel and Tourism Office ("NTTO") and the Office of Travel and Tourism Industries ("OTTI") are offices within the ITA. Among other duties, NTTO and OTTI manage the Visitors Arrival Program ("I-94 Program") and the United States International Air Traveler Statistics Program ("I-92 Program").  The DOC's headquarters is located at 1401 Constitution Avenue NW, Washington, D.C. 20230.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

7.      As alleged in detail below, in February 2016 Mr. Yanofsky filed a FOIA request (the "Request") with the DOC seeking data files and associated technical documentation related to the I-94 Program and I-92 Program.  In the Request, Mr. Yanofsky sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

8.      In March 2016 the DOC denied the Request.  It claimed that the records sought by Mr. Yanofsky must be purchased through NTTO, an office within the DOC, and are "not available under the FOIA[.]"  On information and belief, it would cost Plaintiff at least $173,775.00 to purchase the records he has requested.

9.      The records that Mr. Yanofsky has requested are sought in connection with his reporting on matters of public interest and concern relating to foreign travel to and from the

United States.  Among other things, as described in more detail below, the requested records

provide information about foreign tourists, immigrants, and U.S. nationals entering the United

States—such as their countries of origin, points of entry, and intended destinations within the

United States—which is of public interest.  In addition, the requested records contain data used

by the DOC and other government agencies to calculate and publish official estimates and

projections related to foreign travel and tourism—official estimates and projections that Plaintiff

seeks to evaluate and whose accuracy is central to public understanding of these programs.  The

records requested by Plaintiff also inform government decision making on other matters of

public concern, such as visa allocations, infrastructure at ports and border crossings, and

strategies to ease the entry and exit process for visitors to and from the United States; access to

those records will thus enable Plaintiff to inform the public of the basis for those government

decisions.  Finally, the requested records will allow Plaintiff to report on the type of information

the federal government collects and shares about foreign travelers to and from the United States,

whether it collects and shares that information effectively, and whether the DOC is effectively

managing the I-92 and I-94 Programs.

**The DOC's I-94 Program**

10.     Through its I-94 Program, the DOC prepares and publishes certain reports related

to overseas non-United States resident visitor arrivals to the United States, as well as visitors

from Mexico and Canada, using data derived from Department of Homeland Security ("DHS")

Form I-94 arrival records and other records.  Plaintiff is informed and believes that the I-94

Program is the only source for certain information about foreign visitors' arrivals to the United

States by country of residency based on Form I-94 arrival records.

11.     The Customs and Border Patrol ("CBP"), a component of DHS, issues Form I-94

to most foreign visitors who are lawfully admitted to the United States and to foreigners who

change immigration status while in the United States.  Form I-94 documents reflect certain information about foreign visitors, such as the visitor's arrival and departure dates, lawful admission, evidence of the approved length of her or his stay and terms of admission to the United States, biographical information, visa and passport information, and the address and phone number where the visitor can be reached while in the United States.

12.     DHS provides the DOC with raw data collected from Form I-94 records on an at least monthly basis.  Once the data is received, the DOC retains, analyzes, and manipulates the data to create various reports and publications, some of which it sells for a fee.  For example, each month, the DOC analyzes the data and creates and publishes a report entitled *Summary of International Travel to the United States*, which consists of 35 tables providing information about foreign visitors to the United States.  The DOC sells monthly, quarterly, and annual subscriptions to this report for a fee.

13.     In addition to the *Summary of International Travel to the United States*, the DOC also maintains a data file called "Air Arrivals I-94 Database (Detail Arrival Records)" (the "I-94 Data File"), which consists of anonymized data about foreign visitors to the United States.

14.     The DOC sells CD-ROMs with quarterly or annual publications of its I-94 Data File for a fee.  It maintains websites on which it lists the prices for CD-ROMs of current and historical I-94 Data Files.  According to these websites, CD-ROMs of the 2015, 2014, 2013, 2012, and 2011 I-94 Data Files cost $13,820.00, $13,165.00, $12,780.00, $12,170.00, and $10,165.00, respectively.

