# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DAVID YANOFSKY**,

                Plaintiff,

    v.

**UNITED STATES DEPARTMENT
OF COMMERCE**,

                Defendant.

Civil Action No. 1:16-cv-00951 (KBJ)

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

LEGAL STANDARDS ........................................................................................................ 8

ARGUMENT ...................................................................................................................... 8

I.    FOIA contains specific fee provisions designed to facilitate access to agency records for requestors like Plaintiff; Plaintiff clearly meets the statutory requirements for both a fee benefit and a fee waiver under FOIA................................................................................ 8

II.    Because the DOC has abandoned the only argument it made at the administrative stage for denying Plaintiff's request for a fee waiver, Plaintiff is entitled to summary judgment in his favor as to that dispositive issue............................................................................. 12

III.   Even if the Court goes beyond the administrative record, Plaintiff is still entitled to summary judgment in his favor because there is no applicable superseding fee statute; FOIA's Displacement Provision does not apply here....................................................... 14

    A.    A superseding fee statute must "specifically provid[e] for setting the level of fees" for "particular types of records" and must require, not merely permit, the agency to collect fees. ..................................................................................................................... 14

    B.    No superseding fee statute applies to the records at issue here. ................................... 16

IV.   Even if FOIA's Displacement Provision did apply—which it does not—Plaintiff would still be entitled to summary judgment in his favor because the Displacement Provision does not affect FOIA's fee waiver provision............................................................. 21

V.    The DOC's position undermines Congress's intent and the purpose of the Act. ............. 24

CONCLUSION.................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 8

*Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31 (D.D.C. 2011) ................................................ 12

*Campbell v. United States Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998)................................. 11

*Carney v. United States Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ........................................ 11

*Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108 (D.C. Cir. 2015) ................................... 11

*\*Envtl. Prot. Info. Ctr. v. United States Forest Serv.*, 432 F.3d 945 (9th Cir. 2005) ....... 15, 16, 20

*EPA v. Mink*, 410 U.S. 73 (1973) ........................................................................................... 8, 28

*Friends of Coast Fork v. United States Dep't of Interior*, 110 F.3d 53 (9th Cir. 1997).............. 13

*Hayden v. United States Dep't of Justice*, 413 F. Supp. 1285 (D.D.C. 1976) ............................. 28

*In Defense of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83 (D.D.C. 2008)...................... 8

*Judicial Watch, Inc. v. General Servs. Admin.*, No. Civ. A. 98-2223(RMU), 2000 WL 35538030
   (D.D.C. Sept. 25, 2000) ....................................................................................................... 10, 12

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ............................................ 8, 9

*N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57 (D.D.C. 2010) ............................. 8

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................... 3

*Nat'l Right to Work Legal Defense and Educ. Found., Inc. v. United States Dep't of Labor*,
   828 F. Supp. 2d 183 (D.D.C. 2011).......................................................................................... 13

*\*Oglesby v. United States Dep't of Army*, 79 F.3d 1172 (D.C. Cir. 1996)........................... passim

*Perkins v. United States Dep't of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. 2010) ............... 13

*Pharm. Research & Mfrs. of America v. United States Dep't of Health and Human Servs.*,
   43 F. Supp. 3d 28 (D.D.C. 2014).............................................................................................. 6

*Pub. Employees for Envtl. Responsibility v. United States Dep't of Commerce*,
   968 F. Supp. 2d 88 (D.D.C. 2013).................................................................................... 2, 12

*SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976) .................................. 26, 27

*St. Hilaire v. Dep't of Justice, Office of Special Investigations*, Civil Action No. 91-0078-LFO, 1991 WL 190089 (D.D.C. Sept. 10, 1991) ............................................................................ 21

*United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ............................................................................................ 3, 9

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) .............................................................. 28

**Statutes**

15 U.S.C. § 1525 .............................................................................................. 5, 6, 16

22 U.S.C. § 2455 .......................................................................................... 7, 18, 19, 20

22 U.S.C. § 2458 .............................................................................................. 7, 19

31 U.S.C. § 9701 .............................................................................................. 16, 17

44 U.S.C. § 1708 (1982) ...................................................................................... 15, 18

*5 U.S.C. § 552 ............................................................................................... passim

7 U.S.C. § 1387 ................................................................................................ 15

Pub. L. 99-570 ................................................................................................. 23

Pub. L. No. 114–113, 129 Stat. 2286–7 (2015) ............................................... 2, 7, 17

Pub. L. No. 93-502 ............................................................................................ 23

**Rules**

15 C.F.R. § 4.11 ............................................................................................... passim

*5 C.F.R § 1303.30 ......................................................................................... 15, 16, 20

Fed. R. Civ. P. 56 .............................................................................................. 8

Fed. R. Evid. 201 .............................................................................................. 6

**Other Authorities**

*132 Cong. Rec. Part 19 (1986) ........................................................................ 23, 24

*132 Cong. Rec. Part 20 (1986) ......................................................................... passim

52 Fed. Reg. 10012 (1987) ................................................................................. 15

81 Fed. Reg. 39895 ............................................................................................ 19

H.R. Rep. No. 99-560 (1986) ........................................................................................... 25, 26, 27

Justin Antonipillai, Dep't of Commerce, Remarks at SHIFT Conference, San Francisco, August
  30, 2016 *in* Medium, available at https://perma.cc/4CHP-T6SG?type=image .......................... 28

Michael Russo, *Are Bloggers Representatives of the News Media Under the Freedom of
  Information Act?*, 40 Colum. J.L. & Soc. Probs. 225 (Winter 2006) ......................................... 9

Office of Mgmt. & Budget Circular A-25, available at
  https://www.whitehouse.gov/omb/circulars_a025 .................................................................. 19

United States Census Bureau, *Data*, http://www.census.gov/data.html
  (last visited Oct. 31, 2016) ..................................................................................................... 27

United States Dep't of Homeland Security, *Yearbook of Immigration Statistics*,
  https://www.dhs.gov/yearbook-immigration-statistics (last visited Oct. 31, 2016) ................ 27

United States Dep't of Labor, Bureau of Labor Statistics, *Overview of BLS Statistics on
  Employment*, http://www.bls.gov/bls/employment.htm (last visited Oct. 31, 2016) ............... 27

## INTRODUCTION

This case concerns the applicability of the fee provisions of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act") to certain records of the Department of Commerce ("DOC").  David Yanofsky ("Plaintiff"), a journalist and reporter for the digital publication *Quartz*, submitted a FOIA request to the DOC seeking copies of certain DOC data files concerning foreign travel to and from the United States.  Despite conceding that the requested data files are agency records subject to FOIA, the DOC has refused to grant Plaintiff's request for a public interest fee waiver or to acknowledge his entitlement to a fee benefit as a representative of the news media, as required by the Act.  Instead, the DOC argues that it may withhold the records requested by Plaintiff unless and until he pays what the DOC refers to as "applicable fees," *see* Mem. of Law In Support Of Def.'s Mot. for Summ. J. ("DOC Mem."), ECF No. 20, at 3, totaling **$173,775.00**—an amount, notably, omitted from the DOC's brief.

Nothing in the Act, however, nor in any other statute, authorizes the DOC to disregard FOIA's specific provisions entitling Plaintiff to a fee benefit and a fee waiver, or to charge Plaintiff whatever amount of "fees" it chooses before it complies with his FOIA request.  As set forth herein, Plaintiff is entitled to summary judgment in his favor for three separate reasons.

