**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DAVID YANOFSKY**,

        Plaintiff,

    v.

**UNITED STATES DEPARTMENT**
**OF COMMERCE**,

        Defendant.

Civil Action No. 1:16-cv-00951 (KBJ)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

    I.   In defending its denial of Plaintiff's request for a fee waiver, the DOC is limited to the arguments it made at the administrative stage. ................................................ 2

    II.  The Consolidated Appropriations Act for 2016 is not a superseding fee statute ............... 7

    III.  FOIA's fee waiver provision applies in any event. ......................................... 14

CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Battle v. FAA*, 393 F.3d 1330 (D.C. Cir. 2005) ........................................................... 14

*Business Roundtable v. SEC*, 905 F.2d 406  (D.C. Cir. 1990) ......................................... 4

*D.C. Tech. Assistance Org., Inc. v. United States Dep't of Hous. & Urban Dev.*,
    85 F. Supp. 2d 46 (D.D.C. 2000) ................................................................................. 3

*Envtl. Prot. Info. Ctr. v. United States Forest Serv.*, 432 F.3d 945 (9th Cir. 2005) .............. 12, 13

*Friends of Coast Fork v. United States Dep't of the Interior*, 110 F.3d 53 (9th Cir. 1997) ....... 2, 4

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980) ................................. 4

*Jarvik v. CIA*, 495 F. Supp. 2d 67 (D.D.C. 2007) ................................................................ 3

*Judicial Watch, Inc. v. Gen. Servs. Admin.*, No. 98-2223(RMU),
    2000 WL 35538030 (D.D.C. Sept. 25, 2000) ............................................................. 3

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ................................... 17

*Larson v. C.I.A.*, 843 F.2d 1481 (D.C. Cir. 1988) ............................................................ 2

*Nuclear Energy Institute v. EPA,* 373 F.3d 1251 (D.C. Cir. 2004) ......................................... 4

*Oglesby v. United States Dep't of Army*, 79 F.3d 1172 (D.C. Cir. 1996) ...................... 7, 8, 11, 13

*Perkins v. United States Dep't of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. 2010) ................. 3

*Physician's Comm. For Responsible Med. v. Dep't of Health & Human Servs.*,
    480 F. Supp. 2d 119 (D.D.C. 2007) ............................................................................ 3

*Pub. Employees for Envtl. Responsibility v. United States Dep't of Commerce*,
    968 F. Supp. 2d 88 (D.D.C. 2013) ........................................................................... 3, 7

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ............................................................. 10

*Rosenberg v. United States Department of Immigration & Customs Enforcement*,
    954 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................... 3

*Schoenman v. FBI*, 604 F. Supp. 2d 174 (D.D.C. 2009) .................................................... 3

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ................................................................... 4

*Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003) ......................................................... 14

*Stewart v. United States Dep't of Interior*, 554 F.3d 1236 (10th Cir. 2009) ......................... 2

*Tindal v. McHugh*, 945 F. Supp. 2d 111 (D.D.C. 2013) ..................................................... 4

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ............................... 14

*Wade v. Department of Commerce*, 1998 U.S. Dist. LEXIS 23251,
    No. 96-0717 (D.D.C. Mar. 16, 1998) ................................................................ 9, 10, 11, 13

**Statutes**

15 U.S.C. § 1152 ............................................................................................... 10, 11

15 U.S.C. § 1153 ................................................................................................... 10

15 U.S.C. § 1525 ................................................................................................... 5, 6

22 U.S.C. § 2122 ................................................................................................... 8, 9

31 U.S.C. § 9701 ...................................................................................................... 8

44 U.S.C. § 1708 .................................................................................................... 12

44 U.S.C. § 2116 ................................................................................................ 11, 13

5 U.S.C. § 552(a)(4)(A)(vi) .............................................................................. *passim*

5 U.S.C. § 552(a)(4)(A)(i) ...................................................................................... 12

5 U.S.C. § 552(a)(4)(A)(ii) ..................................................................................... 15

5 U.S.C. § 552(a)(4)(A)(iii) ............................................................................. *passim*

5 U.S.C. § 552(a)(4)(A)(vii) ........................................................................... 2, 3, 5, 7

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................... 5
5 U.S.C. § 552(a)(6)(A)(ii) .......................................................................................... 6
5 U.S.C. § 552(a)(6)(C)(i) ........................................................................................... 6
7 U.S.C. § 1387 ......................................................................................................... 12
Consolidated Appropriations Act for 2016, Pub. L. No. 114-113 ....................................... *passim*
Mutual Educational and Cultural Exchange Act of 1961 ("MECEA") .................................. 8
Pub. L. 99-570, § 1803 ............................................................................................... 15
Pub.L. 113-235 ........................................................................................................ 12

