# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

)
DAVID YANOFSKY,                          )
)
      Plaintiff,                  )
)
      v.                          )    No. 16-cv-00951 (KBJ)
)
UNITED STATES DEPARTMENT OF              )
COMMERCE,                                )
)
      Defendant.                  )
)

---

## MEMORANDUM OPINION

Because the information and records that an agency possesses rightfully belong to the public, one of the key commitments underlying the Freedom of Information Act ("the FOIA"), 5 U.S.C. § 552, is the principle that the federal government should not profit from its dissemination of documents in response to FOIA requests. *See* H.R. Rep. No. 99-560, at 26 (1986) (explaining that the FOIA reflects "[t]he policy of providing government documents at a price based on the cost of dissemination"). The FOIA accordingly contains an express provision that permits agencies to charge FOIA requesters only those fees that are reasonably necessary to recoup the funds that the government spends on searching for, duplicating, and reviewing responsive documents. *See* 5 U.S.C. § 552(a)(4)(A)(ii). Significantly for present purposes, however, the statute also contains a provision that clarifies that the FOIA's fee-setting prescriptions do not supersede "a statute specifically providing for setting the level of fees for particular types of records." *Id.* § 552(a)(4)(A)(vi).

The parties in the instant case are engaged in a pitched battle over whether or not Congress intended the Mutual Educational and Cultural Exchange Act of 1961 ("the MECEA"), 22 U.S.C. § 2451, *et seq.*, and the Consolidated Appropriations Act of 2016 ("the Appropriations Act"), Pub L. No. 114-113, § 9(B), 129 Stat. 2242, 2287 (2015) to displace the standard FOIA fee-setting requirements by authorizing an agency practice that allows the Department of Commerce (DOC") to charge thousands of dollars for certain data files.  Plaintiff David Yanofsky filed the instant action after he received a bill for $173,775 in connection with a FOIA request that he submitted to the DOC for information about the number of visitors and international flights to the United States. (*See* Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Consol. SUMF Part II"), ECF No. 23-1, ¶ 70.)  The DOC maintains that it regularly disseminates such information as part of a subscription-based program that has many institutional clients, and that the agency properly "collects, retains, and expends user fees pursuant to delegated authority under the [MECEA] as authorized in annual appropriations acts."  (Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 20, ¶ 5.)  Yanofsky's five-count complaint claims that the DOC "has unlawfully withheld the requested records by, *inter alia*, unlawfully denying [Yanofsky's] request for a fee waiver and informing [him] that he would have to purchase the requested records" at a price that is "far in excess of the fees [the DOC] is permitted to charge under the FOIA."  (Compl., ECF No. 1, ¶ 2.)

Before this Court at present are the parties' cross-motions for summary judgment (*see* Def.'s Mot.; Pl.'s. Mem. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 21-1), which are fully briefed and ripe for

decision (*see* Reply Mem. in Further Supp. of Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ J. ("Def.'s Reply"), ECF No. 23; Reply Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 25). The parties address three related issues in these motions: (1) whether the DOC should be permitted to contend that the MECEA and the Appropriations Act displace the FOIA's fee-setting provisions in the instant proceedings, when the agency did not rely on those statutes in the administrative proceedings below; (2) whether the MECEA and the Appropriations Act together supersede the FOIA's fee-setting provisions; and (3) whether those statutes also displace the FOIA's fee-waiver provisions.

For the reasons explained below, this Court agrees with the DOC that the agency can argue that the MECEA and the Appropriations Act constitute superseding fee statutes despite not doing so in its administrative proceedings, but given that the MECEA and the Appropriations Act neither identify a "particular type[] of records" nor "set [a] level of fees[,]" 5 U.S.C. § 552(a)(4)(A)(vi), this Court does not find this argument persuasive. And *Oglesby v. United States Department of the Army*, 79 F.3d 1172 (D.C. Cir. 1996), definitively forecloses the DOC's arguments to the contrary. Consequently, Plaintiff's cross-motion for summary judgment will be **GRANTED** and Defendant's motion for summary judgment will be **DENIED**.[1] A separate Order consistent with this Memorandum Opinion will follow.

---

[1] The Court's conclusion that the MECEA and Appropriations Act do not displace the FOIA's fee-setting provisions means that the Court need not further opine as to the effect of those statutes on the FOIA's fee-waiver provision.

# I. BACKGROUND

## A. Yanofsky's FOIA Request And The Accompanying Administrative Proceedings

### 1. <u>Yanofsky Seeks Data Files That The DOC Compiles</u>

On February 26, 2016, Yanofsky filed a FOIA request with the DOC, requesting records relating to that agency's I-92 and I-94 Programs. (*See* Pl.'s Combined Statement of Material Facts and Resp. to Def.'s Statement of Material Facts ("Consol. SUMF Part I"), ECF No. 21-2, ¶ 8.) The I-92 Program provides "international air traffic statistics to the government and the travel industry" (*id.* ¶ 2), while the I-94 Program "provides the official U.S. monthly and annual overseas visitor arrivals to the United States" (*id.* ¶ 4). One of the DOC's bureaus—the International Trade Administration ("the ITA")—uses the statistics that are collected through the I-92 program to generate a publication called the *U.S. International Air Travel Statistics Report*, and to create an underlying data file related to that report ("the I-92 Data File"). (*See id.* ¶ 3.) Meanwhile, that same bureau uses the information obtained via the I-94 Program to create another record—the *Summary of International Travel to the United States*—and to generate another data file ("the I-94 Data File") that consists of anonymized data about foreign visitors to the United States. (*See id.* ¶ 4.) The DOC then sells these reports and data files to the public. (*See id.* ¶¶ 3–4.)

