# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID YANOFSKY**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES DEPARTMENT OF COMMERCE**,<br><br>　　　　　Defendant. | Civil Action No. 1:16-cv-00951 (KBJ) |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

INTRODUCTION  1

BACKGROUND  1

ARGUMENT  4

I.  Plaintiff is *eligible* for an award of attorneys' fees and costs under FOIA.  4

II. Plaintiff is *entitled* to an award of attorneys' fees and costs under FOIA.  5
   A.  The public benefit derived from this case supports an award of fees.  6
   B.  Plaintiff has a journalistic interest in these records and received no commercial benefit.  8
   C.  DOC was unreasonable in withholding the requested documents.  10

III. Plaintiffs' attorneys' fees are reasonable.  13
   A.  The hours spent by Plaintiff's attorneys on this matter are reasonable.  13
   B.  Plaintiff's attorneys' hourly rates are reasonable.  15

CONCLUSION  17

# TABLE OF AUTHORITIES

**Cases**

*Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135 (D.D.C. 2007) ............................................ 15
*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 15
*Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ................................. 4, 5
*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995) ....................................................................... 6
*Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) ........................................... 15
*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ...................................................................... passim
*Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338 (D.D.C. 2014) .............................................. 6
*Gatore v. U.S. Dep't of Homeland Sec.*, 286 F. Supp. 3d 25 (D.D.C. 2017) ......................... 16, 17
*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225 (D.D.C. 2011) ............... 13, 15
*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225 (D.D.C. 2012) ..................... 13
*Morley v. CIA*, 810 F.3d 841 (D.C. Cir. 2016) ............................................................................. 6
*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) ............................. 5, 9
*Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) ................................................. 16
*Yanofsky v. U.S. Dep't of Commerce*, – F. Supp. 3d –, 2018 WL 1583305
    (D.D.C. Mar. 30, 2018) ......................................................................................... passim

**Statutes**

15 U.S.C. § 1525 ................................................................................................................. 2, 3, 11
*5 U.S.C. § 552 ........................................................................................................................ passim
Consolidated Appropriations Act, Pub. L. No. 114–113, § 9(B),
    129 Stat. 2242, 2287 ........................................................................................... 3, 11, 12, 14
Mutual Educational and Cultural Exchange Act, 22 U.S.C. §§ 2455(f) and 2458(c) ... 4, 11, 12, 14

**Other Authorities**

David Yanofsky, *We won our lawsuit against the US government over paywalled immigration data,* QUARTZ (Apr. 3, 2018) ........................................................................................... 7
Geneva Sands, *How Trump's revised ban impacts travel and immigration to the US*, ABC News (Sept. 25, 2017) ...................................................................................................................... 7
LSI *Laffey* Matrix, available at Fee Award Litigation, Terris, Pravlik & Millian, LLP, http://www.tpmlaw.com/fees/ ............................................................................................ 16
Reporters Committee About Us, https://www.rcfp.org/about ..................................................... 15
S. Rep. No. 93-854 ........................................................................................................................ 5
*The Latest: White House says travel ban is working*, Wash. Post (Apr. 25, 2018), ..................... 7
Wesley Lowery & Josh Dawsey, *Early chaos of Trump's travel ban set stage for a year of immigration policy debates*, Wash. Post (Feb. 6, 2018) ...................................................... 7

## INTRODUCTION

This case arose out of journalist David Yanofsky's Freedom of Information Act ("FOIA" or the "Act") request to the Department of Commerce ("DOC") for records related to foreign travel to and from the United States.  Despite conceding that the data files requested by Mr. Yanofsky were agency records subject to FOIA, 5 U.S.C. § 552, DOC refused to release them.  DOC demanded that Mr. Yanofsky pay fees totaling $173,775.00 to obtain the data files—fees far in excess of those permitted under FOIA.  *Yanofsky v. U.S. Dep't of Commerce*, – F. Supp. 3d –, 2018 WL 1583305, *2–3 (D.D.C. Mar. 30, 2018).  On May 19, 2016, Mr. Yanofsky filed the above-captioned action.  ECF No. 1.  On March 30, 2018, this Court granted summary judgment in Mr. Yanofsky's favor, ordering DOC to determine the fees applicable to Mr. Yanofsky's FOIA request in accordance with the Act's fee-setting and fee-waiver provisions.  *Id.* at *10.