**The DOC's I-92 Program**

15.     The DOC creates and publishes statistical data about air traffic between the United States and other countries through its I-92 Program.  It uses data from Advanced

Passenger Information System ("APIS") arrival/departure records, formerly known as I-92 arrival/departure records, to create reports and other publications as part of its I-92 Program.

16.     As part of its I-92 Program, the DOC analyzes the APIS data and creates and publishes the *U.S. International Air Travel Statistics Report* on a monthly, quarterly, and annual basis.  This report consists of tables providing detailed statistical information about the volume of passenger travel between the United States and other countries, broken out by United States citizen and non-United States citizen air traffic, carriers, scheduled and charter flights, United States and foreign gateway airports, and countries and regions.  The DOC sells single issues or annual subscriptions to the monthly or quarterly reports, as well as a subscription to the annual report, for a fee.

17.     In addition to the *U.S. International Air Travel Statistics Report*, the DOC also maintains and utilizes a data file related to the report (the "I-92 Data File"), which consists of anonymized data about air traffic between the United States and other countries.

18.     The DOC sells I-92 Data Files for a fee.  It maintains websites on which it lists the prices for the current and historical I-92 Data Files.  I-92 Data Files can be purchased either "for internal use only" or "for resale."  According to the DOC's website, the 2015, 2014, 2013, 2012, and 2011 I-92 Data Files, if purchased "for internal use only," cost $23,745.00, $23,280.00, $22,600.00, $21,540.00, and $20,510.00, respectively.

## Plaintiff's Prior FOIA Request

19.     On March 10, 2015, Plaintiff sent a FOIA request via email to ITA, a bureau within DOC, seeking access to and copies of the I-94 Data Files and the I-92 Data Files for 2011, 2012, 2013, and 2014, and their associated technical documentation (the "Prior Request").  Plaintiff requested that the records be provided in electronic format.  A true and correct copy of the Prior Request is attached hereto as Exhibit A and incorporated by reference herein.

20.     In the Prior Request, Plaintiff sought both a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

21.     The Prior Request complied with all applicable DOC regulations regarding the submission of FOIA requests.

22.     On May 26, 2015, having received no response from the DOC, Plaintiff contacted the Office of Government Information Services ("OGIS") for assistance regarding the Prior Request.  From June 4, 2015 to June 25, 2015, Plaintiff communicated via email with Christa Lemelin, OGIS Facilitator, about the status of the Prior Request.

23.     In a letter from Justin Guz, FOIA Officer (hereinafter "Mr. Guz") dated June 24, 2015, the DOC denied the Prior Request (the "Prior Request Denial Letter").  A true and correct copy of the Prior Request Denial Letter is attached hereto as Exhibit B and incorporated by reference herein.

24.     The Prior Request Denial Letter stated that the DOC denied the request for the I-94 Data Files because they are maintained by CIC Research, Inc., not ITA.  The Prior Request Denial Letter further stated that the DOC denied the request for the I-92 Data Files because "records which are published and offered for sale are excluded from the definition of subsection 5 U.S.C. § 552(a)(2) records and need not be proactively disclosed even if doing so would otherwise be required."  The Prior Request Denial Letter also stated that NTTO, an office within the DOC, "can help you obtain the records you seek" and enclosed an NTTO Publications Order Form.

**Plaintiff's Administrative Appeals from the DOC's Denial of the Prior Request**

25.     On July 2, 2015, Mr. Yanofsky submitted an administrative appeal from the denial of his Prior Request via email to the DOC (the "July 2 Administrative Appeal").  A true

and correct copy of the July 2 Administrative Appeal is attached hereto as Exhibit C and

incorporated by reference herein.

26.    In the July 2 Administrative Appeal, Plaintiff argued that the DOC maintains the

I-94 Data Files, that FOIA obligates the DOC to release the I-92 Data Files, and that the DOC

had not fulfilled its obligation to do so by making the I-92 Data Files available for sale.  In

addition, Plaintiff renewed his request for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

Plaintiff stated that he does not have a commercial interest in the records and that he is gathering

information on a matter of current interest to the public, namely, the manner in which tourism

and travel affect the United States economy.