*First*, in reviewing an agency's denial of a public interest fee waiver, courts are limited to the administrative record.  5 U.S.C. § 552(a)(4)(A)(vii).  Prior to this litigation, in an attempt to justify its refusal to comply with the Act's requirement that it waive any fees in response to Plaintiff's FOIA request, *see id.* § 552(a)(4)(A)(iii), the DOC asserted baseless legal arguments that it has since conceded have no merit.  Dispositive for purposes of this case, the DOC has *expressly abandoned* the *only* argument it raised at the administrative stage for denying Plaintiff's request for a fee waiver under FOIA.  Thus, because the Court, in evaluating the

propriety of that denial, may "consider *only* the arguments and justifications of the parties that appear in the administrative record," *Pub. Employees for Envtl. Responsibility v. United States Dep't of Commerce*, 968 F. Supp. 2d 88, 99 (D.D.C. 2013) ("*PEER*") (emphasis added), it may not consider the new (and only) justification offered by the DOC in its motion for summary judgment that the Consolidated and Further Continuing Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2286–7 (2015) purportedly justifies its denial of Plaintiff's request for a fee waiver—an argument that appeared for the first time in the DOC's Answer.  *Id.* (stating that the Court, in evaluating the propriety of an agency's denial of a request for a fee waiver, "may not consider any arguments that appear for the first time in pleadings").  In short, there is no dispute that Plaintiff is entitled to a fee waiver here because the DOC has abandoned the only argument to the contrary that appears in the administrative record before the Court.  Summary judgment should be granted in Plaintiff's favor for that reason alone.

*Second*, even if this Court were to reach the DOC's newfound argument that a general provision in a routine budget bill that makes no mention of FOIA, whatsoever, displaces FOIA's fee provisions with respect to the records at issue, Plaintiff would still be entitled to summary judgment in his favor.  The DOC's latest argument is just as meritless as its earlier, abandoned one.  Congress has placed strict limits on what types of statutes may displace the normal fee schedules—*i.e.* the types and amounts of fees—applicable to FOIA requests.  *See* 5 U.S.C. § 552(a)(4)(A)(vi).  If a statute does not meet those requirements, it does not displace any of FOIA's generally applicable fee schedules.  Here, there is simply no applicable statute that meets those requirements and, accordingly, FOIA's generally applicable fee schedules, as well as both its fee waiver and fee benefit provisions, apply to Plaintiff's FOIA request.  Because there is no statute that permits the DOC to demand that Plaintiff, a member of the news media who is

entitled to a fee *benefit* under FOIA, *see* 5 U.S.C. § 552(a)(4)(A)(ii), pay tens or hundreds of thousands of dollars in "fees" before his FOIA request is processed, summary judgment should be granted in Plaintiff's favor.

*Third*, and finally, even if there were a superseding fee statute applicable to the records at issue here—which there is not—it would not affect Plaintiff's statutory entitlement to a public interest fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).  Regardless of whether FOIA's fee *schedules* are displaced by a superseding fee statute, FOIA's fee *waiver* provision continues to apply, and does precisely what it states: it requires an agency to furnish records "without any charge," *id*., in response to requests, like Plaintiff's, that serve the underlying purpose of the Act, which is "to open agency action to the light of public scrutiny."  *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) ("*Reporters Committee*") (quotations omitted).  Because Plaintiff is entitled to a waiver of any and all fees under 5 U.S.C. § 552(a)(4)(A)(iii) regardless of whether or not there is a superseding fee statute that applies, Plaintiff is entitled to summary judgment in his favor.

While the DOC accuses Plaintiff of attempting to "circumvent" supposedly "applicable fees," *see* DOC Mem., ECF No. 20, at 3, in fact, it is the DOC that is attempting to circumvent FOIA.  By arguing that it may require Plaintiff to purchase agency records for an extraordinary amount far in excess of what FOIA permits, the DOC threatens to undermine the Act—a statute that is a "structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  This Court should reject the DOC's erroneous contention that an agency may place records subject to FOIA out of the practical reach of the press and public by charging exorbitant fees not authorized by the Act.  For all the reasons set forth herein, this Court should deny the DOC's motion and enter summary judgment in favor of Plaintiff.

## BACKGROUND

On March 10, 2015, in connection with his reporting for *Quartz*, Plaintiff sent a FOIA request to the DOC seeking access to and copies of data files related to two programs administered by the DOC, the I-94 and I-92 Programs, that concern foreign travel to and from the United States (the "Prior Request"). Pl.'s Combined Statement of Material Facts as to which there is no Genuine Issue and Resp. to Def.'s Statement of Material Facts (hereinafter "SMF") ¶¶ 27-30. Specifically, the Prior Request sought access to and copies of the "Air Arrivals I-94 Annual Datafile" and the "U.S. International Air Travel Statistics Report (APIS/I-92) Data Files," as well as their associated technical documentation (the "I-94 Data File" and the "I-92 Data File"), for four calendar years: 2014, 2013, 2012, and 2011. *Id.* ¶ 28. Plaintiff requested a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii), as well as a public interest fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). *Id.* ¶ 30. The DOC denied the Prior Request. *Id.* ¶ 31. It asserted that the I-94 Data Files were not agency records subject to FOIA and, as to the I-92 Data Files, stated that "records which are published and offered for sale are excluded from the definition of subsection 5 U.S.C. § 552(a)(2) records and need not be proactively disclosed even if doing so would otherwise be required." *Id.* ¶¶ 32–33.

Plaintiff administratively appealed the denial of his Prior Request. *Id.* ¶ 35. In response, the DOC changed its rationale for denying Plaintiff's Prior Request. *Id.* ¶¶ 41-43. Conceding that the data files were, in fact, agency records subject to FOIA, the DOC stated that the administrative appeal was instead being denied on an "alternative basis": that the requested records fell within 5 U.S.C. § 552(a)(4)(A)(vi) (FOIA's "Displacement Provision"), *id.* ¶¶ 40-42, which states: "Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records." In denying

Plaintiff's administrative appeal, the DOC stated that 15 U.S.C. § 1525 (the "Special Works Statute") was "[t]he relevant superseding fee statute in this case[.]" *Id.* ¶ 43. The DOC informed Plaintiff that he should contact the National Travel and Tourism Office ("NTTO"), an office of the DOC, if he was interested in purchasing the data files. *Id.* ¶ 44.

On December 14, 2015, Plaintiff's counsel sent a letter to the DOC challenging its assertions, raised for the first time in its denial of Plaintiff's administrative appeal, that the Special Works Statute was a superseding fee statute and that the Displacement Provision permitted the DOC to withhold the requested records. *Id.* ¶¶ 46–51. On December 28, 2015, the DOC responded that "[t]he fact that [Plaintiff's] appeal was denied under a basis different than that asserted by ITA does not confer upon him any entitlement to a new appeal" and that its previous denial of Plaintiff's administrative appeal was the DOC's "final administrative action on the matter." *Id.* ¶ 53.