## Other Authorities

132 Cong. Rec. 14299 (1986) ..................................................................................... 15
132 Cong. Rec. 29616-19 (1986) ................................................................................. 15
132 Cong. Rec. 29617 (1986) ..................................................................................... 17
132 Cong. Rec. 29618 (1986) .................................................................................. 8, 15
132 Cong. Reg. 16505 (1986) ..................................................................................... 16
15. C.F.R. § 4.11(k) .......................................................................................... 12, 13, 15
32 Fed. Prac. & Proc. Judicial Review § 8165 (1st ed.) .................................................... 14
52 Fed. Reg. 10017 .................................................................................................. 12
66 Fed Reg. 65631 .................................................................................................. 13
79 Fed. Reg. 62553 .................................................................................................. 13
81 Fed. Reg. 39895 .................................................................................................. 11

## INTRODUCTION

In opposing Plaintiff's Motion for Summary Judgment, Defendant Department of Commerce (the "DOC") does not dispute that it is seeking to charge David Yanofsky, a journalist, $173,775.00 for certain data files he requested under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act").  Indeed, the DOC does not dispute any fact in support of Plaintiff's Motion.  *See* Def.'s Resp. to Pl.'s Statement of Material Facts as to which there is No Genuine Issue, ECF No. 23-1.  Nor does the DOC make any attempt to defend the only argument it made at the administrative stage for refusing to comply with the Act's fee provisions.  *See* DOC Opp. Br., ECF No. 23.  Instead, the DOC opposes Plaintiff's Motion on three grounds that are as novel as they are untenable, arguing:

> (1) that it is entitled to assert for the first time in litigation new arguments in defense of its refusal to grant Plaintiff a fee waiver, notwithstanding FOIA's clear requirement that judicial review of the denial of a fee waiver be limited to the administrative record;
>
> (2) that the budget bill that the DOC now relies upon in support of its position is a superseding fee statute for purposes of FOIA, despite not meeting the requirements for such a statute under the Act or under the DOC's own regulations; and
>
> (3) that a fee waiver under FOIA does not waive all applicable fees, despite the fact that the language of the Act, its legislative history, and common sense dictate otherwise.

Plaintiff need only prevail on the first of these arguments for summary judgment to be entered in his favor.  Yet, as set forth in Plaintiff's Motion and herein, each of the DOC's arguments fails. The DOC simply cannot, as it argues, unilaterally decide to charge FOIA requestors like Plaintiff hundreds of thousands of dollars to comply with a straightforward request for agency records. Plaintiff's Motion for Summary Judgment should be granted.

## ARGUMENT

I.   **In defending its denial of Plaintiff's request for a fee waiver, the DOC is limited to the arguments it made at the administrative stage.**

The DOC's contention that it may assert new and different arguments for the first time at the litigation stage in defense of its refusal to grant Plaintiff's request for a public interest fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) is contrary both to the plain language of FOIA and to the overwhelming decisional authority of this and other courts. *See* DOC Opp. Br. at 2–5. The Act explicitly states, in clear and unambiguous terms, that "[i]n any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided, That the court's review of the matter shall be limited to the record before the agency*." 5 U.S.C. § 552(a)(4)(A)(vii) (emphasis added).

As set forth in Plaintiff's Memorandum, ECF No. 21-1 at 12–14, under this provision, both requesters and agencies are limited to the arguments they made at the administrative stage; they cannot add information or make new arguments once a lawsuit has been filed. *Id*; *see also Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (refusing to consider information submitted in connection with a motion for summary judgment because it was not a part of the administrative record). As the Ninth Circuit has explained, "[o]n judicial review, the agency must stand on whatever reasons for denial it gave in the administrative proceeding. If those reasons are inadequate, and if the requesters meet their burden, then a full fee waiver is in order." *Friends of Coast Fork v. United States Dep't of the Interior*, 110 F.3d 53, 55 (9th Cir. 1997); *see also Stewart v. United States Dep't of Interior*, 554 F.3d 1236, 1243 (10th Cir. 2009) (declining to consider affidavit submitted by agency because it "was not contained in the administrative record or the agency's denial"). Consistent with the statutory language, this Court has repeatedly

and consistently required both requesters and agencies to abide by FOIA's clear and simple rule that judicial review of fee waiver determinations is limited to the administrative record.[1]

The DOC offers no authority to the contrary.  *Rosenberg v. United States Department of Immigration & Customs Enforcement*, 954 F. Supp. 2d 1 (D.D.C. 2013)—cited by the DOC for the proposition that an agency "is not limited to arguments raised at the administrative level[,]" Def. Opp. Br. at 5—is entirely inapplicable.  *Rosenberg* did not involve a request for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).[2]  Thus, it is unlike this case, where the Court, in reviewing the DOC's denial of a fee waiver under that section, is statutorily "limited to the record before the agency[.]"  5 U.S.C. § 552(a)(4)(A)(vii).