In his FOIA request, Yanofsky sought copies of the I-92 and I-94 Data Files from 2011 through 2015, along with the accompanying technical documentation (*see id.* ¶ 8), and he also requested "a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii)" (*id.* ¶ 10). Yanofsky supported these requests by explaining that he is a "journalist for

Quartz," a digital publication of the Atlantic Monthly Group, and that he intended to use the requested records to gather information of potential interest to the public; specifically, "information about the operations of the DOC and other government agencies and about travel and tourism in the United States." (*See* Feb. 26, 2016 Request ("FOIA Request"), Ex. A to Erdmann Decl., ECF No. 20-1, at 8; *see also* Consol. SUMF Part II ¶ 61.) Yanofsky further explained that the requested records would shed light on the operations or activities of the DOC in a manner that was likely to contribute significantly to the public understanding of those operations or activities, and that he was not seeking the records primarily for commercial-interest purposes. (*See* FOIA Request at 9; Consol. SUMF Part II ¶¶ 63−66.)

Notably, Yanofsky's February 2016 FOIA request was not the first time he had made these arguments or requested these records. Yanofsky had filed a materially identical FOIA request the year before, on March 10, 2015 (*see* Consol. SUMF Part II ¶¶ 27−30), but the DOC denied this previous request. Initially, the agency insisted that "ITA does not maintain the [I-94 data] records[,]" and with respect to the I-92 Data Files, the agency asserted that ITA uses this data to develop reports that are offered for sale, and that "records which are published and offered for sale are excluded from the definition of subsection 5 U.S.C. § 552(a)(2) records[.]" (*Id.* ¶¶ 32−33 (internal quotation marks omitted).) Yanofsky filed an administrative appeal, after which the DOC subsequently acknowledged that all of the records Yanofsky requested were "agency records" for FOIA purposes, and thus could not be withheld for the reasons previously stated, but the DOC then offered an alternative basis for denying Yanofsky's request. (*See id.* ¶¶ 40−41.) It explained that both the I-92 and I-94 Data Files were

being withheld based on the FOIA's displacement provision (5 U.S.C. § 552(a)(4)(A)(vi)), and that the relevant superseding fee statute was 15 U.S.C. § 1525. (*See id.* ¶¶ 42–43.) Yanofsky filed the FOIA request that is the subject of the instant action in February of 2016, after he unsuccessfully sought to appeal the agency's conclusion that the FOIA's fee-setting requirements had been displaced.[2]

### 2. The Administrative Appeal Of Yanofsky's February 2016 FOIA Request

On March 30, 2016, the DOC sent Yanofsky a letter denying his February 2016 request for the I-92 and I-94 Data Files. The letter explained that all of the "records are being withheld under 5 U.S.C. § 552(a)(4)(A)(vi), which provides that FOIA fees are superseded by 'fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.'" (*See* ITA's Resp. to Request ("Denial Letter"), Ex. D to Erdmann Decl., ECF No. 20-1, at 18; *see also* Consol. SUMF Part II ¶¶ 77–78.) According to the DOC's correspondence, "where documents otherwise responsive to a FOIA request are maintained for distribution by an agency according to a fee schedule that is assessed pursuant to a 'superseding fee statute,' requesters must obtain the documents from that source and pay the applicable fees designated by the agency under that statute[.]" (Denial Letter at 18 (citing OMB Fee Guidelines, 52 Fed. Reg. at 10,012–13, 10,017–18).)

---

[2] In his second administrative appeal of the agency's denial of his March 2015 request, Yanofsky maintained that (1) the displacement provision provides no basis for denying a fee *waiver* (where the requirements for a fee waiver are otherwise satisfied); (2) 15 U.S.C. § 1525 does not constitute a superseding fee statute as defined in the displacement provision; and (3) "the $136,210.00 fees demanded for the requested records bears no relationship to the 'actual or estimated costs' of making them available in electronic format." (Consol. SUMF Part II ¶ 51; *see id.* ¶¶ 47, 50.) The DOC denied this appeal, asserting that Yanofsky was not entitled to another appeal merely because his initial "appeal was denied under a basis different than that asserted by ITA[.]" (*Id.* ¶ 53 (internal quotation marks omitted).)

The DOC's denial letter to Yanofsky also specifically maintained that the relevant superseding fee statute was 15 U.S.C. § 1525. (*See id.*) That statute provides:

> The Secretary of Commerce is authorized . . . to make special studies on matters within the authority of the Department of Commerce; to prepare from its records special compilations, lists, bulletins, or reports; . . . and to furnish transcripts or copies of its studies, compilations, and other records; upon the payment of actual or estimated cost of such special work.