As a result of the Court's order, Mr. Yanofsky has "substantially prevailed" in this litigation and is thus eligible for and entitled to recover reasonable attorneys' fees and costs.  5 U.S.C. § 552(a)(4)(E)(i)-(ii)(1).  Accordingly, Mr. Yanofsky respectfully requests an award of no less than $73,391.00—the total amount of Plaintiff's reasonable attorneys' fees and costs in this case to date.  *See* Declaration of Katie Townsend ("Townsend Decl.") ¶ 21.

## BACKGROUND

Plaintiff is a journalist at *Quartz*, an online news outlet founded in 2012.  Welcome to Quartz, https://qz.com/about/welcome-to-quartz.  On March 10, 2015, in connection with his reporting for *Quartz*, Plaintiff sent a FOIA request to DOC seeking access to and copies of data files related to two programs administered by the DOC—the I-94 and I-92 Programs—that concern foreign travel to and from the United States.  *Yanofsky*, 2018 WL 1583305 at *2.  Specifically, "[t]he I–92 Program provides international air traffic statistics to the government

1

and the travel industry, while the I–94 Program provides the official U.S. monthly and annual overseas visitor arrivals to the United States." *Id.* (internal quotation marks and citations omitted). An agency within DOC, the International Trade Administration ("ITA"), "uses the statistics that are collected through the I–92 program to generate a publication called the U.*S. International Air Travel Statistics Report*, and to create an underlying data file related to that report" ("I–92 Data File"). *Id.* ITA also "uses the information obtained via the I–94 Program to create another record—the *Summary of International Travel to the United States*—and to generate another data file" ("I–94 Data File"), which "consists of anonymized data about foreign visitors to the United States." *Id.* DOC "then sells these reports and data files to the public." *Id.*

Mr. Yanofsky's March 2015 request sought access to and copies of certain I–92 and I–94 Data Files. *Id.* Plaintiff requested a fee benefit as a representative of the news media as well as a public interest fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)–(iii). *Id.* DOC denied Plaintiff's request, asserting that the I-94 Data Files were not agency records subject to FOIA and that because the I-92 Data Files were published and offered for sale, they therefore were excluded from the definition of § 552(a)(2) records. *Id.*

Plaintiff administratively appealed. Conceding that the requested records were agency records subject to FOIA, DOC nevertheless denied Plaintiff's administrative appeal. The agency asserted that 15 U.S.C. § 1525 displaced FOIA's fee schedules under 5 U.S.C. § 552(a)(4)(A)(vi) ("Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.") (the "Displacement Provision"). *Id.*

On February 26, 2016, Mr. Yanofsky sent a new FOIA request to DOC for copies of the I-94 Data File and I-92 Data File for five calendar years: 2015, 2014, 2013, 2012 and 2011. *Id.*

2

Plaintiff again requested both a fee benefit as a representative of the news media and a fee waiver. *Id.* DOC denied his request, including the request for a fee waiver, claiming that the I-92 and I-94 Data Files were being withheld under FOIA's Displacement Provision and that 15 U.S.C. § 1525 superseded FOIA's normal fee schedules. *Id.* at *3. DOC's denial letter directed Mr. Yanofsky to DOC's website, which indicated that he could purchase the I-94 and I-92 Data Files by paying fees totaling $173,775.00. *Id.*

Plaintiff administratively appealed on March 31, 2016, asserting three arguments:

> First, he argued that a superseding fee statute must require the agency to establish fees for particular documents, and that section 1525 of Title 15 does nothing of the sort. Next, [Mr.] Yanofsky maintained that the "FOIA's Displacement Provision does not allow an agency to withhold, wholesale, records requested under FOIA," but instead only authorizes the agency to charge fees pursuant to a superseding statute rather than FOIA. He further noted that, by its own terms, section 1525 permits an agency to "charge only the actual duplication costs associated with providing copies" of existing documents. Finally, Yanofsky argued that the "FOIA's Displacement Provision applies only to FOIA's fee setting requirements and does not apply to FOIA's fee waiver requirements."