27.    By letter dated November 17, 2015 from Benjamin Friedman, Assistant General

Counsel for Litigation, Employment, and Oversight, the DOC denied the July 2 Administrative

Appeal (the "July 2 Administrative Appeal Denial").  A true and correct copy of that denial is

attached hereto as Exhibit D and incorporated by reference herein.

28.    The July 2 Administrative Appeal Denial acknowledged that Plaintiff "correctly

argue[s] that the I-94 records are in fact 'agency records' for FOIA purposes" and that "the I-92

records cannot properly be withheld under 5 U.S.C. § 552(a)(2)."

29.    The July 2 Administrative Appeal Denial nevertheless stated that Plaintiff's

appeal was being denied on an "alternative basis."  Specifically, it stated that the requested

records were being withheld pursuant to 5 U.S.C. § 552(a)(4)(A)(vi) ("the Displacement

Provision").  The July 2 Administrative Appeal Denial stated that the Displacement Provision

"provides that FOIA fees are superseded by 'fees chargeable under a statute specifically

providing for setting the level of fees for particular types of records'" and that 15 U.S.C § 1525

is such a statute with regard to the records requested by Plaintiff.  It concluded by saying that

that the records requested by Mr. Yanofsky "are not available under the FOIA" pursuant to the Displacement Provision and must instead be purchased through NTTO.

30.     The July 2 Administrative Appeal Denial did not address Plaintiff's request for a fee waiver.  It stated: "Additionally, because no records are being released in response to this appeal, there is no need to address your request for a fee waiver."

31.     On November 30, 2015, Plaintiff informed OGIS that his July 2 Administrative Appeal had been denied.

32.     On December 14, 2015, Plaintiff, through Marisa Johnson, counsel to The Atlantic Monthly Group, Inc., submitted a second administrative appeal from the denial of his Prior Request to the DOC by mail (the "December 14 Administrative Appeal").  A true and correct copy of the December 14 Administrative Appeal is attached hereto as Exhibit E and incorporated by reference herein.

33.     Plaintiff submitted the December 14 Administrative Appeal to address the DOC's denial of the Prior Request on the basis of the Displacement Provision, a purported ground for denying Plaintiff's Prior Request which had been raised by the DOC for the first time in its July 2 Administrative Appeal Denial.  Writing on behalf of Plaintiff, Ms. Johnson stated in the December 14 Administrative Appeal that the Displacement Provision did not excuse the DOC from FOIA's fee waiver requirements and, in any event, that 15 U.S.C. § 1525 "does not constitute a superseding fee statute" under the Displacement Provision.

34.     In addition, the December 14 Administrative Appeal argued that even if 15 U.S.C. § 1525 applies to the requested records, the fees demanded for the requested records exceed the fees permissible under 15 U.S.C. § 1525.  Plaintiff calculated that, under the fees set forth on the DOC's website for the I-92 Data Files and I-94 Data Files, the records sought by the Prior Request would cost $136,210.00.

35.     On December 14, 2015, Ms. Johnson, on behalf of Plaintiff, sent a copy of the December 14 Administrative Appeal to OGIS via email and requested that OGIS provide Plaintiff with assistance with the Prior Request.

36.     By letter dated December 28, 2015 from Mr. Friedman, the DOC refused to consider the December 14 Administrative Appeal ("December 14 Administrative Appeal Denial").  A true and correct copy of the that denial is attached hereto as Exhibit F and incorporated by reference herein.

37.     The December 14 Administrative Appeal Denial stated that the the DOC's earlier denial of Plaintiff's July 2 Administrative Appeal was the DOC's "final administrative action on the matter" and that Plaintiff was not entitled to a new appeal.