On February 26, 2016, Plaintiff sent a new FOIA request to the DOC seeking access to and copies of the I-94 Data File and I-92 Data File for five calendar years:  2015, 2014, 2013, 2012 and 2011 (the "Request"). *Id.* ¶ 54, 58. Plaintiff requested that the records be provided in electronic format and, again, requested both a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii). *Id.* ¶¶ 59, 60–66. The Request attached all of the correspondence between Plaintiff and the DOC regarding the Prior Request. *Id.* ¶ 55. Among other things, the Request stated that, based on the DOC's response to his Prior Request, Plaintiff understood the DOC's position to be that he was not entitled to either a fee benefit or a fee waiver under FOIA and, to the extent he wanted access to the I-92 and I-94 Data Files, would have to purchase them from the DOC for $173,775.00, an

amount that was reflected on the DOC's websites.[1]  *Id.* ¶¶ 67–70.  The Request restated the

reasons why Plaintiff was entitled to both a fee benefit and a fee waiver under FOIA and

incorporated by reference Plaintiff's counsel December 14, 2015 letter to the DOC.  *Id.* ¶¶ 56–

57, 60–66.

On March 30, 2016, the DOC sent Plaintiff a letter denying the Request (the "Denial

Letter").[2]  *Id.* ¶ 76.  The Denial Letter stated that the I-92 and I-94 Data Files were being

withheld under the Displacement Provision, and that the Special Works Statute, 15 U.S.C.

§ 1525, was the "[t]he relevant superseding fee statute in this case."  *Id.* ¶ 77–79.  The Denial

Letter did not provide any other basis for denying Plaintiff's Request.  *See id.*  The Denial Letter

included a link to a DOC website "explaining how to purchase the I-94 and I-92 [Data Files] and

outlining the required fees" and enclosed an order form that it said Plaintiff could use to purchase

the records.  *Id.* ¶¶ 79–81.  The DOC did not grant Plaintiff's request for a fee waiver, stating:

"As for your request for a fee waiver, there are no fees to charge in processing this request."  *Id.*

¶¶ 83–84.

On March 31, 2016, Plaintiff administratively appealed the denial of his Request (the

"Administrative Appeal").  *Id.* ¶ 85.  The Administrative Appeal stated the following three

reasons why the Special Works Statute and Displacement Provision did not authorize the DOC to

withhold the I-94 and I-92 Data Files.  First, the Special Works Statute is not a superseding fee

---

[1] Plaintiff requests that the Court take judicial notice pursuant to Fed. R. Evid. 201 of the DOC websites listing the DOC's stated prices for the I-92 and I-94 Data Files for 2015, 2014, 2013, 2012, and 2011.  *See Pharm. Research & Mfrs. of America v. United States Dep't of Health and Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (taking judicial notice of a Food and Drug Administration website and noting that "[c]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies").  True and correct copies of these websites are attached as Ex. A to the Yanofsky Decl.

[2] The DOC did not respond to the Request within twenty business days, as required by FOIA.  *See* 5 U.S.C. § 552(a)(6)(A)(i); SMF ¶ 71.  On March 28, 2016, Plaintiff administratively appealed from the DOC's constructive denial of his Request.  SMF ¶ 72.  In response, the DOC stated that it had not received the Request.  *Id.* ¶ 75.  The next day, March 30, 2016, the DOC denied the Request.  *Id.* ¶ 76.

statute for purposes of FOIA's Displacement Provision.  *Id.* ¶ 86.  Second, even assuming, *arguendo*, that the Special Works Statute is a superseding fee statute, the Displacement Provision does not permit an agency to withhold records.  *Id.* ¶ 87.  And in any event, third, the Displacement Provision would apply only to FOIA's fee *setting* requirements; it does not affect the Act's fee *waiver* provision.  *Id.* ¶ 88.  Finally, the Administrative Appeal again set forth the reasons why Plaintiff is entitled to a fee waiver under FOIA.  *Id.* ¶ 89.  On April 8, 2016, Plaintiff received an email from the DOC confirming receipt of his Administrative Appeal on March 31, 2016.  *Id.* ¶ 92.  The DOC did not respond to the Administrative Appeal.  *Id.* ¶¶ 93–94.

On May 19, 2016, Plaintiff initiated this lawsuit against the DOC challenging its unlawful withholding of agency records, its failure to grant Plaintiff a fee waiver or fee benefit as required by FOIA, and its improper assessment of fees under the Act.  *See* SMF ¶ 95; Compl., ECF No. 1.  In its Answer, filed on July 16, 2016, the DOC expressly abandoned its argument that the Special Works Statute is a superseding fee statute that authorizes it to withhold the records requested by Plaintiff under FOIA's Displacement Provision.  *See* SMF ¶ 97; Def.'s Answer and Affirmative Defenses ("Answer"), ECF No. 14, at ¶¶ 29, 53 (stating that the Special Works Statute had been "cited in error").  Instead, the DOC took the position that the Consolidated and Further Continuing Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2286–7 (2015) (the "Appropriations Act") was "the superseding fee statute applicable to the February 2016 Request."  SMF ¶ 98; Answer ¶ 53.  The portion of the Appropriations Act relied upon by the DOC also cites two provisions of the Mutual Educational and Cultural Exchange Act of 1961 (the "MECEA"), 22 U.S.C. §§ 2455(f) and 2458(c), which the DOC argues authorizes it to charge "fees for reports and data offered for sale under the I-92 and I-94 Programs."  *See* DOC Mem., ECF No. 20, at 4.

## LEGAL STANDARDS

FOIA was enacted to "permit access to official information long shielded unnecessarily from public view." *EPA v. Mink*, 410 U.S. 73, 80 (1973) (superseded by statute on other grounds). "Intended to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," the Act "requires federal agencies to disclose information upon request . . . ." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("*Rossotti*") (internal citations and quotation marks omitted).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *In Defense of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83, 93 (D.D.C. 2008). Generally, summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing cross-motions for summary judgment, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In any FOIA action "by a requester regarding the waiver of fees" the Court "shall determine the matter de novo[,]" provided, however, "[t]hat the court's review of the matter shall be limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii).

## ARGUMENT

I.   **FOIA contains specific fee provisions designed to facilitate access to agency records for requestors like Plaintiff; Plaintiff clearly meets the statutory requirements for both a fee benefit and a fee waiver under FOIA.**

FOIA contains detailed provisions governing the fees that agencies may charge to cover the cost of processing a FOIA request. First, FOIA places requestors in one of three categories:

(1) requesters seeking records for commercial use, who may be charged for the costs of searching for, reviewing, and duplicating documents; (2) requesters seeking records for noncommercial use, who may be charged for search and duplication costs, not including the first two hours of search time or the first one hundred pages of duplication; and (3) representatives of the news media and other specified entities seeking records for noncommercial use.  *See* 5 U.S.C. §§ 552(a)(4)(A)(ii)(I)–(III), 552(a)(4)(A)(iv)(II).  Pursuant to the Act, the third category of requestors—which includes "representatives of the news media," like Plaintiff—are entitled to a fee benefit and may be charged only for duplication costs, not including the first one hundred pages of duplication.  *Id.* § 552(a)(4)(A)(ii)(II), (a)(4)(A)(iv)(II).  In addition, FOIA contains a fee waiver provision requiring that records "shall be furnished *without any charge* . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  *Id.* § 552(a)(4)(A)(iii) (emphasis added).