The other cases cited by Defendant, which concern appellate review of trial court decisions, are similarly of no help to the DOC.  *See* DOC Opp. Br. at 4–5.  Those cases have nothing to do with FOIA's explicit requirement that judicial review of an agency's fee waiver determination be based solely on a closed administrative record.  5 U.S.C. § 552(a)(4)(A)(vii).  Moreover, even setting aside the Act's express language, judicial review of administrative

---

[1] *See, e.g.*, *Pub. Employees for Envtl. Responsibility v. United States Dep't of Commerce*, 968 F. Supp. 2d 88, 99 (D.D.C. 2013) ("A court may only consider only the arguments and justifications of the parties that appear in the administrative record and may not consider any arguments that appear for the first time in pleadings."); *Perkins v. United States Dep't of Veterans Affairs*, 754 F. Supp. 2d 1, 6 (D.D.C. 2010) ("[T]he Court may not consider reasons for denial not raised by defendant in its denial letter."); *Schoenman v. FBI*, 604 F. Supp. 2d 174, 188 (D.D.C. 2009) ("In reviewing an agency's determination on a fee waiver issue, a district court must apply a *de novo* standard of review and look only to the administrative record that was before the agency at the time of its decision."); *D.C. Tech. Assistance Org., Inc. v. United States Dep't of Hous. & Urban Dev.*, 85 F. Supp. 2d 46, 48 (D.D.C. 2000) ("The decision of an agency to grant or deny a fee waiver request is reviewed *de novo* looking only to the administrative record before the agency at the time of the decision."); *Jarvik v. CIA*, 495 F. Supp. 2d 67, 71 (D.D.C. 2007) ("The court reviews an agency's decision *de novo,* looking only at the administrative record available at the time of decision."); *Physician's Comm. For Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 123 n.1 (D.D.C. 2007) (refusing to consider affidavit submitted by plaintiff in support of its motion for summary judgment that was "not in the administrative record"); *Judicial Watch, Inc. v. Gen. Servs. Admin.*, No. 98-2223 (RMU), 2000 WL 35538030, at *4 (D.D.C. Sept. 25, 2000) ("[T]he court may not consider new reasons by the agency that were not advanced in its denial letter.").

[2] Moreover, unlike Mr. Yanofsky, the plaintiff in *Rosenberg* "elected to bypass administrative proceedings altogether."  954 F. Supp. at 11.

determinations is generally conducted under different standards than those that govern appellate

review of trial court decisions:

> [A] simple but fundamental rule of administrative law . . . [is that] a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency*. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasis added); *accord Indus. Union Dep't,*

*AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 631 n.31 (1980) ("[T]he validity of an agency's

determination must be judged on the basis of the agency's stated reasons for making that

determination." (citation omitted)); *Friends of Coast Fork*, 110 F.3d at 55. This principle

"applies to legal, as well as factual, arguments." *Tindal v. McHugh*, 945 F. Supp. 2d 111, 129

(D.D.C. 2013) (citing *Nuclear Energy Institute v. EPA,* 373 F.3d 1251 (D.C. Cir. 2004)). Indeed,

in *Business Roundtable v. SEC*, the D.C. Circuit refused to uphold an agency action—"[e]ven if

other statutory provisions could support the [agency's] asserted authority"—because the Court

could not "supply grounds to sustain the regulations that were not invoked by the [agency]

below." 905 F.2d 406, 417 (D.C. Cir. 1990). The D.C. Circuit concluded that the propriety of

the agency's decision must be evaluated by the justifications it offered at the time its decision

was made. *See id.* n.10 (noting that while "[s]ome commentators argued that the Commission

could ground its authority in [a variety of other statutes] . . . the Commission did not rely on

these provisions").

The DOC attempts to sidestep the clear, unambiguous language of 5 U.S.C. §

552(a)(4)(A)(vii), and this Court's many decisions making clear that judicial review of the

DOC's fee waiver determination is limited to the administrative record; it argues that by

abandoning "the particular statute" that it claimed at the administrative stage authorized it to

charge Plaintiff exorbitant fees in favor of an entirely different statute at the litigation stage, it has, somehow, not asserted a new and different argument.  DOC Opp. Br. at 4.  The DOC's position is belied by the Act and commonsense.  As the briefing in this case clearly illustrates, whether 15 U.S.C. § 1525 is a superseding fee statute is a different inquiry than whether the Consolidated Appropriations Act for 2016, Pub. L. No. 114-113, is.  There can be no question that the DOC changed its legal basis for denying Plaintiff a fee waiver once this lawsuit was filed.  The Act does not permit such a bait and switch.  5 U.S.C. § 552(a)(4)(A)(vii).[3]

The DOC goes even further by claiming that agencies may invoke FOIA's Displacement Provision yet refuse to specify the superseding fee statute it is relying upon "in its denial letter." *See* DOC Opp. Br. at 3.  However, such refusal would prevent FOIA requesters from filing meaningful administrative appeals (or even determining whether an administrative appeal was warranted).  Such conduct is neither contemplated nor permitted by FOIA, which explicitly *requires* agencies to notify requesters of determinations "and the *reasons* therefore[.]"  *See* 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added)).  Furthermore, even assuming, *arguendo*, that the DOC was not required to cite a superseding fee statute in its denial of Plaintiff's fee waiver request, it did so.  Having cited only 15 U.S.C. § 1525 as the basis for denying Plaintiff's request for a fee waiver at the administrative stage, the DOC is limited to that argument.