15 U.S.C. § 1525. In its denial letter, the DOC explained that Section 1525 qualifies as a FOIA displacement statute under 5 U.S.C. § 552(a)(4)(A)(vi), because it specifically provides for setting the level of fees for particular types of records. (*See* Denial Letter at 19.) Consequently, the denial letter further rejected Yanofsky's request for a fee benefit or a fee waiver (*see* Consol. SUMF Part II ¶¶ 82–83), and directed him to the DOC's website, where he could "purchase the I-94 and I-92 [Data Files]" by paying the fees outlined by the agency (Denial Letter at 19). Those fees totaled $173,775. (Consol. SUMF Part II ¶ 70.)

On March 31, 2016, Yanofsky administratively appealed the denial of his FOIA request and his fee waiver request. (*See id.* ¶¶ 85, 91; *see also* Mar. 31, 2016 Administrative Appeal ("Admin. Appeal"), Ex. E to Erdmann Decl., ECF No. 20-1, at 25–26.)[3] Yanofsky raised three arguments on appeal. First, he argued that a superseding fee statute must require the agency to establish fees for particular documents, and that section 1525 of Title 15 does nothing of the sort. (*See* Admin. Appeal at 25; *see also* Consol. SUMF Part II ¶ 86.) Next, Yanofsky maintained that the "FOIA's Displacement Provision does not allow an agency to withhold, wholesale,

---

[3] It appears that Yanofsky's appeal did not address the agency's determination regarding his request for a media-member fee benefit. (*See* Admin. Appeal at 25–28.)

records requested under FOIA[,]" but instead only authorizes the agency to charge fees pursuant to a superseding statute rather than FOIA. (Admin. Appeal at 26 & n.1; *see also* Consol. SUMF Part II ¶ 87.) He further noted that, by its own terms, section 1525 permits an agency to "charge only the actual duplication costs associated with providing copies" of existing documents. (Admin. Appeal at 26 & n.1; *see also* Consol. SUMF Part II ¶ 87.) Finally, Yanofsky argued that the "FOIA's Displacement Provision applies only to FOIA's fee *setting* requirements and does not apply to FOIA's fee *waiver* requirements." (Admin. Appeal at 26 (emphasis in original); *see also* Consol. SUMF Part II ¶ 88.)

The DOC acknowledged receipt of Yanofsky's administrative appeal on April 8, 2016. (*See* Consol. SUMF Part II ¶ 92.) But it did not issue a decision with respect to Yanofsky's appeal within twenty business days, as the FOIA requires. (*See id.* ¶ 93.)

### B. Procedural History

On May 19, 2016, Yanofsky filed the five-count complaint in the instant case, challenging the DOC's withholding of the requested records and its denial of his fee-waiver requests. (*See* Compl., ECF No. 1, ¶¶ 59−91 (claiming Violation of FOIA for Unlawful Withholding of Agency Records (Count I); Violation of FOIA for Failure to Grant Fee Waiver (Count II); Violation of FOIA for Improper Assessment of Fees by Improper Application of 5 U.S.C. § 552(a)(4)(A)(vi) and 15 U.S.C. § 1525 (Count III); Violation of FOIA for Failure to Grant News Media Fee Status (Count IV); and Violation of FOIA for Improper Assessment of Fees Under 15 U.S.C. § 1525 (Count V)).) Yanofsky's complaint seeks an order requiring the DOC to disclose records responsive to Yanofsky's request, as well as a declaration that, *inter alia*, the DOC has

improperly assessed the fees it may charge for disclosure of the requested records. (*See* Compl., Request for Relief, ¶¶ 1–6.)

The DOC answered Yanofsky's complaint on July 22, 2016. (*See* Consol. SUMF Part II ¶ 96.) Notably, among other things, the DOC represented that "the superseding fee statute cited in ITA's Determination (15 U.S.C. § 1525) was cited in error and [] the superseding fee statute applicable to the February 2016 Request is the Consolidated Appropriations Act[,]" which pertains to a term in the MECEA. (Answer, ECF No. 14, ¶ 53; *see also* Consol. SUMF Part II ¶ 99 (acknowledging that the DOC's answer "is the first time it cited the Consolidated Appropriations Act for 2016 as a basis for denying Plaintiff's Request").) The parties have now filed cross-motions for summary judgment, and have fully briefed those motions. This Court held a motion hearing on May 16, 2017. (*See* Minute Entry for May 16, 2017.)

## II.   STATUTORY FRAMEWORK AND LEGAL STANDARDS

### A. Summary Judgment In FOIA Cases

"FOIA cases typically and appropriately are decided on motion[s] for summary judgment." *Lieberman v. DOT*, 227 F. Supp. 3d 1, 8 (D.D.C. 2016) (quoting *Bigwood v. DOD*, 132 F. Supp. 3d 124, 134 (D.D.C. 2015)). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56, and, in the context of a dispute over the FOIA's fee-setting and fee-waiver provisions, it is the requester who bears the burden to demonstrate that he is entitled to a fee waiver, *see Citizens for Responsibility & Ethics in Wash. v. DOJ*, 602 F. Supp. 2d 121, 125 (D.D.C. 2009) (citing *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004)).