*Id.* (citations omitted). DOC acknowledged receipt of Mr. Yanofsky's administrative appeal on April 8, 2016, but did not issue a decision within twenty days, thus constructively denying it. *Id.*

On May 19, 2016, Mr. Yanofsky initiated this lawsuit against DOC challenging its unlawful withholding of agency records, its failure to grant Plaintiff a fee waiver or fee benefit as required by FOIA, and its improper assessment of fees under the Act. *Id.* In its Answer, filed on July 16, 2016, DOC abandoned its previous argument that 15 U.S.C. § 1525 was a superseding fee statute, stating it had cited that statute "in error." *Id.* at *4. Instead, DOC asserted that two other federal statutes, the Consolidated Appropriations Act of 2016, Pub. L. No. 114–113, § 9(B), 129 Stat. 2242, 2287 (2015) ("Appropriations Act") and the Mutual Educational and

3

Cultural Exchange Act of 1961, 22 U.S.C. §§ 2455(f) and 2458(c) ("MECEA") superseded FOIA's fee-setting provision with respect to Mr. Yanofsky's February 2016 request. *Id.*

The parties subsequently filed cross-motions for summary judgment. The Court heard argument on those cross-motions on May 16, 2017. On March 30, 2018, the Court issued an order granting Plaintiff's summary judgment motion and denying DOC's summary judgment motion ("Order"). ECF No. 29. On April 3, 2018, Plaintiff's counsel contacted DOC's counsel to, among other things, offer to discuss the issue of attorneys' fees and costs in advance of Plaintiff's filing this motion. Townsend Decl. ¶ 3. Plaintiff's counsel sent a follow-up e-mail to DOC's counsel on April 23, 2018, but did not receive a response. *Id.*

## ARGUMENT

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs:" fee eligibility and entitlement. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (citation omitted). Plaintiff satisfies both prongs.

**I.    Plaintiff is *eligible* for an award of attorneys' fees and costs under FOIA.**

A FOIA plaintiff has "substantially prevailed" and is thus eligible to recover fees and costs where the plaintiff "obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C.A. § 552(a)(4)(E)(ii).

4

Here, Plaintiff obtained the relief he sought through the Court's Order of March 30, 2018, which granted his motion for summary judgment and denied DOC's motion for summary judgment. In the Memorandum Opinion accompanying the Order, the Court rejected DOC's asserted reasons for failing to comply with FOIA's fee-setting and fee waiver provisions and remanded the case back to the agency for a reevaluation of the fees Mr. Yanofsky can be charged for the I-92 and I-94 Data Files consistent with these provisions. ECF No. 28; *Yanofsky*, 2018 WL 1583305 at 10. Thus, the Court's Order removed the roadblock that DOC had erected to deny Mr. Yanofsky access to the records he had requested under FOIA.

## II.     Plaintiff is *entitled* to an award of attorneys' fees and costs under FOIA.

Since Plaintiff is clearly eligible for an award of attorneys' fees and costs, the Court must next consider whether he should receive such an award. *Brayton*, 641 F.3d at 524. The legislative history of FOIA and its amendments illuminate the aim of the Act's attorneys' fee provision: "to remove the incentive for administrative resistance to disclosure requests based not on the merits" but "on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977), in turn citing S. Rep. No. 93-854, at 17). Courts have therefore distinguished "between the plaintiff who seeks to advance his private commercial interests and thus needs no incentive to file suit, and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." *Id.* A "grudging application" of § 552(a)(4)(E) "would dissuade those who have been denied information from invoking their right to judicial review" and "be clearly contrary to congressional intent." *Id.*

5

Against this backdrop, courts in this Circuit determine whether a fee award is appropriate by considering four factors:

> (1) the public benefit derived from the case;
> (2) the commercial benefit to the plaintiff;
> (3) the nature of the plaintiff's interest in the records; and
> (4) the reasonableness of the agency's withholding of the requested documents.

*Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks and citation omitted). "Essentially, the first three factors assist a court in distinguishing between requesters"—like Mr. Yanofsky—"who seek documents for public informational purposes and those who seek documents for private advantage." *Davy*, 550 F.3d at 1160. Mr. Yanofsky clearly falls into the first camp and is entitled to a fee award, as set forth below.

    A. <u>The public benefit derived from this case supports an award of fees.</u>

The "public benefit" prong turns on whether the FOIA plaintiff's victory "is likely to add to the fund of public information that citizens may use in making vital political choices." *Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 345 (D.D.C. 2014) (quoting *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)). This analysis "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159. Courts have found that a public benefit was derived from a FOIA case when that suit resulted in the disclosure of new information about issues of "national importance." *Id.* at 1159–60.

This factor weighs in Mr. Yanofsky's favor because, as a result of his case, DOC must comply with the Act and release to him the requested I-92 and I-94 Data Files "in accordance with the FOIA's fee-setting and fee-waiver provisions." *Yanofsky*, 2018 WL 1583305 at *10. These records are likely to contribute significantly to the public's understanding of foreign travel

to the United States, including information such as how many visitors travel here, where they come from, their ages, residency, visa types, and initial travel destinations within the United States.  *Id.* at *1; David Yanofsky, *We won our lawsuit against the US government over paywalled immigration data,* QUARTZ (Apr. 3, 2018), https://qz.com/1242512/we-won-our-lawsuit-against-the-us-government-over-paywalled-immigration-data/.  At a time when restrictions on travel to and from the United States are matters of intense public interest and concern,[1] it is easy to see how the data reflected in the DOC's records could inform the public about issues of national importance.  This information could, for example, afford the public a fuller understanding of the impact of recent executive orders limiting travel from certain countries (e.g., by illuminating how many people previously visited the United States from those countries).  These records could also enable the public to better evaluate the propriety of future travel visa allocations by the government; inform future debates about travel bans when infectious diseases erupt in foreign countries; assist academics and economists who study travel patterns to the United States; and help cities, businesses, and members of the public involved in the tourism industry make more informed choices about how to plan for, and take advantage of, foreign tourism.  Indeed, the value of this information is evidenced by the fact that DOC has been selling these reports and related data files to the public for extraordinarily high fees.  *Yanofsky*, 2018 WL 1583305 at *2.

---

[1] *See, e.g.*, Geneva Sands, *How Trump's revised ban impacts travel and immigration to the US*, ABC News (Sept. 25, 2017), https://abcnews.go.com/US/trumps-revised-ban-impacts-travel-immigration-us/story?id=50083749; Wesley Lowery & Josh Dawsey, *Early chaos of Trump's travel ban set stage for a year of immigration policy debates*, Wash. Post (Feb. 6, 2018), https://www.washingtonpost.com/national/early-chaos-of-trumps-travel-ban-set-stage-for-a-year-of-immigration-policy-debates/2018/02/06/f5386128-01d0-11e8-8acf-ad2991367d9d_story.html?utm_term=.98c3fc72e441; *The Latest: White House says travel ban is working*, Wash. Post (Apr. 25, 2018), https://www.washingtonpost.com/politics/federal_government/the-latest-travel-ban-opponents-protest-at-supreme-court/2018/04/25/5baa7de0-488c-11e8-8082-105a446d19b8_story.html?utm_term=.5195a27e9a42.

In addition, as Mr. Yanofsky explained in his FOIA Request, these documents will "shed light on the operations and activities of the DOC and other government agencies," allowing the public to evaluate and understand their work. Erdmann Decl. Ex. A, ECF 20–1. Specifically, these records will provide:

- "evidence of the information that the federal government collects [] about foreign visitors to the United States, the information the federal government collects about air traffic to and from the United States, and the government's efficacy in collecting this information;"

- "information about how [the Office of Travel Tourism Industries ("OTTI")] fulfills its mission to collect and disseminate travel and tourism information under the U.S. International Air Travel Statistics (I-92 data) Program and the Visitor Arrivals Program (I-94), which will allow the public to assess the efficacy of OTTI and its expenditure of funding allocated to it;"

- "official and up-to-date data on foreign travel to and from the United States, which will allow the public to test and evaluate the accuracy of official DOC and other government statistics on travel that are calculated using this data;" and

- "insight into the data that policy makers use to make decisions, such as visa allocation and levels of infrastructure investment at ports and border crossings."