38.     On February 11, 2016, Hirsh Kravitz, Attorney-Advisor at OGIS, contacted Ms. Johnson and stated that OGIS would "reach out to the agency and inquire about [Plaintiff's] case."

39.     On February 24, 2016, Plaintiff received, via email, a letter from James V.M.L. Holzer, Director of OGIS, in response to Plaintiff's request for assistance.  The letter stated that OGIS could offer no further assistance and would close Plaintiff's case.

**Plaintiff's February 26, 2016 FOIA Request**

40.     On February 26, 2016, Plaintiff, through Ms. Johnson, sent a second FOIA request to the DOC (the "Request").  Ms. Johnson emailed the Request on Plaintiff's behalf as an attachment to an email addressed to FOIA@trade.gov.  True and correct copies of Ms. Johnson's email transmitting Plaintiff's Request and of the Request are attached hereto as Exhibits G and H, respectively, and incorporated by reference herein.

41.     As with the Prior Request, the Request sought access to and copies of the I-94 Data Files and the I-92 Data Files and their associated technical documentation.  Specifically,

Mr. Yanfosky requested access to and copies of OTTI's "Air Arrivals I-94 Annual Datafile" from 2015, 2014, 2013, 2012 and 2011 and their associated technical documentation.  Mr. Yanofsky also requested access to and copies of OTTI's "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files" for 2015, 2014, 2013, 2012 and 2011 and their associated technical documentation.  Plaintiff requested that the records be provided in electronic format.

42.     In the Request, Mr. Yanofsky sought both a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

43.     In support of Plaintiff's request for a fee waiver, the Request stated, first, that the requested records shed light on the operations and activities of the DOC and other government agencies and provided specific examples.  Second, the Request stated that disclosure of the requested records is likely to contribute significantly to the public's understanding of the operations of the DOC and other government agencies because the records "provide the only source of data collected about foreign travel and tourism based on Form I-94 and [APIS] arrival/departure records."  Finally, the Request stated that the records are not requested primarily for Plaintiff's financial benefit but rather for use in connection with Plaintiff's reporting for Quartz.

44.     The Request acknowledged that the DOC previously denied the Prior Request and concluded that Plaintiff must pay the fees set forth on the DOC's website in order to obtain the requested records.  Based on the fees set forth on the DOC's website for the I-92 Data Files and I-94 Data Files, Plaintiff calculated that the Request, which included records from 2015, would cost $173,775.00.

45.     As part of the Request, Plaintiff attached and incorporated by reference his December 14 Administrative Appeal that is attached hereto as Exhibit E, and asked that the DOC

11

consider the arguments raised in that December 14 Administrative Appeal when determining whether to grant or deny the Request.

46.     The Request complied with all applicable DOC regulations regarding the submission of FOIA requests.

### Plaintiff's First Administrative Appeal

47.     The DOC did not respond to Plaintiff's Request within twenty business days of its submission.

48.     On March 28, 2016, Ms. Johnson submitted, on Mr. Yanofsky's behalf, an administrative appeal of the DOC's failure to respond to the Request within twenty business days, as required by FOIA (the "First Administrative Appeal").  A true and correct copy of the First Administrative Appeal is attached hereto as Exhibit I and incorporated by reference herein.

49.     The First Administrative Appeal reiterated Plaintiff's requests for a fee benefit and fee waiver, as well as Plaintiff's request that the DOC consider the arguments raised in the December 14 Administrative Appeal attached to the Request when determining whether to grant or deny it.

50.     One day later, on March 29, 2016, by letter from Mr. Friedman, the DOC responded to the First Administrative Appeal (hereinafter the "First Administrative Appeal Denial").  A true and correct copy of that letter is attached hereto as Exhibit J and incorporated by reference herein.

51.     The First Administrative Appeal Denial stated that the First Administrative Appeal was not a "proper appeal" because the DOC had not received the Request, and, as a result, had not denied it.  The First Administrative Appeal Denial stated that Mr. Friedman was redirecting the Request to ITA for response.