Both FOIA's fee benefit and fee waiver provisions facilitate the purpose of the Act, which aims "to open agency action to the light of public scrutiny."  *Reporters Committee*, 489 U.S. at 772–73 (quotations omitted).  By requiring that fees be reduced or waived when a journalist seeks records in order to inform the public about government activities, FOIA's fee provisions encourage reporters like Plaintiff to use FOIA as a means of "ensur[ing] an informed citizenry."  *Rossotti*, 326 F.3d at 1309 (internal quotations omitted); *see also* Michael Russo, *Are Bloggers Representatives of the News Media Under the Freedom of Information Act?*, 40 Colum. J.L. & Soc. Probs. 225, 228 (Winter 2006) ("[B]y favoring journalists, with their professional skills and broad distribution networks, FOIA subsidizes those requests most likely to inform the public.").  "This is precisely the type of open and accountable government Congress meant to

encourage by enacting FOIA, particularly its public interest fee-waiver provision." *Judicial Watch, Inc. v. General Servs. Admin.*, No. Civ. A. 98-2223(RMU), 2000 WL 35538030 at *11 (D.D.C. Sept. 25, 2000).

The Request at issue here directly serves the core purpose of the Act and falls squarely within FOIA's fee benefit and fee waiver provisions.  Indeed, when those fee provisions are properly applied, it is clear that Plaintiff meets the statutory requirements entitling him to both a fee benefit as a representative of the news media and a public interest fee waiver.  First, the administrative record establishes that Plaintiff, a journalist who seeks the requested records for use in his reporting, is entitled to a fee benefit.  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).  The Request states, *inter alia*, that Plaintiff is a journalist for *Quartz*, that he intends to use the requested records to gather information of potential interest to the public—namely, information about the operations of the DOC and other government agencies and about travel and tourism in the United States—that he will use his editorial skills to turn the requested records into a distinct work, and that he intends to distribute that work to the readers of *Quartz*.  SMF ¶ 61.  In addition, because the Request specifies that it is made to support Plaintiff's reporting, *see id.*, Plaintiff has demonstrated that the records are not being sought for a "commercial use."  *See* 15 C.F.R. § 4.11(b)(6) ("A request for records that supports the news-dissemination function of the requester shall not be considered to be for a commercial use.").  Accordingly, FOIA permits the DOC to charge Plaintiff only duplication costs, not including the first one hundred pages of duplication.  5 U.S.C. §§ 552(a)(4)(A)(ii)(II), 552(a)(4)(A)(iv)(II).

The administrative record also demonstrates that Plaintiff is entitled to a public interest fee waiver.  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  A request for a fee waiver must satisfy three criteria.  "Disclosure of the requested information must: (1) shed light on 'the operations or

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  The Act "is to be liberally construed in favor of waivers for noncommercial requesters." *Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Health & Human Servs.,* 481 F. Supp. 2d 99, 106 (D.D.C. 2006) (internal quotation omitted).

Plaintiff's Request specifies four ways that the records at issue will shed light on the operations and activities of the DOC and other government agencies.  *See* SMF ¶¶ 62–66.  In addition, the Request shows that Plaintiff will disseminate the requested records to a reasonably broad audience of interested persons by using them to write news stories for *Quartz*.  *See id.* ¶ 66; *Cause of Action*, 799 F.3d at 1116 (stating that, with regard to the second factor, "'the relevant inquiry . . . is whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject.'" (quoting *Carney v. United States Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994))).  Finally, the Request makes clear that Plaintiff intends to use the requested records to report the news, and thus that he does not seek the records for "commercial use." *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 35–36 (D.C. Cir. 1998) (scholar who wrote books as a profession does not have a commercial interest in the dissemination of his book within the meaning of FOIA, "as Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles").  Accordingly, FOIA requires that the DOC furnish the requested records to Plaintiff "without any charge."  5 U.S.C. § 552(a)(4)(A)(iii).

In sum, Plaintiff clearly meets the statutory requirements entitling him to both a fee

benefit as a representative of the news media and a fee waiver under FOIA.  Because, as set forth

in detail below, these fee provisions are fully applicable to the FOIA Request at issue here, the

DOC's refusal to comply with these provisions violates the Act.[3]

**II.   Because the DOC has abandoned the only argument it made at the administrative stage for denying Plaintiff's request for a fee waiver, Plaintiff is entitled to summary judgment in his favor as to that dispositive issue.**

Plaintiff has been attempting to obtain I-92 and I-94 Data Files since March of 2015.

During that time, the DOC's proffered basis for withholding those records and denying Plaintiff

a fee benefit and fee waiver has changed repeatedly.  Because the Court's review is limited to the

administrative record in any action regarding a fee waiver, 5 U.S.C. § 552(a)(4)(A)(vii), and

because the DOC has abandoned the only reason it provided Plaintiff for denying his request for

a fee waiver at the administrative stage, Plaintiff is entitled to summary judgment on that issue.

In reviewing an agency's denial of a request for a public interest fee waiver, the Court is

"limited to the record before the agency."  5 U.S.C. § 552(a)(4)(A)(vii).  The Court "may *only*

consider *only* the arguments and justifications of the parties that appear in the administrative

record and may not consider any arguments that appear for the first time in pleadings."  *PEER*,

968 F. Supp. 2d at 99 (emphasis added).  Thus, once litigation commences, *both* the requester

and the agency are limited to the arguments contained in the administrative record.  *See Bensman*

*v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 43 (D.D.C. 2011); *Judicial Watch,* 2000 WL 35538030

at *4..  "[T]he agency must stand on whatever reasons for denial it gave in the administrative

---

[3] Even if Plaintiff were not entitled to a waiver of all fees under 5 U.S.C. § 552(a)(4)(A)(iii), which he is, FOIA would still prohibit the DOC from assessing any search or duplication fees in connection with the Request.  FOIA prohibits an agency from assessing such fees if it fails to comply with the time limits set forth in the Act for making a determination in response to either a FOIA request or an administrative appeal if no "exceptional circumstances," as defined by the statute, apply.  5 U.S.C. § 552(a)(4)(A)(viii).  Here, the DOC never responded, at all, to Plaintiff's Administrative Appeal.  *See* SMF ¶¶ 93–94.

proceeding.  If those reasons are inadequate, and if the requesters meet their burden, then a full

fee waiver is in order." *Friends of Coast Fork v. United States Dep't of Interior*, 110 F.3d 53, 55

(9th Cir. 1997); *see also Perkins v. United States Dep't of Veterans Affairs*, 754 F. Supp. 2d 1, 6,

n.5 (D.D.C. 2010) (stating that "the Court may not consider reasons for denial not raised by

defendant in its denial letter") (citation omitted).

　　As discussed in detail above, the DOC relied *exclusively* on the Special Works Statute to

deny Plaintiff's Request for the I-92 and I-94 Data Files at the administrative stage, arguing that it

was a superseding fee statute for purposes of FOIA's Displacement Provision.  *See* SMF ¶ 76–79.

After this lawsuit was filed, however, the DOC conceded that the Special Works Statute—the

DOC's *only* basis for denying Plaintiff's request for a public interest fee waiver that appears in the

administrative record—is inapplicable, averring in its Answer that it had repeatedly relied on that

statute "in error."  *See* Answer, ECF 14, at ¶¶ 29, 53.

　　Because the DOC has conceded that its argument premised on the Special Works Statute

was without merit, *see id.*, summary judgment should be entered as to Plaintiff's entitlement to a

waiver of all fees under 5 U.S.C. § 552(a)(4)(A)(iii).  The Special Works Statute was the sole

basis that the DOC provided in its Denial Letter for refusing Plaintiff's request for a fee waiver;

it is the only argument in the administrative record, and the DOC has not pursued it in this

litigation.  Thus, the DOC presents no viable legal challenge to Plaintiff's entitlement to a fee

waiver to this Court, whose review is limited solely to the administrative record.  *See* 5 U.S.C.