---

[3] The DOC has repeatedly suggested to this Court that its citation to 15 U.S.C. § 1525 at the administrative stage was an "error."  *See, e.g.*, Ans. ¶ 53; DOC Opp. Br. at 3, 5.  To be clear, however, the DOC cited 15 U.S.C. § 1525 as its basis for refusing to release the records requested by Plaintiff on more than one occasion.  The DOC relied on 15 U.S.C. § 1525 to deny an administrative appeal from the denial of Plaintiff's Prior Request (SMF ¶ 43) *and* to deny Plaintiff's subsequent January 26, 2016 Request (SMF ¶ 78).  The DOC had multiple opportunities to correct its "error" at the administrative stage, such as in response to Plaintiff's previous administrative appeal of December 14, 2015 (SMF ¶¶ 46–53) (which it refused to consider), when it denied Plaintiff's January 26 Request (SMF ¶¶ 54–84) (where it again cited 15 U.S.C. § 1525), or in response to Plaintiff's administrative appeal of the DOC's denial of the January 26 Request (SMF ¶¶ 93–94) (which it ignored).  Indeed, the DOC did not cite the Appropriations Act until well into this litigation.  Tellingly, when the DOC sought a last-minute extension of time to file an Answer to Plaintiff's Complaint, it did so because it had apparently determined that its reliance on 15 U.S.C. § 1525 was untenable, and it required an extension of time to "conduct additional research needed to appropriately respond to the allegations in the Complaint."  ECF No. 8 (stating that "supplemental research is necessary" because the DOC now "believes that another" unspecified statute "is appropriate").

Finally, the DOC complains that Plaintiff "filed his complaint before the administrative record was complete, thus depriving DOC of the opportunity to correct the record at the administrative level." DOC Opp. Br. at 5. The DOC is wrong. First, as noted above, the DOC had *multiple* opportunities to "correct the record at the administrative level." *See supra* n.3. Second, the administrative record was complete at the time this lawsuit was filed. Plaintiff timely filed an administrative appeal of the agency's denial of his Request, SMF ¶ 85, which the DOC ignored in violation of FOIA, SMF ¶¶ 93–94. The DOC's failure to respond to Plaintiff's administrative appeal within the 20-working day deadline set by the Act, *id.*, is a constructive denial of that appeal. 5 U.S.C. § 552(a)(6)(A)(ii). Plaintiff thus filed this lawsuit *after* exhausting available administrative remedies, as required by the Act. *Id.* at § 552(a)(6)(C)(i). Nothing prevented the DOC from timely responding to Plaintiff's administrative appeal. And, in fact, Plaintiff waited an additional 15 business days after the DOC's deadline to respond to his administrative appeal before filing this lawsuit. *See* Compl. ¶¶ 55–58. Plaintiff was not required to indefinitely refrain from seeking to enforce his rights under the Act in this Court because the DOC refused to timely respond to his administrative appeal in violation of FOIA.

In sum, it is undisputed that the DOC made one—and only one—argument in support of its denial of Plaintiff's request for a fee waiver at the administrative stage: that the records requested by Plaintiff were created under, and subject to the purported "fee" provisions of 15 U.S.C. § 1525. SMF ¶ 78. It is undisputed that the DOC abandoned that argument after Plaintiff filed this lawsuit. *Id.* at ¶ 97. And it is further undisputed that the DOC made no mention, whatsoever, of the Consolidated Appropriations Act for 2016—what it now claims is the applicable superseding fee statute—at the administrative stage, but rather cited it for the first time in its Answer to Plaintiff's Complaint. *Id.* at ¶ 98, 100. Accordingly, because this Court

"may not consider any arguments that appear for the first time in pleadings[,]" and is limited to the administrative record when reviewing the DOC's denial of Plaintiff's request for a fee waiver, Plaintiff is entitled to summary judgment as to that issue. *Public Employees for Envtl. Responsibility*, 968 F. Supp. 2d at 99; *see also* 5 U.S.C. § 552(a)(4)(A)(vii).

## II.        The Consolidated Appropriations Act for 2016 is not a superseding fee statute.

Even assuming, *arguendo*, that the Court could look beyond the administrative record to the argument first raised by the DOC in its Answer, SMF ¶ 99, Plaintiff is still entitled to summary judgment in his favor because the Consolidated Appropriations Act for 2016 ("Appropriations Act") is not a superseding fee statute for purposes of 5 U.S.C. § 552(a)(4)(A)(vi) (the "Displacement Provision"). As set forth in Plaintiff's Memorandum in Support of his Motion, there are three requirements that a statute must satisfy before it can be found to displace FOIA's generally applicable fee schedule. Contrary to arguments made by the DOC in its Opposition, the Appropriations Act satisfies none of those requirements.