When reviewing "any action by [a FOIA] requester regarding the waiver of fees," the district court must "determine the matter de novo." 5 U.S.C. § 552(a)(4)(A)(vii). However, section 552(a)(4)(A)(vii) limits the scope of a court's review in these matters to "the record before the agency." *Id.*; *see also Cause of Action v. FTC*, 799 F.3d 1108, 1114 (D.C. Cir. 2015). And courts typically understand "the record before the agency" to include "the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal," *Schoenman v. FBI*, 604 F. Supp. 2d 174, 188 (D.D.C. 2009) (quoting *Jarvik v. CIA*, 495 F. Supp. 2d 67, 71 (D.D.C. 2007)), along with prior FOIA requests and the administrative proceedings related to those requests, if the previous FOIA requests relate to the same dispute over the same documents, *see Cause of Action*, 799 F.3d at 1114. In addition, "because FOIA's terms apply government-wide[,] . . . [courts] generally decline to accord deference to agency interpretations of the statute, as [they] would otherwise do under *Chevron*." *Al–Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001).

### B. FOIA's Fee-Setting, Fee Waiver, And Displacement Provisions

The FOIA provides a detailed statutory scheme for the charging of fees to FOIA requesters in conjunction with their FOIA requests. *See* 5 U.S.C. § 552(a)(4)(A). The statute generally instructs the Office of Management and Budget ("OMB") to promulgate regulations that will provide for a "uniform schedule of fees," *id.* § 552(a)(4)(A)(i), and mandates that those regulations place FOIA requests into one of three categories, each of which results in a different set of fees, *see id.* § 552(a)(4)(A)(ii). Specifically, and as relevant here, when records are requested for commercial use, "fees shall be limited to reasonable standard charges for document search, duplication, and review[,]" *id.* at § 552(a)(4)(A)(ii)(I); when records are not

10

sought for commercial use and the request is made by "a representative of the news media[,]" then "fees shall be limited to reasonable standard charges for document duplication[,]" *id.* § 552(a)(4)(A)(ii)(II); and when the request does not fit into either of the first two categories "fees shall be limited to reasonable standard charges for document search and duplication[,]" *id.* § 552(a)(4)(A)(ii)(III).

Two other fee-related provisions of the FOIA statute are relevant to the issues presented in this case. First, the FOIA contains what is often referred to as a "fee-waiver provision," which permits requesters to obtain records "without any charge or at a charge reduced below the fees established" above "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii). Second, the FOIA contains one final caveat—notwithstanding the detailed provisions that govern the setting of fees—the "displacement provision[,]" which states: "Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records." *Id.* § 552(a)(4)(A)(vi).

### C. The Mutual Educational And Cultural Exchange Act Of 1961 And The Appropriations Act Of 2016

The dispute in the instant case centers on whether the Mutual Educational And Cultural Exchange Act of 1961 ("the MECEA") and the Appropriations Act of 2016 ("the Appropriations Act") together serve as a superseding statute that displaces the FOIA's fee-setting provisions. Congress enacted the first of these statutes to "enable the Government of the United States to increase mutual understanding between the people of the United States and the people of other countries by means of educational

and cultural exchange," 22 U.S.C. § 2451, and by its terms, the MECEA authorizes

educational and cultural exchange programs, *id.* § 2452, international expositions, *id.*

§ 2452(b), and the establishment of the Fulbright scholarship board, *id.* § 2456. The

statute further specifically provides that

> [f]oreign governments, international organizations and private individuals,
> firms, associations, agencies, and other groups shall be encouraged to
> participate to the maximum extent feasible in carrying out this chapter and
> *to make contributions of funds*, property, and services which the President
> is authorized to accept, *to be utilized to carry out the purposes of this
> chapter.* Funds made available for the purposes of this chapter may be used
> to contribute toward meeting the expenses of activities carried out through
> normal private channels, by private means, and through foreign
> governments and international organizations.

22 U.S.C. § 2455(f) (emphasis added). In the Appropriations Act of 2016, Congress

clarified the word "contributions" as it appears in the MECEA, explaining that

"contributions under the provisions of the [MECEA] shall include *payment for*

*assessments for services* provided as part of these activities." § 9(B), 129 Stat. at 2287

(emphasis added).

## III. ANALYSIS

In response to Yanofsky's claim that the DOC is charging unlawfully exorbitant

fees for access to data that the agency is required to disseminate under the FOIA, the

DOC contends that it has the authority to sell the requested information, because the

MECEA has displaced the FOIA's fee-setting provisions, as clarified in the

Appropriations Act. Yanofsky's first response to the agency's argument is that the

DOC is precluded from relying on the combination of the MECEA and the

Appropriations Act as a superseding statute because, at the administrative level, the

DOC maintained that 15 U.S.C. § 1525 was the fee statute that displaced the FOIA's fee

provisions, and this Court's review of the DOC's FOIA determination is limited to the

administrative record under 5 U.S.C. § 552(a)(4)(A)(vii). (*See* Pl.'s Mot. at 17–19.)