Erdmann Decl. Ex. A.

The information sought by Mr. Yanofsky's FOIA request, for use in his reporting for *Quartz*, thus has significant political, economic, and social value.

B. <u>Plaintiff has a journalistic interest in these records and received no commercial benefit.</u>

The second factor, a commercial benefit to the plaintiff, and the third factor, the nature of the plaintiff's interest in the records, "are often considered together" to "assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees.'" *Davy*, 550 F.3d at 1160 (internal quotations and citation omitted). The D.C. Circuit "has long recognized," however, that "news interests," like those Mr. Yanofsky's here, "regardless of private incentive, generally should not be considered commercial interests for purposes of the second factor, and

that a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, unless his interest was of a frivolous or purely commercial nature," *Id.* at 1160–61 (internal quotation marks, brackets, and citations omitted). Mr. Yanofsky's interests are clearly not frivolous or purely commercial; in fact, public access to the records at issue are likely to provide ongoing political and social value, as outlined above. Moreover, *Quartz*'s reporting on these records will be free to the public.

Thus, Mr. Yanofsky is a textbook example of a FOIA plaintiff whom the fee award provision was designed to assist: he has no "private commercial interests" in this litigation but instead is "a newsman who seeks information to be used in a publication." *Davy*, 550 F.3d at 1158 (citing *Nationwide Bldg. Maint.*, 559 F.2d at 712-13). As Mr. Yanofsky's February 2016 FOIA request explained, he requested the records here not for a commercial benefit, but as "a representative of the news media" in order "to use the requested records to report and write news stories for *Quartz* about the operations of the DOC and other government agencies, as well as the impact of travel and tourism on the United States." Erdmann Decl. Ex. A. Mr. Yanofsky will review the requested data, "use his editorial skills to turn [it] into a distinct work and will distribute that work to the readers of *Quartz* via its website, qz.com." *Id.* at 2. In enacting FOIA's fees provision, Congress sought to promote precisely this type of journalistic activity aimed at "ferret[ing] out and mak[ing] public worthwhile, previously unknown government information." *Davy*, 550 F.3d at 1160. As the D.C. Circuit has explained, this fee provision was designed to treat "favorably" a FOIA plaintiff who "gathers information of potential interest to a segment of the public, uses his editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Davy*, 550 F.3d at 1161–62 (internal quotation marks, citation, and brackets omitted).

9

C.  DOC was unreasonable in withholding the requested documents.

"The fourth factor considers whether the agency's opposition to disclosure 'had a reasonable basis in law,'" or whether—like here—the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (internal quotation marks and citations omitted).  This prong "is intended to disincentivize requesters from complaining about reasonable withholdings while incentivizing the government to promptly turn over—before litigation is required—any documents that it ought not withhold." *Id.* at 1166 (Tatel, J., concurring).  If the government's reasons for withholding the requested documents were "correct as a matter of law, that will be dispositive," but if the "[g]overnment's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.* at 1162.  The government bears the burden of showing "that it had any colorable or reasonable basis for not disclosing the material." *Id.* at 1163.  DOC cannot meet that burden here.  It repeatedly denied access to the requested records for more than a year and a half, in response to two separate FOIA requests, grounding these denials in ever-changing, meritless arguments.

Mr. Yanofsky filed two FOIA requests for I-92 and I-94 Data Files; he submitted his first request in March 2015.  *Yanofsky*, 2018 WL 1583305 at *2.  DOC denied these requests for inconsistent reasons.  First, DOC erroneously claimed that the ITA did not maintain the I-94 records and that ITA used the I-92 data to develop reports that are offered for sale and were thus exempt from FOIA.  *Id.* at *2.  DOC later abandoned those arguments, conceding in response to Mr. Yanofsky's administrative appeal, that the requested data files were "agency records" subject to FOIA "and thus could not be withheld for the reasons [it] previously stated." *Id.*  Yet rather than release the requested records, DOC then attempted to justify its continued denial by