## Defendant's Response to the Request

52.     On or about March, 30, 2016, Plaintiff received a letter from Mr. Guz on behalf

of the DOC denying the Request (the "Denial Letter").  A true and correct copy of the Denial

Letter is attached hereto as Exhibit K and incorporated by reference herein.

53.     The Denial Letter stated that the requested records were being "withheld under 5

U.S.C. § 552(a)(4)(A)(vi)"—the Displacement Provision—and that 15 U.S.C § 1525 acts as a

superseding fee statute with regard to the requested records.  The Denial Letter further stated that

the requested records "are not available under the FOIA pursuant to the displacement

provision[,]" and must instead be purchased through NTTO.

54.     The Denial Letter did not substantively address Plaintiff's request for a fee

waiver.  It stated: "As for your request for a fee waiver, there are no fees to charge in processing

this request."

## Plaintiff's Second Administrative Appeal

55.     On March 31, 2016, Ms. Johnson submitted an administrative appeal regarding

the DOC's denial of the Request on Mr. Yanofsky's behalf via email to FOIAAppeals@doc.gov

(the "Second Administrative Appeal").  A true and correct copy of the Second Administrative

Appeal is attached hereto as Exhibit L, and incorporated by reference herein.

56.     The Second Administrative Appeal appealed the DOC's determination that the

requested records are properly withheld pursuant to the Displacement Provision and the DOC's

failure to grant Plaintiff a fee waiver.  It argued that the requested records cannot be withheld

pursuant to the Displacement Provision for three reasons:  first, 15 U.S.C. § 1525 does not

qualify as a superseding fee statute for purposes of FOIA's Displacement Provision; second,

even assuming, *arguendo*, that 15 U.S.C. § 1525 is a superseding fee statute, the Displacement

Provision does not permit an agency to withhold records; and third, the Displacement Provision

13

applies only to FOIA's fee *setting* requirements and not to FOIA's fee *waiver* requirements. Finally, the Second Administrative Appeal again set forth the reasons Plaintiff is entitled to a fee waiver.

57.     On April 8, 2016, Plaintiff received an email from the DOC confirming receipt of the Second Administrative Appeal on March 31, 2016.

58.     As of the filing of this Complaint, Plaintiff has received no further communication from Defendant concerning Plaintiff's Second Administrative Appeal or the Request.

## CAUSES OF ACTION

### Count I

**Violation of FOIA for Unlawful Withholding of Agency Records**

59.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 58 as though fully set forth herein.

60.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

61.     Plaintiff's Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

62.     Defendant failed to provide access to or copies of records responsive to Plaintiff's Request, in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

63.     Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to his Request.  5 U.S.C. § 552(a)(6)(C)(i).

### Count II

**Violation of FOIA for Failure to Grant Fee Waiver**

64.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 58 as though fully set forth herein.

65.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

66.     Plaintiff's Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

67.     Plaintiff's Request sets forth facts establishing that he is entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

68.     Defendant unlawfully refused to grant Plaintiff's request for a fee waiver.

69.     Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to his Request.  5 U.S.C. § 552(a)(6)(C)(i).

## Count III

### Violation of FOIA for Improper Assessment of Fees
### by Improper Application of 5 U.S.C. § 552(a)(4)(A)(vi) and 15 U.S.C. § 1525

70.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 58 as though fully set forth herein.

71.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

72.     Plaintiff's Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

73.     FOIA provides that "nothing in [5 U.S.C. § 552(a)(4)(A)] shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records."  5 U.S.C. § 552(a)(4)(A)(vi).

74.     15 U.S.C. § 1525 states, in part, that the "Secretary of Commerce is authorized, upon the request of any person, firm, organization, or others, public or private, to make special studies on matters within the authority of the Department of Commerce; to prepare from its records special compilations, lists, bulletins, or reports; to perform the functions authorized

by section 1152 of this title; and to furnish transcripts or copies of its studies, compilations, and other records; upon the payment of the actual or estimated cost of such special work."