§ 552(a)(4)(A)(vii); *Nat'l Right to Work Legal Defense and Educ. Found., Inc. v. United States

Dep't of Labor*, 828 F. Supp. 2d 183, 188 (D.D.C. 2011) (noting plaintiff's concessions, both

express and by failing to raise specified arguments).  Accordingly, the Court should deny the

DOC's motion for summary judgment and enter summary judgment in favor of Plaintiff, as the

DOC is required to furnish all records responsive to the Request to Plaintiff "without any charge."  5 U.S.C. § 552(a)(4)(A)(iii).

**III.     Even if the Court goes beyond the administrative record, Plaintiff is still entitled to summary judgment in his favor because there is no applicable superseding fee statute; FOIA's Displacement Provision does not apply here.**

*A.   A superseding fee statute must "specifically provid[e] for setting the level of fees" for "particular types of records" and must require, not merely permit, the agency to collect fees.*

In order to qualify as a superseding fee statute for purposes of FOIA's Displacement Provision, a statute must meet several requirements.  First, according to the plain language of FOIA, such a statute must both identify "particular types of records" to which it applies, and "specifically provid[e] for setting the level of fees" for those records.  5 U.S.C. § 552(a)(4)(A)(vi).  In the only case in which the D.C. Circuit has interpreted the Displacement Provision, the Court applied these statutory requirements to hold that 44 U.S.C. § 2116(c) ("NARA § 2116") was a superseding fee statute.  *Oglesby v. United States Dep't of Army*, 79 F.3d 1172, 1177–78 (D.C. Cir. 1996)  (quoting NARA § 2116).  In so holding, the Court explained that NARA § 2116—which "authorizes the Archivist 'to recover the costs for making or authenticating copies or reproductions of materials transferred to his custody'" and provides that "'[s]uch fee shall be fixed . . . at a level which will recover, so far as practicable, all elements of such costs . . . .'"—both specifically identified "particular types of records" and expressly provided for setting the level of fees for the copying of such records.  *Id.* (quoting NARA § 2116) (alteration in original).

In addition, as guidelines issued by the Office of Management and Budget ("OMB")—the agency charged by Congress with establishing government-wide guidelines with respect to FOIA's fee provisions, 5 U.S.C. § 552(a)(4)(A)(i)—make clear, a "statute specifically providing

for setting the level of fees for particular types of records" is defined as "any statute that *specifically requires* a government agency . . . to set the level of fees for particular types of records."  5 C.F.R § 1303.30(b) (the "OMB Guidelines") (emphasis added).

In promulgating the OMB Guidelines, the OMB emphasized that "a qualifying statute must *require, not merely permit*, an agency to establish fees for particular documents."  52 Fed. Reg. 10012 (1987) (emphasis added); *see also Envtl. Prot. Info. Ctr. v. United States Forest Serv.*, 432 F.3d 945, 949 (9th Cir. 2005) ("*EPIC*") (citing OMB Guidelines to hold that 7 U.S.C. § 1387 is not a superseding fee statute because it does not require the collection of fees).  Thus, statutes "which only provide a general discussion of fees *without explicitly requiring* that an agency set and collect fees for particular documents" do not qualify as superseding fee statutes for purposes of FOIA's Displacement Provision.  5 C.F.R. § 1303.30 (emphasis added).  As required by statute, 5 U.S.C. § 552(a)(4)(A)(i), the DOC's own FOIA regulations follow the OMB's requirements and state that a superseding fee statute is one "that *specifically requires* an agency to set and collect fees for particular types of records."  15 C.F.R. 4.11(k) (emphasis added).

The legislative history of the Displacement Provision underscores Congress's intent that there be strict requirements a statute must meet in order for it to qualify as a superseding fee statute under FOIA's Displacement Provision.  In connection with the 1986 amendments to FOIA, which added the Displacement Provision to the Act, Representatives English and Kindness, the House sponsors of the amendment, issued a joint statement identifying 44 U.S.C. § 1708 (1982), which "allows the Public Printer to set charges at cost plus a fifty percent surcharge to recover indirect costs," as an example of a superseding fee statute.  132 Cong. Rec. 29618 (1986) (the "English-Kindness Statement").  In contrast, the English-Kindness statement

cited the so-called User Fee Statute, 31 U.S.C. § 9701, as an example of a statute that does *not* qualify as a superseding fee statute because it does not "establish a specific level of fees." *Id.* The User Fee Statute provides that an agency head "may prescribe regulations establishing the charge for a service or thing of value provided by the agency." 31 U.S.C. § 9701; *see also* 5 C.F.R § 1303.30(b) (citing the User Fee Statute as an example of a statute that is not a superseding fee statute because, *inter alia*, it "only provide[s] a general discussion of fees *without explicitly requiring* that an agency set and collect fees for particular documents").

### B. No superseding fee statute applies to the records at issue here.

Given these requirements, it is unsurprising that the DOC abandoned its frivolous argument—the only argument it made at the administrative stage—that the Special Works Statute is a superseding fee statute. The Special Works Statute states, in pertinent part:

> The Secretary of Commerce is *authorized*, upon the request of any person, firm, organization, or others, public or private, to make special studies on matters within the authority of the Department of Commerce; to prepare from its records special compilations, lists, bulletins, or reports; to perform the functions authorized by section 1152 of this title; and to furnish transcripts or copies of its studies, compilations, and other records; upon the payment of the actual or estimated cost of such special work.

15 U.S.C. § 1525 (emphasis added). By its plain language, the Special Works Statute merely "authorizes," but does not specifically require, the Secretary of Commerce to recover the "actual or estimated cost" of certain "special work" done by the DOC upon request. *Id.* It is, thus, not a superseding fee statute. *See* 5 C.F.R § 1303.30(b); 15 C.F.R. 4.11(k); *EPIC*, 432 F.3d at 949. And, even if the DOC had not abandoned its earlier, misplaced reliance on that statute, it would provide no support for the DOC's claim that FOIA's Displacement Provision applies here.[4]

---

[4] Even assuming, *arguendo*, that the Special Works Statute was a superseding fee statute, it does not allow the DOC to charge Plaintiff in excess of $170,000 for copies of the I-92 and I-94 Data Files. The Special Works Statute would permit the Secretary to collect *only* the "actual or estimated cost" of "furnish[ing] transcripts or copies of" those "records." 15 U.S.C. § 1525. In other words, in this case, that would be the actual cost of providing Plaintiff

DOC's newfound argument that the Appropriations Act is a superseding fee statute—

which was raised for the first time in its Answer, and is the basis for the DOC's motion for

summary judgment—fares no better.  The portion of the Appropriations Act that the DOC relies

upon states:

> [T]he provisions of the first sentence of section 105(f) and all of
> section 108(c) of the [MECEA] (22 U.S.C. 2455(f) and 2458(c))
> shall apply in carrying out [the activities of the DOC specified in
> this provision]; and that for the purpose of this Act, contributions
> under the provisions of the [MECEA] shall include payment for
> assessments for services provided as part of these activities.

*See* DOC Mem., ECF No. 20, at 4 (quoting Pub. L. No. 114-113, 129 Stat. 2287 (2015)).  This

provision, on its face, falls far short of satisfying the requirements of a superseding fee statute.