*First*, both the language of FOIA and the D.C. Circuit's decision in *Oglesby v. United States Dep't of Army*, 79 F.3d 1172 (D.C. Cir. 1996), require that a superseding fee statute identify "particular types of records." 5 U.S.C. § 552(a)(4)(A)(vi). The DOC argues that the Appropriations Act identifies "particular types of records" because it purportedly "refers to 'services provided as part of these activities' with 'these activities' referring to 'international trade activities of the Department of Commerce.'" DOC Opp. Br. at 6. Under the DOC's interpretation, a section of a budget bill that makes no mention of "records" whatsoever exempts from FOIA's fee schedule and fee waiver provision all records concerning the DOC's "international trade activities." *See id.*

7

Even setting aside the extreme nature of the DOC's position, which, if accepted, could result in virtually every record created by the DOC being placed practically out of reach under FOIA, a reference to "services" or "activities" does not identify "particular types of records" as FOIA requires, 5 U.S.C. § 552(a)(4)(A)(vi); it thus does not meet the standard set by Congress and the D.C. Circuit in *Oglesby*.  *See* 132 Cong. Rec. 29618 (1986) (noting that the User Fee Statute, 31 U.S.C. § 9701, does not qualify as a superseding fee statute as it merely states that the agency head "may prescribe regulations establishing the charge for a service or thing of value provided by the agency"); *Oglesby*, 79 F.3d at 1177 (agreeing that 31 U.S.C. § 9701 is not a superseding fee statute).  On its face, the Appropriations Act fails to meet the first requirement of a superseding fee statute under FOIA's Displacement Provision.

In an attempt to overcome this facial lack of specificity in the Appropriations Act itself, the DOC now argues that the records at issue here were created pursuant to 22 U.S.C. § 2122 ("Section 2122"), which it contends should be read as part of the Appropriations Act.  DOC Opp. Br. at 6.  Specifically, the DOC argues that the "DOC's international trade activities specifically include programs to 'collect and publish comprehensive international travel and tourism statistics,' 22 U.S.C. § 2122, such as the I-92 and I-94 Programs."  *Id*.  But in support of its own motion for summary judgment, the DOC argued that "fees for reports and data offered for sale under the I-92 and I-94 Programs are authorized, in the first instance, by provisions of the Mutual Educational and Cultural Exchange Act of 1961 ("MECEA")."  *See* ECF No. 20 at 4; *see also* Def.'s Ans. "Ninth Affirmative Defense" (citing a provision of the Appropriations Act that references the MECEA).  As set forth in Plaintiff's Memorandum, ECF No. 21-1 at 17–19, nothing in the MECEA supports the DOC's contention that the Appropriations Act is a superseding fee statute under FOIA.  *See* Appropriations Act, Pub. L. No. 114-113.  And nothing

in Section 2122 remedies that defect.  Indeed, that the DOC still, at this late stage of litigation, has apparently yet to settle on a single, cogent statutory argument in support of its decision to charge Plaintiff in excess of $173,000 for agency records he requested under FOIA only underscores its position's lack of merit.

As an initial matter, if it is the DOC's contention that three (or more) statutes combine to bring the records requested by Plaintiff within the scope of FOIA's Displacement Provision, FOIA forecloses such an argument.  The Displacement Provision applies only if there is "*a* statute specifically providing for setting the level of fees for particular types of records."  5 U.S.C. § 552(a)(4)(A)(vi) (emphasis added).  Defendant cannot string together multiple statutes in an attempt to satisfy the Displacement Provision's requirements.

Moreover, and in any event, as to the DOC's latest claim that the records at issue here are created pursuant to Section 2122, it is not clear how that statute relates at all to the Appropriations Act or the issue before this Court.  Unlike the MECEA, Section 2122 it is not even referenced anywhere in the Appropriations Act.  Indeed, Section 2122, on its face, does nothing but direct the Secretary of Commerce to perform various tasks in support of a "national tourism policy[.]"  *See* 22 U.S.C. § 2122.  The DOC does not explain how a "national tourism policy" should be read to mean "international trade activities[,]" the language used in the Appropriations Act.  DOC Opp. Br. 6–7.  Nor does the DOC explain how Section 2122—either alone or as part of the Appropriations Act—specifies that the DOC has authority to charge Plaintiff hundreds of thousands of dollars for the records that he requested under FOIA.  The DOC's constantly changing legal arguments have become strained to the point of absurdity; attempting to stitch together general statutory references to tasks performed by the DOC does not

a superseding fee statute make.  The law requires *a* superseding fee statute to identify "particular types of records[,]" 5 U.S.C. § 552(a)(4)(A)(vi), which the Appropriations Act does not do.