For the reasons discussed below, this Court has concluded that the FOIA does not

prevent this Court from considering the DOC's argument that the MECEA and the

Appropriations Act work in tandem to displace the FOIA's fee setting provisions. But

the Court also finds that those statutes do not constitute a superseding fee statute that

displaces the FOIA's fee-setting provisions, because neither statute "provid[es] for

setting the level of fees[,]" nor do they do so for "particular types of records[,]" as the

FOIA requires. 5 U.S.C. § 552(a)(4)(A)(vi).

### A. The DOC's Reliance On 15 U.S.C. § 1525 Below Does Not Prevent The Agency From Arguing That The MECEA And The Appropriations Act Displace The FOIA's Fee-Setting Provisions

As noted above, "in any action . . . regarding the waiver of fees under" section

552(a)(4)(A), a court must review the parties' dispute *de novo*, but it has to limit its

review to "the record before the agency" when the agency made its decision. *See id.*

§ 552(a)(4)(A)(vii). Yanofsky insists that this limitation prevents this Court from

considering the DOC's current contentions regarding the displacement power of the

MECEA and the Appropriations Act. As Yanofsky reads section 552(a)(4)(A)(vii) of

the FOIA, "both the requester and the agency are limited to the arguments contained in

the administrative record" (Pl.'s. Mot. at 17 (emphasis removed)), and here, the DOC is

admittedly relying on an entirely different statute to justify its fees than it asserted at

the administrative level (*see id.* at 18 (noting that "the DOC relied exclusively on the

Special Works Statute to deny [Yanofsky's] Request for I-92 and I-94 Data Files at the

administrative stage, arguing that it was a superseding fee statute for purposes of

FOIA's Displacement Provision")). This Court disagrees with Yanofsky's analysis of

the implications of section 552(a)(4)(A)(vii) for one very simple reason: while it is

certainly true that a court's review "is limited" to the facts submitted to the agency, and that "the agency must stand on whatever reasons for denial it gave in the administrative proceeding[,]" *Friends of the Coast Fork v. U.S. Dep't of the Interior*, 110 F.3d 53, 55 (9th Cir. 1997), there is a world of difference between providing *new* reasons for the agency's decision at the district court stage and merely refining the same legal arguments that the parties advanced in the proceedings below.

D.C. Circuit precedent explains that difference in this way: "[i]ssues and legal theories not asserted [below] ordinarily will not be heard on appeal[,]" but litigants may, of course, "offer[] new legal authority for the position" that they previously advanced. *United States v. Rapone*, 131 F.3d 188, 196 (D.C. Cir. 1997). Indeed, the circuit panel specifically noted that, with respect to "a question of law that [a court] review[s] de novo, [] we do not think it appropriate to ignore relevant legal authority simply because it was not considered in the court below." *Id.* at 197 (emphasis omitted). In other words, it is well established that "when a [] court reviews a question of law de novo, the court must use its 'its full knowledge of its own [and other relevant] precedents.'" *Id.* (alteration in original) (emphasis removed) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). This prevents "a windfall to a party 'because of shortages in counsel's or the court's legal research or briefing.'" *Id.* (quoting *Elder*, 510 U.S. at 515 & n.3); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (noting that courts have an "independent power to identify and apply the proper construction of governing law").

In the instant case, the DOC unquestionably asserted at the administrative stage the displacement provision of the FOIA as its reason for denying Yanofsky's FOIA

request (*see* Denial Letter at 18), such that any fair reading of the arguments that the DOC now makes compels the conclusion that its current position is a mere refinement of the legal argument that the DOC has advanced ever since Yanofsky filed his FOIA request. Indeed, the DOC's denial letter of March 30, 2015, which was addressed to Yanofsky, expressly stated that

> [b]oth the I-94 and the I-92 records *are being withheld under 5 U.S.C. § 552(a)(4)(A)(vi)*, which provides that FOIA fees are superseded by "fees chargeable under a statute specifically providing for setting the level of fees for particular types of records."

(Denial Letter at 18 (quoting 5 U.S.C. § 552(a)(4)(A)(vi)) (emphasis added).) This is the same argument that the DOC made when it answered the complaint in the instant case (Answer ¶ 29), and it is also the DOC's asserted grounds for summary judgment (*see, e.g.*, Def.'s Mot. at 11). Therefore, Yanofsky cannot credibly claim that the DOC's reliance on the FOIA's displacement provision is a new matter or issue that is not part of the administrative record in this case.