claiming that 15 U.S.C. § 1525—a statute that merely authorizes the Secretary of Commerce to make "special studies" and "compilations," among other things—displaced FOIA's normal fee-setting and fee waiver provisions, even though Section 1525 failed to "provide[] for setting the level of fees for particular types of records" as required under FOIA's Displacement Provision. *Id.* at *3. When Mr. Yanofsky filed another FOIA request for the same records on February 26, 2016, *id.*, DOC again denied it for the same reasons, citing 15 U.S.C. § 1525. Mr. Yanofsky again administratively appealed that determination; DOC did not respond to that appeal. *Id.*

After Mr. Yanofsky initiated this lawsuit, the lack of merit in DOC's arguments became readily apparent. DOC abandoned its reliance on 15 U.S.C. § 1525, claiming it had cited that provision "in error," *id.* at *4, even though it had no fewer than *four* separate opportunities at the administrative stage in which to reconsider that argument. *Id.* at *3. DOC then asserted a new theory, which it continued to advance through cross-motions for summary judgment: that the superseding fee statute is the Appropriations Act, which pertains to MECEA. *Id.* at *4.

The Court's Order soundly rejects this flimsy argument, repeatedly stressing that this was not even a close question: "it is clear to this Court that the MECEA and Appropriations Act do not specifically pertain to any identifiable set of records, nor set the level of fees for any agency's dissemination of such records, and as such they do not qualify as superseding statutes . . . ." *Id.* at *7. Quoting the relevant language of the two statutes,[2] the Court concluded:

> *Not even the most probing evaluation of this language could reasonably lead one to conclude that it identifies any "particular types of records."* That is, *neither statute refers to any records, documents, or written materials at all,* much less the type of data that the I–92 or I–94 Data Files contain.

---

[2] "When read in conjunction, the MECEA and the Appropriations Act provide that 'foreign governments, international organizations and private individuals, firms, associations, agencies, and other groups shall be encouraged to make contributions to carry out the purposes of this chapter,' 22 U.S.C. § 2455(f), and such contributions 'include payment for assessments for services provided as part of these activities,' Appropriations Act § 9(B), 129 Stat. 2287." *Id.* at *8 (internal ellipses and brackets omitted).

11

*Id.* at *8 (internal brackets and ellipses omitted; emphasis added).  The Court noted DOC's anemic response to this analysis, only citing one, unpublished, inapposite case where the parties had *agreed* that the statute at issue there superseded FOIA's fee-setting provision. *Id.*  The Court went on to state that it "has serious doubts about whether the MECEA and the Appropriations Act authorize the DOC to set any 'fees' at all." *Id.* at *9.  It pointed out that "nothing" in these statutes "speaks to the agency's task of 'setting the level of fees'" as required by the FOIA Displacement Provision, noting that "[a]t best" they merely authorized DOC to collect "payment for assessments for services," though that language provided "no guidance as to *how* the DOC should calculate these 'assessments.'" *Id.* (emphasis in original).  The Court also stressed the "stark contrast" between the "silence" in these two statutes "regarding how the fees are to be calculated" and the "statutes that the D.C. Circuit and Congress have acknowledged as superseding fee-setting statutes within the meaning of FOIA." *Id.*  Ultimately, the Court concluded that the MECEA and Appropriations Act could not "plausibly be read" to supersede FOIA's fee-setting provision. *Id.* at *10.

  DOC's repeated refusal to provide Plaintiff with the records he requested under FOIA based on implausible—and even admittedly erroneous—arguments epitomizes the type of recalcitrance the FOIA fee award provision was designed to discourage.  In fact, courts have found this factor to weigh in favor of a fee award in cases involving for far less obstructive behavior by an agency, such as failing to respond at the administrative stage (which DOC also did here).  *See Davy*, 550 F.3d at 1166 (Tatel, J., concurring) (explaining that the fourth prong's purpose "will be ill-served if the government can prevail on this factor by saying nothing and forcing the requester to sue, only then to offer no resistance"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 231 (D.D.C. 2011) ("Even though DOJ's conduct after the suit

12

was filed was generally reasonable, [its] initial failure to respond [at the administrative stage] still weighs in favor of a fee award.").