75.     15 U.S.C. § 1525 is not "a statute specifically providing for setting the level of fees for particular types of records" within the meaning of 5 U.S.C. § 552(a)(4)(A)(vi).

76.     15 U.S.C. § 1525, which "authorize[s]" the Secretary of Commerce "upon the request of any person, firm, organization, or others, public or private" to undertake "special work" does not apply to the records requested by Plaintiff.

77.     Citing 5 U.S.C. § 552(a)(4)(A)(vi) and 15 U.S.C. § 1525, Defendant has unlawfully refused to process Plaintiff's Request, and seeks to require Plaintiff to pay fees in excess of $170,000 to obtain the records sought by Plaintiff's Request, in violation of FOIA.

78.     Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to his Request.  5 U.S.C. § 552(a)(6)(C)(i).

## Count IV

### Violation of FOIA for Failure to Grant News Media Fee Status

79.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 58 as though fully set forth herein.

80.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

81.     Plaintiff's Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

82.     Plaintiff's Request sets forth facts supporting a determination that he is a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II).

83.     Defendant failed to make a determination with respect to Plaintiff's request for news media fee status or grant him news media fee status, in violation of FOIA.  5 U.S.C. § 552(a)(4).

84.     Defendant unlawfully seeks to require Plaintiff to pay fees in excess of those that may be assessed for a representative of the news media under FOIA in order to obtain the records he has requested.  5 U.S.C. § 552(a)(4)(A).

85.     Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to his Request.  5 U.S.C. § 552(a)(6)(C)(i).

## Count V

### Violation of FOIA for Improper Assessment of Fees Under 15 U.S.C. § 1525

86.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 58 as though fully set forth herein.

87.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

88.     Plaintiff's Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

89.     15 U.S.C. § 1525 states, in part, that the "Secretary of Commerce is authorized, upon the request of any person, firm, organization, or others, public or private, to make special studies on matters within the authority of the Department of Commerce; to prepare from its records special compilations, lists, bulletins, or reports; to perform the functions authorized by section 1152 of this title; and to furnish transcripts or copies of its studies, compilations, and other records; upon the payment of the actual or estimated cost of such special work."

90.     Plaintiff alleges, in the alternative, that if 15 U.S.C. § 1525 applies to the records Plaintiff has requested and is "a statute specifically providing for setting the level of fees for particular types of records" within the meaning of 5 U.S.C. § 552(a)(4)(A)(vi), Defendant unlawfully seeks to require Plaintiff to pay fees in excess of those allowed by 15 U.S.C. § 1525 to obtain the records he has requested.

17

91.     Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to his Request.  5 U.S.C. § 552(a)(6)(C)(i).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

(1) order Defendant to immediately disclose, in their entirety, all records responsive to Plaintiff's Request;

(2) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

(3) issue a declaration that 15 U.S.C. § 1525 is not a statute specifically providing for setting the level of fees for particular types of records" within the meaning of 5 U.S.C. § 552(a)(4)(A)(vi);

(4) issue a declaration that Defendant has improperly assessed the fees it may charge for disclosure of the requested records under FOIA or, in the alternative, under 15 U.S.C. § 1525;

(5) issue a declaration that Plaintiff is entitled to a fee benefit as a representative of the news media;

(6) issue a declaration that Plaintiff is entitled to a fee waiver;

(7) award Plaintiff reasonable attorney fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(8) grant such other relief as the Court may deem just and proper.

Dated:  May 19, 2016

Respectfully submitted,

_s/Katie Townsend_
Katie Townsend
D.C. Bar No. 1026115
ktownsend@rcfp.org
Bruce D. Brown
D.C. Bar No. 457317
bbrown@rcfp.org
Adam A. Marshall
D.C. Bar No. 1029423
amarshall@rcfp.org
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9303
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
*Counsel for Plaintiff*
*David Yanofsky*

Caitlin Vogus*
Email: cvogus@rcfp.org
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
*Of Counsel for Plaintiff*
*David Yanofsky*

*Application to practice in the District of
Columbia pending; practicing under the
supervision of Plaintiff's counsel of record