*First*, it does not identify any "particular types of records."  5 U.S.C. § 552(a)(4)(A)(vi).

Indeed, the closest it comes is a vague reference to "services provided as part of [the DOC's]

activities."  Pub. L. No. 114-113, 129 Stat. 2287 (2015).  In this respect, the Appropriations Act

is similar to the User Fee Statute, which refers merely to "a service or thing of value provided by

the agency."  31 U.S.C. § 9701.  Both Congress and the D.C. Circuit have recognized that such

language is insufficient and concluded that the User Fee Statute is *not* a superseding fee statute.

*See* 132 Cong. Rec. 29618 (1986); *Oglesby*, 79 F.3d at 1177 (stating that "'a thing of value'

clearly does *not* describe 'particular types of records'" (emphasis in original)).  In short, unlike

NARA § 2116, which explicitly applied to "'materials transferred to [the Archivist's] custody'"

and which the D.C. Circuit found to be a superseding fee statute, *Oglesby*, 79 F.3d at 1177, the

provision of the Appropriations Act cited by the DOC does not refer to any "particular types of

---

with electronic copies of the existing records he has requested, an amount that would certainly fall well below
$173,775.00.

records."  5 U.S.C. § 552(a)(4)(A)(vi).  For this reason alone, the section of the Appropriations

Act cited by the DOC is not a superseding fee statute.

*Second*, it does not "specifically provid[e] for setting the level of fees" for any particular

type of records.  *Id*.  Rather, the provision of the Appropriations Act cited by the DOC merely

defines the word "contributions" as that term is used in MECEA to "include payment for

assessments for services provided as part of" certain DOC activities.  In contrast, NARA § 2116,

for example, provides that fees should be set "'at a level which will recover, so far as practicable,

all elements of'" duplication or authentication costs.  *See Oglesby*, 79 F.3d at 1177 (quoting

NARA § 2116).  Similarly, 44 U.S.C. § 1708, which Congress identified as an example of a

superseding fee statute, provides that fees should be fixed at cost plus a fifty percent surcharge.

*See* 132 Cong. Rec. 29618 (1986).  The provision of the Appropriations Act cited by the DOC

makes no mention of any level of fees, or fee setting at all; it certainly does not specify particular

fees like NARA § 2116 or 44 U.S.C. § 1708.   Thus, for this reason as well, the Appropriations

Act is not a superseding fee statute for purposes of FOIA's Displacement Provision.

The provisions of the MECEA referred to in this portion of the Appropriations Act also

fail to provide any support for the DOC's position in this case.  The first sentence of Section

105(f) of MECEA states:

> Foreign governments, international organizations and private
> individuals, firms, associations, agencies, and other groups shall be
> encouraged to participate to the maximum extent feasible in
> carrying out this chapter and to make contributions of funds,
> property, and services which the President is authorized to accept,
> to be utilized to carry out the purposes of this chapter.

22 U.S.C. § 2455(f).  Section 108(c) of MECEA provides:

> In connection with activities [related to cultural exchanges and
> United States participation in international fairs and expositions
> abroad], the President is authorized to provide for all necessary

18

> expenditures involved in the selection, purchase, rental, construction, or other acquisition of exhibits and materials and equipment therefor, and the actual display thereof, including but not limited to costs of transportation, insurance, installation, safekeeping and storage, maintenance and operation, rental of space, and dismantling.

*Id.* § 2458(c).

Neither of these provisions have *anything* to do with the DOC's obligations under FOIA. They do not discuss records, let alone identify particular types of records. Nor do they address the setting of a level of fees for records. They merely provide that certain entities outside the U.S. government are encouraged to contribute funds for certain DOC activities and that the President is authorized to provide expenditures for exhibits, materials, equipment, and displays related to cultural exchanges or international fairs or expositions. *See id.* §§ 2455(f), 2458(c).[5]

*Third*, and finally, the Appropriations Act does not specifically require the DOC to collect fees for particular records. As noted above, the provision of the Appropriations Act cited by the DOC merely defines "contributions" under the MECEA to include "payment for

---

[5] Defendant cites a Notice of revised fee schedule, 81 Fed. Reg. 39895, as authority purportedly supporting its claim that the MECEA authorizes it to collect fees for the I-92 and I-94 Data Files. *See* DOC Mem., ECF No. 20, at 3. That Notice was published by the DOC on June 20, 2016, more than one month after Plaintiff filed this lawsuit. The Notice appears to be nothing more than a *post hoc* attempt to manufacture a purported justification for the position taken by the DOC in this case. To Plaintiff's knowledge, such a Notice has never before been published by the DOC, despite its administration of the I-92 and I-94 programs for "many years." *See* 81 Fed. Reg. 39895.

In any event, the Notice has no legal effect. It was not promulgated pursuant to notice and receipt of public comment, as required by FOIA. *See* 5 U.S.C. § 552(a)(4)(A)(i) (requiring agencies to "promulgate regulations, pursuant to notice and receipt of comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced"). Further, the fees purportedly established in the Notice conflict with the fee schedules set forth in the OMB Guidelines, also in contravention of the Act. *See* 5 U.S.C. § 552(a)(4)(A)(i) (stating that agency regulations promulgating the schedule of fees applicable to the processing of requests "shall conform" to the OMB Guidelines, which "shall provide for a uniform schedule of fees for all agencies"). Although the Notice claims it is promulgated pursuant to OMB Circular A-25, that circular specifically states that its guidance applies only to the extent permitted by law and that "where a statute prohibits the assessment of a user charge on a service or addresses an aspect of the user charge . . . the statute shall take precedence over the Circular." *See* Office of Mgmt. & Budget Circular A-25, available at https://www.whitehouse.gov/omb/circulars_a025. Because FOIA addresses the fees that may be charged for agency records, it, and not OMB Circular A-25, controls in this case. In any event, as it falls outside the administrative record, the Notice cannot be considered by the Court in evaluating the DOC's denial of Plaintiff's request for a fee waiver. 5 U.S.C. § 552(a)(4)(A)(vii).

assessments for services provided." It does not require the DOC to collect such "contributions" nor any other fees. Likewise, the provisions of the MECEA cited in the portion of the Appropriations Act relied upon by the DOC include no language requiring the DOC to collect fees. *See* 22 U.S.C. § 2455(f) (stating that contributions of funds "shall be *encouraged*" (emphasis added)). Accordingly, none of the authority cited by the DOC meets the requirements set by the OMB Guidelines or the DOC's own regulations for a superseding fee statute. *See* 5 C.F.R § 1303.30(b);15 C.F.R. 4.11(k).

The conclusion reached by the D.C. Circuit in *Oglesby* that NARA § 2116 is a superseding fee statute, *see* 79 F.3d at 1177–78, does not preclude this Court from concluding, in this case, that a statute must require the DOC to impose fees in order to be a superseding fee statute. Although NARA § 2116 only "authorize[d]" the Archivist to provide for the setting of the level of fees for particular types of records, *id.* at 1177, as the Ninth Circuit stated in *EPIC*, "the [OMB Guidelines] were not before, and were not considered by, the *Oglesby* court." 432 F.3d at 949. Here, the OMB Guidelines, as well as the DOC's own regulation stating that a superseding fee statute must "specifically require[]" the agency to set and collect fees, 15 C.F.R. § 4.11(k), are before the Court.