The DOC's citation to a 1998 unreported memorandum decision in *Wade v. Department of Commerce*, 1998 U.S. Dist. LEXIS 23251, No. 96-0717 (D.D.C. Mar. 16, 1998), provides no support for its position.  The only issues decided by the court in that case were (1) a question of standing, and (2) whether the agency's regulatory interpretation of a statute was reasonable.  *See id.*  The parties did not contest whether the statute in that case fell under FOIA's Displacement Provision.  *See id.*  In any event, unlike the Appropriations Act, the statute at issue in *Wade* did identify "particular types of records"; at issue were "documents or other publications furnished under" 15 U.S.C. § 1152, which requires the establishment and maintenance "within the [DOC]" of "a clearinghouse for the collection and dissemination of scientific, technical, and engineering information[.]"  *See id.* at *9–10; 15 U.S.C. § 1153; 15 U.S.C. § 1152 (further providing that such information be made available "through the preparation of abstracts, digests, translations, bibliographies, indexes, and microfilm and other reproductions").  That statute is in no way analogous to the Appropriations Act.

*Second*, a superseding fee statute must "*specifically provid*[e] for setting the *level* of fees . . . ."  5 U.S.C. § 552(a)(4)(A)(vi) (emphasis added).  The Appropriations Act clearly does not meet this requirement.  Plaintiff does not—as the DOC erroneously asserts—argue that the Appropriations Act does not qualify as a superseding fee statute "because it does not identify the amount of the fees or state how fees will be determined."  DOC Opp. at 7.  To the contrary, Plaintiff's brief states clearly that the Appropriations Act does not qualify as a superseding fee statute because it "makes no mention of any level of fees, or fee setting at all[.]"  Pl.'s Mem. of L. at 18.  Plaintiff's argument, which mirrors FOIA's language, is that FOIA means exactly what

it says: a superseding fee statute must "specifically provide for setting the level of fees . . . ." 5 U.S.C. § 552(a)(4)(A)(vi); *Cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used.").

The DOC's argument that the Appropriation Act's mere use of the word "payment" or "assessments," alone, satisfies the statutory requirement is contrary to FOIA's plain language and the D.C. Circuit's decision in *Oglesby*.  In *Oglesby*, the D.C. Circuit found 44 U.S.C. § 2116(c) to be a superseding fee statute because it explicitly stated that fees "shall be fixed . . . at a level which will recover, so far as practicable, all elements of such [duplication or authentication] costs . . . ." 79 F.3d at 1177 (citing 44 U.S.C. § 2116(c)).  In other words, the statute specifically required the setting of fees at a particular "level"—one that allows for the recovery of all duplication or authentication costs.  *Id*.  In contrast, the Appropriations Act does not indicate a level at which fees should be set, let alone include language that "specifically provides" for setting the level of fees.  Accordingly, it is not a superseding fee statute.  5 U.S.C. § 552(a)(4)(A)(vi).

Here, again, the DOC's reliance on the unpublished memorandum decision in *Wade* is misplaced.  *See* 1998 U.S. Dist. LEXIS 23251, No. 96-0717 (Mar. 16, 1998).  The statute at issue in *Wade*—15 U.S.C. § 1152—does indicate the "level" of fees to be set—it requires "a schedule or schedules of *reasonable* fees or charges."  *See* 15 U.S.C. § 1152 (emphasis added).

Finally, nowhere in its pleadings or briefs does the DOC explain *how* it calculated the amount—$173,775.00—it seeks to charge Plaintiff for the records at issue here.  Unlike the statute at issue in *Oglesby*, the "fee" here is not tied to reasonable duplication or authentication costs as identified in a statute.  *Cf.* 44 U.S.C. § 2116(c).  To the contrary, the "Notice" published by the DOC regarding these records—the first ever of its kind in the DOC's history, and

published several weeks *after* Plaintiff filed this lawsuit—clearly indicates that the "price" the DOC attempts to charge requestors for the records at issue is, in fact, <u>*not tied to any statute*</u>.  *See* 81 Fed. Reg. 39895.[4]

<u>*Third*</u>, and finally, the Appropriations Act does not qualify as a superseding fee statute because it does not *specifically require* the DOC to set fees for particular records.  As set forth in Plaintiff's Memorandum in Support of his Motion, the Office of Management and Budget Fee Guidelines—which FOIA requires be promulgated for other agencies to follow, 5 U.S.C. § 552(a)(4)(A)(i)—as well as the DOC's *own* regulations, define a superseding fee statute as one that "specifically requires a government agency . . . to set the level of fees for particular types of records[.]"  52 Fed. Reg. 10017 (emphasis added) ("OMB Guidelines"); *see also* 15. C.F.R. § 4.11(k) (DOC FOIA regulations stating that a superseding fee statute is one that "specifically requires an agency to set and collect fees . . . ."); *accord Envtl. Prot. Info. Ctr. v. United States Forest Serv.*, 432 F.3d 945 (9th Cir. 2005) (holding 7 U.S.C. § 1387 is not a superseding fee statute because it did not require the collection of fees).  The Appropriations Act does not satisfy this requirement.