To be sure, at the administrative stage, the DOC also expressly asserted that 15 U.S.C. § 1525 is the statutory provision that displaces the FOIA's fee-setting provisions. (*See* Denial Letter at 18–19.) However, in this Court's view, the DOC's present assertion that the MECEA and the Appropriations Act qualify as the pertinent superseding statute implicates considerations of law that this Court must evaluate by virtue of the DOC's persistent contention that the FOIA's displacement provision applies. It makes little sense for this Court to be stuck analyzing the legal effect of a statutory provision that the DOC has long since abandoned, and while any such analysis is necessarily substantively different than the one conducted during the administrative process, the Court is still evaluating displacement as a matter of law—not a *new* or

*different* reason for the denial of Yanofsky's fee waiver in violation of 5 U.S.C. § 552(a)(4)(A)(vii). Rather, the DOC has merely cited and quoted different "legal authority" for its abiding assertion that the FOIA's fee-setting provisions have been superseded with respect to the FOIA request at issue in this case. *Rapone*, 131 F.3d at 196.

In other words, when determining the scope of this Court's review authority under section 552(a)(4)(A)(vii) of the FOIA, "[w]hat matters is that the core of [Defendant's] argument . . . remained the same." *Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017). So it is here, and as a result, this Court will now conduct a de novo review of the legal arguments that the DOC is currently making in support of its long-standing view that the FOIA's fee-setting provision has been superseded within the meaning of the displacement provision for purposes of Yanofsky's FOIA request.

## B. The MECEA And The Appropriations Act Do Not Displace The FOIA's Fee-Setting Provisions Under § 552(a)(4)(A)(vi)

The substantive arguments in this case turn on whether the MECEA and the Appropriations Act constitute superseding fee-setting statutes as defined in 5 U.S.C. § 552(a)(4)(A)(vi). Yanofsky contends that these statutes do not constitute superseding fee statutes because they neither identify "particular types of records" nor do they "set[] the level of fees" for these records. (*See* Pl.'s Mot. at 21–26.) For its part, the DOC insists that the MECEA and Appropriations Act together meet both of these displacement requirements. (*See* Def.'s Mot. at 10–13.) This Court concludes that Yanofsky has the better of this argument.

As explained above, the FOIA's displacement provision provides that nothing in

16

the FOIA's fee-setting scheme "shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records."  5 U.S.C. § 552(a)(4)(A)(vi).  By its plain text, then, the FOIA fee-setting provision is superseded when Congress otherwise (1) "provid[es] for setting the level of fees[,]" and (2) does so "for particular types of records."  *Id.*  The seeming clarity of this displacement principle might help to explain why there is a relative dearth of case law regarding the meaning of these two requirements in practice.  Indeed, the D.C. Circuit has interpreted this provision only once before, in the case of *Oglesby v. United States Department of the Army*, 79 F.3d 1172 (D.C. Cir. 1996).

In *Oglesby*, the plaintiff sought a number of records from the National Archives and Records Administration ("NARA") and requested that the agency grant him a fee waiver under the FOIA's fee-waiver provision.  *See* 79 F.3d at 1176–77.  NARA denied Oglesby's request for a fee waiver, arguing that, pursuant to 5 U.S.C. § 552(a)(4)(A)(vi), section 2116(c) of Title 44 of the U.S. Code ("the NARA statute") displaced the FOIA's fee-setting and fee-waiver provisions.  *See id.* at 1177.  The NARA statute expressly authorized the Archivist "to recover the costs for making or authenticating copies or reproductions of materials transferred to [his] custody[,]" and the statute further stated that "[s]uch fee shall be fixed . . . at a level which will recover, so far as practicable, all elements of such costs[.]"  44 U.S.C. § 2116(c).  Oglesby maintained that this statute did not displace the FOIA's fee-setting provisions, because it did not "provide[] a set formula for the imposition of fees [or] mandate[] the assessment of fees[,]" *Oglesby*, 79 F.3d at 1177 (internal quotation marks and citation omitted), nor did it "describe particular types of records," *id.* (internal quotation marks

and citation omitted).

The D.C. Circuit disagreed. Based on the "plain language" of the NARA statute, that court concluded that the statute did, in fact, qualify as a superseding statute under the FOIA's displacement provision, because it both set "the level of fees" (insofar as it specified that the fees "shall be fixed at a level" that "will recover . . . all elements of [the Archivist's] costs" for making and authenticating copies or reproductions), and described "particular types of records" (it specifically pertained to "copies or reproductions of materials" in the Archivist's custody). *Id.*[4] Given this conclusion, it is clear to this Court that the MECEA and Appropriations Act do not specifically pertain to any identifiable set of records, nor set the level of fees for an agency's dissemination of such records, and as such, they do not qualify as superseding statutes for the purpose of the FOIA's displacement provision.

1. The MECEA And The Appropriations Act Do Not Identify "Particular Types Of Records"

When read in conjunction, the MECEA and the Appropriations Act provide that "[f]oreign governments, international organizations and private individuals, firms, associations, agencies, and other groups shall be encouraged . . . to make contributions . . . to carry out the purposes of this chapter," 22 U.S.C. § 2455(f), and such contributions "include payment for assessments for services provided as part of these activities," Appropriations Act § 9(B), 129 Stat. 2287. Not even the most probing evaluation of this language could reasonably lead one to conclude that it identifies any "particular types of records." 5 U.S.C. § 552(a)(4)(A)(vi). That is, neither statute

---

[4] The D.C. Circuit left open the question of whether a statute that displaces the FOIA's fee-*setting* provisions also displaces the FOIA's fee-*waiver* provisions, because the plaintiff failed to raise that argument in a timely fashion. *Oglesby*, 79 F.3d at 1178.

refers to any records, documents, or written materials at all, much less the type of data that the I-92 or I-94 Data Files contain. *See* 22 U.S.C. § 2455(f); Appropriations Act § 9(B), 129 Stat. 2287. This fact alone distinguishes the MECEA and Appropriations Act from the statute at issue in *Oglesby*, which "accurately identified" particular records among the many records NARA possesses by specifically referencing the "materials transferred to [the Archivist's] custody." *Oglesby*, 79 F.3d at 1177.