In sum, because Mr. Yanofsky has substantially prevailed in this case, and because all four factors clearly weigh in favor of Plaintiff's entitlement to an award of attorneys' fees, the Court should grant this motion and award him reasonable attorneys' fee and costs.

### III. Plaintiffs' attorneys' fees are reasonable.

Once a court has determined that an award of fees is warranted under FOIA, it must determine whether the requested amount is "reasonable." 5 U.S.C. § 552(a)(4)(E)(i). In determining the reasonableness of attorneys' fees, courts consider whether (1) the attorneys' hourly rates and (2) the amount of time attorneys spent on the case are reasonable. *Judicial Watch*, 774 F. Supp. 2d at 232. Once the court has identified "a reasonable hourly fee" and the number of "hours reasonably expended in the litigation," these two numbers are multiplied together to produce the "lodestar" amount. *Id.* at 231–32 (internal citation omitted).

Here, Plaintiff seeks an award of attorneys' fees in an amount no less than $72,991.00, the current amount of Plaintiff's attorneys' fees based on the lodestar calculations of the respective hours spent on this case and the reasonable hourly rates of Mr. Yanofsky's counsel as set forth in the attached Townsend Declaration and exhibits thereto. Townsend Decl. ¶ 21. Plaintiff also seeks $400.00 in costs, specifically, filing fees. *Id.* Plaintiff will supplement these amounts of attorneys' fees and costs in any reply to account for additional time expended after filing this motion. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) ("It 'is settled in this [C]ircuit' that 'hours reasonably devoted to a request for fees are compensable.'").

### A. The hours spent by Plaintiff's attorneys on this matter are reasonable.

13

This lawsuit has spanned nearly two years, from May 19, 2016, when Yanofsky filed the Complaint, to the date of this petition for attorneys' fees, following the Court's grant of summary judgment in Mr. Yanofsky's favor. During this time, Plaintiff's attorneys, among other things, drafted the Complaint; reviewed and evaluated DOC's Answer and the new legal arguments it asserted regarding the MECEA and Appropriations Acts; prepared Plaintiff's combined opposition to DOC's motion for summary judgment and cross-motion for summary judgment and all supporting documents, as well as a reply in support of Plaintiff's cross-motion for summary judgment; prepared for oral argument on the cross-motions for summary judgment; and drafted this fee petition.

Concurrently with this fee petition, Mr. Yanofsky submits to the Court accurate records of the time spent by his pro bono counsel from the Reporters Committee for Freedom of the Press ("Reporters Committee") on this matter, consisting of printouts from the Reporters Committee attorneys' internal timekeeping system. Townsend Decl. ¶ 19. Those records set forth in detail each task for which Mr. Yanofsky seeks fees and the amount of time taken to complete each of them. *See* Townsend Decl. ¶ 19, Ex. B. As set forth in the attached declaration and exhibits, Mr. Yanofsky's attorneys' hours for this matter are:

- Katie Townsend (Litigation Director):  53.2 hours
- Adam Marshall (Staff Attorney):  35.0 hours
- Sarah Matthews (Staff Attorney): 25.7 hours
- Caitlin Vogus (Staff Attorney):  36.1 hours through May, 2016, and 51.0 hours after May, 2016.

Townsend Decl. ¶ 19.

Given the nature of this case and the need to litigate it through summary judgment due to DOC's unreasonable legal positions, described above, the amount of time spent by Reporters Committee attorneys was reasonable. Townsend Decl. ¶ 20. The Reporters Committee's Litigation Director, Katie Townsend, has reviewed the attached billing records to ensure that they are accurate. *Id.*

### B. Plaintiff's attorneys' hourly rates are reasonable.

An attorney's reasonable hourly rate is generally determined "'according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel.'" *Judicial Watch*, 774 F. Supp. 2d at 232 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The reasonableness of an attorney's hourly rates also considers the attorney's "billing practices," "skill, experience, and reputation." *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).