In sum, even if the Court went beyond the administrative record to reach the argument raised by the DOC for the first time in its Answer, which it need not do, *see supra* Section II, Plaintiff would still be entitled to summary judgment in his favor. Neither the Special Works Statute previously relied upon by the DOC, nor the Appropriations Act, is a superseding fee statute, and FOIA's Displacement Provision has no application here. Accordingly, the Act's generally applicable fee schedules, as well as its fee benefit and fee waiver provisions, apply.

Because Plaintiff has demonstrated that he is entitled to both a fee benefit as a representative of the news media and a fee waiver under FOIA, summary judgment should be entered in his favor.

**IV.    Even if FOIA's Displacement Provision did apply—which it does not—Plaintiff would still be entitled to summary judgment in his favor because the Displacement Provision does not affect FOIA's fee waiver provision.**

Even if there were a superseding fee statute applicable to the I-92 and I-94 Data Files, which there is not, Plaintiff would still be entitled to summary judgment on the dispositive issue of his entitlement to a fee waiver. FOIA's Displacement Provision applies *only* to FOIA's fee *setting* provisions. Thus, even when it applies, it has no effect on FOIA's fee *waiver* provision. Accordingly, the Displacement Provision, even if it was applicable here, provides no basis for the DOC to deny Plaintiff the fee waiver to which he is statutorily entitled.

Notwithstanding the DOC's misleading suggestion to the contrary, neither the D.C. Circuit nor any other court has addressed whether FOIA's Displacement Provision supplants FOIA's fee waiver provision. Indeed, despite the DOC's disingenuous claim that *Oglesby* "fully supports [its] position" on that issue, DOC Mem., ECF No. 20, at 4, the D.C. Circuit in *Oglesby* **_expressly_** left open the question of whether the Displacement Provision "excuses a qualified agency only from FOIA's *fee-setting* requirements, and not from the *fee-waiver* provision." *Oglesby*, 79 F.3d at 1178 (emphasis in original); *see also St. Hilaire v. Dep't of Justice, Office of Special Investigations*, Civil Action No. 91-0078-LFO, 1991 WL 190089 at *5 (D.D.C. Sept. 10, 1991) (leaving open the "question of statutory interpretation as to whether the [Displacement Provision] under FOIA encompasses the 'waiving' of fees"). The Court in *Oglesby* could not have been clearer, stating:

> We wish, however, to make it clear that we are in no way ruling on a separate argument which Oglesby failed to raise in a timely fashion. In a motion filed after oral argument, Oglesby pressed the claim that the FOIA subsection (vi) exception excuses a qualified agency only from FOIA's fee-*setting* requirements, and not from

the fee-*waiver* provision. [. . .] We refer to this argument only to emphasize that our narrow ruling today on the argument Oglesby *did* successfully make is not intended to bar a future challenge on broader grounds.

*Oglesby*, 79 F.3d at 1178 (emphasis in original).

The language and structure of FOIA demonstrate that Congress intended the Act's fee waiver provision to function exactly the way one would expect—namely, requiring the waiver of all applicable fees—even when a superseding fee statute displaces FOIA's generally applicable fee schedules. FOIA's general fee schedules, addressing both the types of fees that may be charged (search, review, duplication) and the amount of fees that may be charged to certain types of requesters (commercial, educational, representative of the news media, etc.), appear in one subsection of the Act. *See* 5 U.S.C. § 552(a)(4)(A)(ii). FOIA's fee waiver provision, on the other hand, appears in a separate subsection. *See* 5 U.S.C. § 552(a)(4)(A)(iii). The Displacement Provision states that "[n]othing in this subparagraph shall supersede *fees chargeable* under a statute specifically providing for *setting the level of fees* for particular types of records." 5 U.S.C. § 552(a)(4)(A)(vi) (emphasis added). In other words, if another statute specifically modifies the fee *schedule* for particular types of records as described in 5 U.S.C. § 552(a)(4)(A)(ii), that other statute displaces FOIA's generally applicable fee schedules. The Displacement Provision does not apply to FOIA's separate fee *waiver* provision, which means exactly what it says in all circumstances: if its requirements are met, an agency must waive any fees that would otherwise be chargeable to the requestor. *See id.* § 552(a)(4)(A)(iii).

The DOC's own FOIA regulations support this interpretation of the Act. The portion that addresses superseding fee statutes states that "[t]he fee *schedule* of this section does not apply to fees charged under any statute (except for the FOIA) that specifically requires an agency to set and collect fees for particular types of records." 15 C.F.R. § 4.11(k) (emphasis added). Thus,

the DOC regulations indicate that only the fee *schedule* is affected by a superseding fee statute; FOIA's fee waiver provision is left unaffected.

The legislative history of the 1986 Amendments to FOIA, which made several changes to FOIA's fee provisions, also demonstrates that the Displacement Provision applies only to FOIA's generally applicable fee schedules, and not its fee waiver provision. At the time of those amendments, a fee waiver provision was already part of FOIA, having been added by the 1974 amendments. *See* Pub. L. No. 93-502. The 1986 amendments made significant changes to FOIA's fee provisions, including, *inter alia*: (1) setting forth several categories of requesters, with different types of fees applicable to each, now found at 5 U.S.C. § 552(a)(4)(A)(ii); (2) adding the Displacement Provision now found at 5 U.S.C. § 552(a)(4)(A)(vi); and (3) broadening the fee waiver provision found in 5 U.S.C. § 552(a)(4)(A)(iii). *See* Pub. L. 99-570, § 1803; 132 Cong. Rec. 29616–19 (1986) (English-Kindness Statement).

In floor statements in support of the 1986 amendments, Senator Leahy, the sponsor of the Senate bill, and Representatives English and Kindness, sponsors of the House bill, stated of the newly added Displacement Provision: "The fee *schedules* in the FOIA do not supersede fees chargeable under a statute that specifically provides for setting of a level of fees for particular types of records. This provision does not change current law." 132 Cong. Rec. 14299 (1986) (Leahy Statement) (emphasis added); 132 Cong. Rec. 29618 (English-Kindness Statement). Particularly in the context of the larger changes made by the 1986 amendments, these statements reflect Congress's intent in adding the Displacement Provision, which was merely to clarify that existing fee schedules set by statute would not be superseded by the amendments. *See id.*

In contrast, when discussing the 1986 amendment's expansion of FOIA's fee waiver provision, both the Leahy Statement and the English-Kindness Statement stated:

> *All of the fees chargeable to any requester may be waived* or reduced if disclosure of the information is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

132 Cong. Rec. 14298 (emphasis added); *see also* 132 Cong. Rec. 29617.  In short, not only is there no evidence in the legislative history that the Displacement Provision was intended to override FOIA's fee waiver provision, but floor statements from its sponsors show the exact opposite: that *all* of the fees that might be assessed to a requester, whether by the general fee schedules or another statute, should be waived if they meet the statutory requirements, regardless of whether the Displacement Provision applies.  *See id.*

Accordingly, even if there were a superseding fee statute that applied to the I-92 and I-94 Data Files requested by Plaintiff and triggered the Displacement Provision, FOIA's fee waiver provision would still apply.  Nothing in the Displacement Provision, nor anywhere else in the Act, authorizes the DOC to deny Plaintiff's request for a public interest fee waiver.  Because, as discussed previously, *see supra* Section I, Plaintiff has demonstrated that he is entitled to a fee waiver, this Court should grant Plaintiff's motion for summary judgment as to that issue.