Contrary to the DOC's arguments, the English-Kindness Statement's reference to 44 U.S.C. § 1708 as an example of a superseding fee statute offers no support for its position.  That statute states that "[t]he price at which additional copies of Government publications are offered for sale to the public by the Superintendent of Documents *shall* be based on the cost as

---

[4] The "Notice" states with respect to the I-92 and I-94 programs that "[t]he NTTO considers program cost changes due to the needed level of timeliness and other quality of service considerations as well as needed or actual improvements such as new report formats, more travelers surveyed, or other enhancements to the research data provided.  NTTO also generally considers the current demand for each program by comparing changes from one year to the next before setting fees.  In adjusting its current fees, NTTO also considered the purchasing constraints experienced by current or potential subscribers (such as limits to purchase by credit card, or sole source/ open bid requirements) and factored in the annual percentage change in the Consumer Price Index (used to determine rate of inflation)." 81 Fed. Reg. 39895

determined by the Director of the Government Publishing Office plus 50 percent."  44 U.S.C.

§ 1708 (emphasis added).[5]  The word "shall" clearly mandates the setting and collection of fees.

The DOC does not argue that the Appropriations Act requires the setting of fees.  Instead,

the DOC argues that it is not bound by the OMB Guidelines and that a statute need not require an

agency to set fees to qualify as a superseding fee statute for purposes of FOIA's Displacement

Provision.  On this point, the DOC and Plaintiff (joined by the Ninth Circuit) plainly disagree

about what was and was not decided by the D.C. Circuit in *Oglesby*.  *See Envtl. Prot. Info. Ctr.*,

432 F.3d at 949.  Despite a fleeting reference to the OMB Guidelines in the briefs filed in

*Oglesby*, the D.C. Circuit's decision does not consider, discuss, or even cite the OMB

Guidelines.  *See Oglesby*, 77 F.3d 1172.  The relevant portion of the D.C. Circuit's opinion

consists primarily of a discussion of whether 44 U.S.C. § 2116(c) sufficiently identified

"particular types of records" to qualify as a superseding fee statute, not whether it mandated the

assessment of fees.  *See id.* at 1177–78.  The Court in *Oglesby* did not address—let alone

explicitly reject—the OMB Guidelines' proviso that a superseding fee statute must specifically

require the setting of fees.  *See id.*

In any event, even assuming, *arguendo*, that *Oglesby* implicitly rejected the OMB

Guidelines, there is no dispute that the DOC's *own regulations*, which were not before the Court

in *Oglesby*, require a superseding fee statute to mandate the setting and collection of fees.  They

state: "The fee schedule of this section does not apply to fees charged under any statute (except

for the FOIA) that specifically *requires an agency to set and collect fees for particular types of

records*." 15 C.F.R. § 4.11(k) (emphasis added).  And the DOC's FOIA regulations were

updated not once but twice after *Oglesby* and *Wade* were decided.  66 Fed Reg. 65631; 79 Fed.

---

[5] This section of the statute was amended in 2014 to replace "Public Printer" with "Director of the Government Publishing Office."  Pub.L. 113-235, Div. H, §  1301(c)(1).

Reg. 62553 (noting that the DOC's "FOIA regulations are being updated to reflect developments in case law"). In issuing and updating those regulations the DOC obviously did not interpret *Oglesby* in the manner it now does for purposes of this case. *See id.*; 15 C.F.R. § 4.11(k).

In short, under the DOC's own regulations, the Appropriations Act does not displace FOIA's fee schedules. *See id.* And the DOC cannot abandon its own regulations simply to serve the exigencies of a lawsuit, especially where such a decision limits Plaintiff's statutory right to access government records. *See*, *e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ("*Accardi*"); *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) ("The *Accardi* doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."); *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) (stating that under the *Accardi* doctrine "agencies may not violate their own rules and regulations to the prejudice of others"); 32 Fed. Prac. & Proc. Judicial Review § 8165 (1st ed.) ("One of the most firmly established principles in administrative law is that an agency must obey its own rules."). For the DOC to assert a position in the middle of litigation that is directly contrary to what is set forth in its regulations—which were adopted after public notice and comment—is patently improper and should not be countenanced by this Court.

Because the Appropriations Act fails to meet *any*—let alone all—of the three requirements of a superseding fee statute for purposes of FOIA's Displacement Provision, summary judgment should be granted in favor of Plaintiff.

**III.    FOIA's fee waiver provision applies in any event.**

Even if this Court could consider the arguments made by the DOC for the first time in this litigation, which it cannot, and even if the Appropriations Act was a superseding fee statute for the purposes of FOIA's Displacement Provision, which it is not, Plaintiff is still entitled to

14

summary judgment because he properly requested a fee waiver pursuant to 5 U.S.C.

§ 552(a)(4)(A)(iii).  The DOC does not dispute that Plaintiff satisfies the criteria for a fee waiver

under that provision.  *See* DOC Opp. Br. at 2 n.1.  Instead, it contends that FOIA's Displacement

Provision displaces FOIA's fee waiver provision, a position that is at odds with both the

language of the Act and its legislative history.