The DOC acknowledges that the closest that either statute comes to suggesting that an agency can charge fees for its dissemination of particular records is when the Appropriations Act clarifies that an agency may receive payments for assessments "for services provided as part of these activities." § 9(B), 129 Stat. 2287. (*See* Def.'s Reply at 11–12.)[5] But the phrase "services provided" does not specifically connote the collection and distribution of *documents*; indeed, as Black's Law Dictionary defines it, a "service" typically refers to "[l]abor performed in the interest or under the direction of others" or "an intangible commodity in the form of human effort such as labor, skill or advice." *Black's Law Dictionary* 1576 (10th ed. 2014). Thus, by saying that the DOC may collect payments for "services provided" for its activities, Congress appears to be suggesting that the DOC can receive compensation for its labor pertaining to international trade activities, *not* the cost of distributing records or documents, much less payment for the documents themselves.

Leaving dictionaries aside, the *Oglesby* court's discussion of a statute that did *not* qualify as a superseding statute—31 U.S.C. § 9701(b)—forecloses any argument that the phrase "services provided" could possibly be interpreted as identifying

---

[5] The "activities" that the Appropriations Act refers to include any "international trade activities of the [DOC] provided for by law" or "trade promotional activities abroad." § 9(B), 129 Stat. 2286.

particular records. Section 9701 of Title 31 states that "the head of each agency . . . may prescribe regulations establishing the charge for a service or thing of value provided by the agency." 31 U.S.C. § 9701(b). The D.C. Circuit explained that the phrase "'thing of value' clearly does not describe 'particular types of records[,]'" but that court did not even deign to address the possibility that the statute's reference to "a service . . . provided by the agency" satisfied the displacement provision's "particular types of records" requirement. *Oglesby,* 79 F.3d at 1177 (emphasis omitted). Similarly, the phrase "services provided as part of these activities" in the MECEA and the Appropriations Act does not "accurately identif[y]" a "particular type[] of record[,]" *id.*, and certainly not the category of documents that Yanofsky has requested in this case.

The DOC's only response to this analysis is to direct this Court's attention to *Wade v. Department of Commerce*, 1998 U.S. Dist. LEXIS 23251 (D.D.C. Mar. 16, 1998), which the agency says supports the conclusion that the MECEA and Appropriations Act are "sufficiently specific to qualify as a superseding fee statute." (Def.'s Reply at 10–11.) But that case is actually inapposite, because the parties in *Wade* apparently *agreed* that the statute in that case constituted a superseding fee statute, *see Wade*, 1998 U.S. Dist. LEXIS 23251, at *8, and neither the parties nor the district court specifically addressed whether the statute at issue in that case qualified as a superseding fee statute under 5 U.S.C. § 552(a)(4)(A)(vi).

Moreover, and notably, the statute at issue in *Wade* was materially different from the MECEA and the Appropriations Act; it specifically provided that the Secretary of Commerce could establish "a schedule or schedules of reasonable fees or charges for

services performed *or documents or other publications* furnished under [15 U.S.C.

§§ 1151–57.]." 15 U.S.C. § 1153. Thus, section 1153 expressly identified particular

types of records. Consequently, if anything, the comparison between the statute at issue

in *Wade* and the MECEA/Appropriations Act *undercuts* the government's argument, by

suggesting that when Congress wants to reference documents it does do explicitly and

does not typically use the term "services" to identify the records that an agency creates.

    2. <u>The MECEA And The Appropriations Act Do Not Set A "Level Of Fees"</u>

This Court also has serious doubts about whether the MECEA and the

Appropriations Act authorize the DOC to set any "fees" at all. The provisions to which

the DOC points appear to address the agency's interaction with "[f]oreign governments,

international organizations and private individuals, firms, associations, agencies and

other groups[,]" and Congress merely stated that such entities "shall be encouraged to

participate to the maximum extent feasible in carrying out this chapter[,]" 22 U.S.C.

§ 2455(f), including by "mak[ing] contributions of funds, property, and services which

the President is authorized to accept[,]" *id.* This encouragement and authorization

seems far closer to permitting foreign entities to make a lawful donation to the DOC

than allowing the DOC to charge a "fee."

In any event, nothing in the MECEA or the Appropriations Act speaks to the

agency's task of "setting the level of fees," as the FOIA's displacement provision

requires. 5 U.S.C. § 552(a)(4)(A)(vi). At best, these statutes authorize the DOC to

collect "payment for assessments for services," Appropriations Act § 9(B), 129 Stat.