As reflected in the attached Townsend Declaration, Mr. Yanofsky has been represented throughout this litigation by attorneys from the Reporters Committee.[3] These attorneys have differing hourly rates based on their respective experience, which is described in the concurrently filed Townsend Declaration. Townsend Decl. ¶¶ 8–18. All legal services provided by Reporters Committee attorneys—including in this case—are provided on a *pro bono* basis. *Id.* at ¶¶ 5–7.

For purposes of this fee petition, Plaintiff is utilizing the applicable hourly rates set forth in the recently revised matrix by the Civil Division of the U.S. Attorney's Office for the District of Columbia ("USAO Matrix"), a true and correct copy of which is attached as Exhibit A to the

---

[3] The Reporters Committee is a 501(c)(3) nonprofit association headquartered in Washington, D.C. that has been dedicated to assisting journalists and protecting First Amendment freedoms since 1970. Reporters Committee About Us, https://www.rcfp.org/about.

15

Townsend Declaration.  *See* Townsend Decl. ¶ 6, Ex. A n.1.  The USAO Matrix was calculated from average hourly rates for the D.C. metropolitan area, reported in ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  Ex. A, n.2.  These rates have been adjusted for inflation using the Producer Price Index–Office of Lawyers index.  *Id.*

The hourly rates reflected in the USAO Matrix likely fall *below* the reasonable market rates for federal complex litigation in the D.C. area, given that they are lower than the rates set forth in the LSI *Laffey* matrix,[4] which is itself a "conservative estimate" of the actual cost of legal services in this area.  *See Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015) ("With these numbers and submissions in the record, the district court's point that 'the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area,' does not appear illogical.") (emphasis in original); *id.* at 65 ("On average, the LSI *Laffey* Matrix rates were 14% lower than the average national law firm rates for all experience levels in this time period.").  Indeed, the USAO Matrix has been criticized for being overbroad, including data from Virginia, West Virginia, and Maryland and "obscur[ing] rates data for complex federal litigation by combining rates from complex litigation with rates from non-complex litigation." *Gatore v. U.S. Dep't of Homeland Sec.*, 286 F. Supp. 3d 25, 38 (D.D.C. 2017) (acknowledging expert affidavit challenging USAO Matrix).

However, given the Government's acceptance of the "reasonableness" of the hourly rates set forth in the USAO Matrix,[5] to avoid any dispute as to the "reasonable" hourly rates to be

---

[4] The rates set by the USAO Matrix fall well below the rates set in the *Laffey* matrix, which is updated yearly in accordance with the Legal Services Index of the Consumer Price Index.  *Compare* Townsend Decl. Ex. A *with* LSI *Laffey* Matrix, available at Fee Award Litigation, Terris, Pravlik & Millian, LLP, http://www.tpmlaw.com/fees/ (e.g., an attorney with ten years of experience would receive $636/hour under the LSI *Laffey* Matrix but only $410 on the USAO Matrix).

[5] *See* Townsend Decl. Ex. A n.1 (noting that the USAO Matrix "is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees" and citing FOIA, 5 U.S.C. § 552(a)(4)(E), as an example of such a statute; *see also Gatore*, 286 F. Supp. 3d at 37 (FOIA case in which

applied here and to minimize the number of hours expended by Plaintiff's attorneys in connection with this fee petition, Plaintiff's requested fee award in this case has been calculated using the hourly rates set forth in the USAO Matrix.  Townsend Decl. ¶ 21.

Based on the 201 hours worked by Reporters Committee attorneys on this matter and their respective hourly rates under the USAO Matrix, the total amount of reasonable attorneys' fees to date in this matter is $72,991.00.  Townsend Decl. ¶ 21.  The total amount of costs (filing fees) in this matter to date is $400.00.  *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and enter an order requiring DOC to pay Plaintiff's reasonable attorneys' fees and costs in an amount no less $73,391.00.

Dated:  May 14, 2018

Respectfully submitted,

*/s/ Katie Townsend*

Katie Townsend
DC Bar No. 1026155
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
Email:  ktownsend@rcfp.org
Email:  amarshall@rcfp.org

*Counsel for Plaintiff*

---

government proffered new USAO Matrix as reasonable estimate of "prevailing rates for complex federal litigation in this District").

17