**V.      The DOC's position undermines Congress's intent and the purpose of the Act.**

The 1986 amendments to FOIA were intended to address what Congress viewed as the growing problem of agencies asserting "copyright-like controls" over agency records—by, for example, charging fees that were not based on the direct cost of disseminating those records— despite the fact that the Copyright Act does not permit the copyright of government information. Congress identified this problem as a powerful threat to the purpose of FOIA, because copyright-like controls effectively place agency records outside the reach of the public.  Contrary to this intent, the DOC is now attempting to assert such controls over the I-92 and I-94 Data Files.

As the English-Kindness Statement indicates, Congress was greatly concerned when it amended FOIA in 1986 about the trend of agencies imposing fees in excess of the actual costs of disseminating records and intended even the Displacement Provision to be used by agencies only to recover only the actual cost of disseminating records.  *See* 132 Cong Rec. 29618 (1986) ("This new language simply clarifies that statutes setting specific alternative bases for recovering *dissemination costs* can supersede FOIA fees."  (Emphasis added)).  A report by the House Committee on Government Operations, incorporated by reference in the English-Kindness Statement, elaborates on Congress's concern about agencies charging exorbitant fees for documents far above the actual costs of their dissemination.  *See* 132 Cong. Rec. 29618 (1986) (incorporating by reference H.R. Rep. No. 99-560 (1986) (the "House Report")); House Report at 11, 27.  For instance, the House Report specifically criticized the National Library of Medicine's ("NLM") treatment of Medlars, a bibliographical database of medical and scientific articles maintained by the NLM, for creating what it the House Report characterized as "copyright-like controls over public data"—"controls" very similar to those being asserted by the DOC with respect to the I-92 and I-94 Data Files.  House Report at 27.

The House Report noted, first, that the NLM charged fees for access to Medlars that were greater than "the direct cost of disseminating the information," which would include only "the cost of magnetic tape, duplicating, and delivery."  House Report at 29.  Second, the House Report said that the NLM restricted redisclosure of Medlars data through licensing agreements, which required licensees to agree not to duplicate, resell, or redistribute the data, despite the NLM's admission that it had "no specific authority" to prohibit the duplication or resale of Medlars tapes.  House Report 29–30.  Finally, the House Report said that the NLM refused to disclose the database pursuant to FOIA at the cost of dissemination and without any restriction

on reuse or redissemination.  House Report at 32–33.  The House Report expressly stated that

*SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976) ("*SDC*")—a Ninth Circuit

decision holding that the NLM was not required to release Medlars pursuant to FOIA because it

was not an "agency record"—was "incorrect both as a matter of law and as a matter of policy."

House Report 35.[6]

Perhaps presciently, the House Report expressed concern "that the model of information

control established by the NLM might be used elsewhere in government."  House Report at 36.

And, indeed, two decades later the DOC is now applying each of the disfavored copyright-like

controls once asserted by the NLM over Medlars to the I-92 and I-94 Data Files at issue here.

The "prices" that the DOC charges for the I-92 and I-94 Data Files is far more than the actual

cost of their dissemination.  Although the DOC never acknowledges the precise amount of "fees"

it claims are "applicable" to the I-92 and I-94 Data Files in either its Answer or Motion for

Summary Judgment, according to publicly available websites on which the DOC lists prices for

the I-92 and I-94 Data Files, Plaintiff would be required to pay at least $173,775.00 for access to

those records if he purchased them at their listed "price."  In addition, the DOC websites reflect a

different price "for internal use only" than "for resale" of the I-92 Data Files, suggesting that the

DOC is attempting to restrict redissemination of those records.  Finally, the DOC refuses to

disclose the I-92 and I-94 Data Files in accordance with FOIA, arguing that it "is not seeking to

protect its information but, rather, its system for delivering that information."  DOC Mem., ECF

No. 20, at 5.  Although not identified in the DOC's brief, this rationale is drawn directly from

*SDC*, the case identified by House Report as "incorrect as both a matter of law and as a matter of

---

[6] The Medlars database is now available for free through an online system known as Medlars Online, or MEDLINE. *See* https://www.ncbi.nlm.nih.gov/pubmed/

policy."  *See SDC*, 542 F.2d at 1120 ("The agency is seeking to protect not its information, but rather its system for delivering that information."); House Report at 33, 35.

The DOC's treatment of the I-92 and I-94 Data Files is plainly contrary to the intent of Congress, as described in the House Report and embodied in the 1986 amendments to FOIA, which added the Displacement Provision to the Act.  As the English-Kindness statement said, "FOIA is intended to foster the free market in ideas and information.  Nonexempt government information compiled at taxpayers['] expense should be widely available so that the benefits of the information can be shared."  132 Cong. Rec. 29617 (1986).  Indeed, it should go without saying that the mere fact that government information may have a commercial value does not mean that government agencies are permitted to charge more than the cost of dissemination for access to such information.  In fact, a wide variety of commercially valuable government databases are made available to the public for free.  *See, e.g.,* United States Census Bureau, *Data*, http://www.census.gov/data.html (last visited Oct. 31, 2016) (providing free access to data from Census surveys in the American FactFinder); United States Dep't of Homeland Security, *Yearbook of Immigration Statistics*, https://www.dhs.gov/yearbook-immigration-statistics (last visited Oct. 31, 2016) (providing a free compendium of tables with data on certain foreign nationals in the United States); United States Dep't of Labor, Bureau of Labor Statistics, *Overview of BLS Statistics on Employment*, http://www.bls.gov/bls/employment.htm (last visited Oct. 31, 2016) (providing links to free databases of information about national, state, and local employment, among other data).

The DOC's position in this case is also contrary to the fundamental purpose of FOIA, which "was intended by Congress to enable individuals to inform themselves of their government's activities."  *Hayden v. United States Dep't of Justice*, 413 F. Supp. 1285, 1288

(D.D.C. 1976).  For 50 years, FOIA has served the goal of providing "access to official information long shielded unnecessarily from public view[.]"  *Mink*, 410 U.S. at 80 (superseded by statute on other grounds).  And, as the DOC itself has publicly acknowledged, access to government data is essential to the public knowledge necessary for the free exchange of ideas and information.  One DOC official recently stated that the agency intends "to make government data more open, available and consumable" and that the DOC's measure of its own progress on data transparency "really comes down to how easy it is for everyone—and I mean everyone—in the country to access public data—and have full and equal access and opportunity to put that data to work."  Justin Antonipillai, Dep't of Commerce, Remarks at SHIFT Conference, San Francisco, August 30, 2016 *in* Medium, *archived at* https://perma.cc/4CHP-T6SG?type=image. That sentiment is noticeably absent from the DOC's position in this case, where it argues that a journalist should be required to pay $173,775.00 for access to government data.  The DOC's position is not only contrary to law, but stands to fundamentally undermine FOIA's mandate of "broad disclosure of government records to the public[.]"  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

## CONCLUSION

For the foregoing reasons, the DOC's Motion for Summary Judgment should be denied and the Court should enter summary judgment in favor of Plaintiff.

Dated:  October 31, 2016

Respectfully submitted,

*/s/ Katie Townsend*

Katie Townsend
DC Bar No. 1026155
Bruce D. Brown
DC Bar No. 457317
Adam A. Marshall
DC Bar No. 1029423
The Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
Email:  ktownsend@rcfp.org
Email:  bbrown@rcfp.org
Email:  amarshall@rcfp.org

*Counsel for Plaintiff*

29