As set forth in Plaintiff's Memorandum in Support of his Motion, Congress amended

FOIA's fee provisions in 1986 in several important ways.  Among other changes, it created the

fee schedule provisions now set forth in 5 U.S.C. § 552(a)(4)(A)(ii) concerning different types of

requesters (commercial, news media and educational, and other), and different types of fees

(search, duplication, review).  Pub. L. 99-570, § 1803; 132 Cong. Rec. 29616-19 (1986).  In

addition, Congress added the Displacement Provision that now appears at 5 U.S.C.

§ 552(a)(4)(A)(vi).  *Id.*  As Plaintiff's Memorandum discusses in detail, the floor statements

made in both the House and the Senate concerning the new fee provisions make clear that the

intent of adding the Displacement Provision was to clarify that the new *fee schedules* (i.e, those

appearing at (a)(4)(A)(ii)) did not alter existing laws fee setting statutes:

> The *fee schedules* in FOIA do not supersede fees chargeable under a statute that
> specifically provides for setting of a level of fees for particular types of records.
> This provision does not change current law.  The new language simply clarifies that
> statutes setting specific alternative bases for recovering dissemination costs can
> supersede FOIA fees.

132 Cong. Rec. 29618 (emphasis added); *see also* 132 Cong. Rec. 14299 (1986) (Sen. Leahy

statement).  In other words, the Displacement Provision can, when properly invoked, displace the

15

search, review, and duplication fees that normally would otherwise apply under Section

552(a)(4)(A)(ii).[6]  There is no evidence that Congress intended it to do anything else.

Despite this legislative history, the DOC contends that the Displacement Provision

"unambiguously states that it displaces all other *provisions* in that subparagraph of the statute[.]"

DOC Opp. Br. at 11 (emphasis added).  This misreads the statutory language.  The Displacement

Provision does not "unambiguously state" that it displaces all other "provisions" of the

paragraph.  It states that "[n]othing in this subparagraph shall supersede *fees chargeable* under a

statute specifically providing for setting the *level of fees* for particular types of records."  5

U.S.C. § 552(a)(4)(A)(vi) (emphasis added).  It simply ensures that other fee setting statutes are

not overridden by the types and level of fees that would otherwise apply to the disclosure of

records under FOIA.  Put another way, if there is another statute that sets "the level of fees" for

particular types of records, FOIA does nothing to alter that fee schedule.  *Id.*  But there are no

"*chargeable*" fees if a requester satisfies FOIA's fee waiver standard.  *Id.* (emphasis added).

The Displacement Provision does not speak to and does not affect FOIA's mandatory fee

waiver provision.  If there is a "fee" that is chargeable for records, whether pursuant to FOIA's

ordinary fee schedules or a superseding fee statute, the Act requires that fee to be waived if the

relevant criteria are met.  FOIA states, "Documents *shall be furnished without any charge* . . . if

disclosure of the information is in the public interest because it is likely to contribute

significantly to public understanding of the operations or activities of the government and is not

primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii) (emphasis

added).  This provision, which was expanded by the 1986 amendments, is a general fee waiver

---

[6] This is consistent with the DOC's own regulations.  *See* 15 C.F.R. § 4.11(k) ("The fee schedule of this section does not apply to *fees charged* under any statute (except for the FOIA) that specifically requires an agency to set and collect fees for particular types of records." (emphasis added)).

that applies regardless of what types or levels might otherwise ordinarily apply, much as one would expect a fee waiver to operate.  Indeed, in discussing the 1986 amendments, Senator Hatch first referenced the Displacement Provision, which he said "is intended to preserve the *fee structure* of any such statute," (emphasis added) and then went on to say that "[a]s for the bill's new *general fee waiver* standard itself, *it should be likewise taken to mean exactly what it says* . . . ."  132 Cong. Reg. 16505 (1986) (emphasis added).

Congress could have drafted FOIA's general fee waiver provision to apply only to FOIA's regular fee schedules, but it did not.  In fact, not only did Congress place no textual limitations on the types of fees that must be waived under 5 U.S.C. § 552(a)(4)(A)(iii), but the legislative history of that provision makes clear that it was intended to apply to *all* fees.  *See* 132 Cong. Rec. 29617 (stating that "*all* of the fees chargeable to any requester may be waived or reduced if disclosure of the information is in the public interest . . . ." (emphasis added)).  The 1986 amendments to FOIA reflect Congress's desire "to ensure that [the law] be liberally construed in favor of waivers for noncommercial requesters."  *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citations and quotations omitted); *see also* 132 Cong. Rec. 29617 (stating that "the new fee waiver standard should be liberally construed in order to encourage full and complete disclosure of information in the possession of the government that does not require withholding for a public or private interest.").

## CONCLUSION

For the reasons set forth in Plaintiffs' Memorandum in Support of his Motion for Summary Judgment and herein, the Court should grant Plaintiff's Motion.

Dated:  December 19, 2016

                              Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
DC Bar No. 1026115
Bruce D. Brown
DC Bar No. 457317
Adam A. Marshall
DC Bar No. 1029423
The Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
Email:  ktownsend@rcfp.org
Email:  bbrown@rcfp.org
Email:  amarshall@rcfp.org

*Counsel for Plaintiff*