2287, but that language provides no guidance as to *how* the DOC should calculate these

"assessments." Must the DOC set these assessments at a level that merely recoups its

21

costs?  Can the agency merely dictate a fee for each service, without regard to the costs it incurs in providing that service?  And if so, is the agency entitled to set the fees at whatever level it thinks appropriate?  The MECEA and Appropriations Act contain no answers, and thus, it cannot be said that these statutes "provide[] for setting the level of fees" for the purposes of the FOIA's displacement provision.  5 U.S.C. § 552(a)(4)(A)(vi).

This silence regarding how the fees are to be calculated stands in stark contrast to the statutes that the D.C. Circuit and Congress have acknowledged as superseding fee-setting statutes within the meaning of the FOIA.  In *Oglesby*, for example, the NARA statute that displaced the FOIA's fee-setting provisions specifically stated that "fees shall be fixed . . . *at a level which will recover, so far as practicable, all elements of such costs.*"  79 F.3d at 1177 (alteration in original) (emphasis added) (quoting 44 U.S.C. § 2116(c)).  Similarly, when members of Congress discussed inserting a displacement provision into the FOIA, *see* 132 Cong. Rec. 29618 (1986), they indicated that 44 U.S.C. § 1708 would qualify as a displacing statute, because that statute states that "[t]he price at which additional copies of government publications are offered for sale to the public by the Superintendent of Documents shall be *based on the cost as determined by the Public Printer plus 50 percent*," 44 U.S.C. § 1708 (emphasis added).  Put simply, like the NARA statute, 44 U.S.C. § 1708 sets "a level of fees" that applies *in a specific manner*, even though the final cost is not predetermined.  It also demonstrates that a proper superseding fee statute reflects Congress's intent as it relates specifically to the agency's task of setting the level of fees for records.  Neither the MECEA nor the Appropriations Act speaks to how the DOC's fees with respect to its I-

92 and I-94 data need to be determined, and thus this Court concludes that those statutes do not qualify as laws that supersede the fees provided for in the FOIA.

In resisting this conclusion, the DOC maintains that "providing for setting the level of fees" for the purpose of section 552(a)(4)(A)(vi) does not require that a statute "identify the fee amount or define a method to determine it." (Def.'s Reply at 11.) This Court largely disagrees with the latter part of this contention for the reasons already discussed, but even if that is so, after *Oglesby*, there can be no doubt that the statute in question must say *something* to authorize the agency to set fees pertaining to the agency's dissemination of records in *some* manner. The statutes at issue here miss this mark entirely, for they provide only that the DOC may receive "payment for assessments for services provided as part of these activities[.]" Appropriations Act § 9(B), 129 Stat. 2287. And even if the word "assessments" *implies* that it is the DOC that will determine what fees are owed with respect to the service of providing records to the public (Def.'s Reply at 11–12), nothing in the text of the MECEA or the Appropriations Act tells the agency how to go about calculating those assessments, which means that they cannot plausibly be read to have the character of a superseding fee-setting provision, as the D.C. Circuit has interpreted the 5 U.S.C. § 552(a)(4)(A)(vi).

Ultimately, this Court's analysis ends where it began: with the plain language of the FOIA displacement statute, as illuminated by D.C. Circuit precedent. The only statute that supersedes the FOIA's specific fee-setting prescriptions is one that "specifically provide[s] for setting the level of fees for particular types of records." 5 U.S.C. § 552(a)(4)(A)(vi). And while the DOC has struggled valiantly to repackage the

MECEA and the Appropriations Act as statutes that trump the FOIA's fee-setting

provisions in a manner that justifies the $173,775 bill the agency presented to Yanofsky

for the records at issue in this case, neither of those statutes actually satisfies this

standard.  As a result, the DOC must follow the FOIA, and determine the fees that are

applicable to Yanofsky's FOIA's request in accordance with the FOIA's fee-setting and

fee-waiver provisions.[6]

## IV.    CONCLUSION

For the reasons explained above, the Defendant's motion for summary judgment

is **DENIED**, the Plaintiff's motion for summary judgment is **GRANTED**, and this case

will be remanded to the agency for a reevaluation of the fees that Yanofsky will be

charged, consistent with the reasoning of this Opinion.  A separate order will follow.

DATE: March 30, 2018                     *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States District Judge

---

[6] To this Court's knowledge, the only jurisdiction other than the D.C. Circuit that has analyzed the FOIA's displacement provision is the Ninth Circuit.  *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 948–49 (9th Cir. 2005).  But the Ninth Circuit's analysis differs from the D.C. Circuit's insofar as the Ninth Circuit apparently affords *Chevron* deference to the Office of Management and Budget's regulations relating to 5 U.S.C. § 552(a)(4)(A).  *See id.*  The D.C. Circuit does not defer to agencies in the FOIA context, *see, e.g.*, *DeNaples v. Office of the Comptroller of the Currency*, 706 F.3d 481, 487 (D.C. Cir. 2013); *Al–Fayed*, 254 F.3d at 307; therefore, the Ninth Circuit's precedent is of limited utility.