## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DAVID YANOFSKY**,<br><br>                 Plaintiff,<br><br>        v.<br><br>**UNITED STATES DEPARTMENT OF COMMERCE,**<br><br>                 Defendant. | Civil Action No. 1:16-cv-00951 (KBJ) |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE JUDGMENT

The opposition to Plaintiff David Yanofsky's Motion to Enforce Judgment filed by Defendant Department of Commerce ("DOC"), ECF No. 42 (the "Opposition") makes clear that DOC (1) has not released the I-92 and I-94 data files requested by Mr. Yanofsky and (2) is continuing to withhold those data files in flagrant violation of its obligations under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), and this Court's March 30, 2018 Order granting summary judgment in Mr. Yanofsky's favor, ECF No. 29 (the Court's "Judgment").  Indeed, far from providing any basis for denying Plaintiff's Motion, the Opposition concedes DOC's non-compliance with the Court's Judgment and supports Plaintiff's request for a further order requiring DOC to immediately release the I-92 and I-94 data files to Mr. Yanofsky, as it should have done many months ago.

DOC has submitted a sworn declaration averring that the records it released to Mr. Yanofsky following entry of this Court's Judgment are *not* the I-92 and I-94 data files Plaintiff requested, but instead "standardized" summary reports created using those data files.  Decl. of Isabel Hill ("Hill Decl."), ECF No. 42-1, at ¶ 23; *cf. Yanofsky v. United States Dep't of Commerce*, 306 F. Supp. 3d 292, 295 (D.D.C. 2018) (describing difference between

"standardized" summary reports and data files).  Moreover, DOC's Opposition—like its previous submissions to this Court—confirms that the I-92 and I-94 data files requested by Mr. Yanofsky exist, and are not so-called "custom reports" that the DOC needs to "create". Opposition at 2.  Simply put, DOC creates the I-92 and I-94 data files by processing and (when necessary) anonymizing "raw" data it obtains from Customs and Border Protection ("CBP"). *Id.*; Hill Decl. at ¶¶ 13, 18.  Those anonymized, processed data files are then used by DOC to create both "standardized" and "customized" reports that DOC sells to its industry "clients" for substantial amounts of money.  Opposition at 2; Hill Decl. at ¶¶ 13, 18; Exs. C, E to Decl. of Katie Townsend, ECF Nos. 41-6 & 41-8 (showing prices for 2015 reports).  Mr. Yanofsky requested, and he is entitled to obtain under FOIA, the underlying I-92 and I-94 data files—the records for which DOC previously attempted to charge him $173,755.00.  DOC's continued refusal to release those records is inexcusable.

DOC's Opposition attempts to obfuscate the straightforward issue now before the Court. It asserts brand new and wholly irrelevant arguments regarding DOC's purported ability to release "raw data" and whether it considers the "parameters requested" by its industry "clients" for "customized" reports to be "business proprietary information."  *See*, *e.g.*, Opposition at 1–3, 6–7.  Yet none of this speaks to—let alone justifies—DOC's continued refusal, in the face of this Court's Judgment in Plaintiff's favor, to respond to Plaintiff's FOIA request for DOC's underlying I-92 and I-94 data files.  DOC's effort to re-litigate this case now, in opposition to a motion to enforce an existing judgment, is baseless and improper.

Mr. Yanofsky's FOIA request has been pending for almost three years.  During that time DOC has invented excuse after excuse to withhold the data files Plaintiff is entitled to under the Act so that it can maintain its ability to derive a profit from selling "products" created using those data files to its industry "clients."  DOC's continued dilatory tactics, well after this Court's unambiguous judgment in Plaintiff's favor, should not be countenanced by the Court.  Mr.

Yanofsky respectfully requests that his Motion be granted and Defendant ordered to immediately release the data files responsive to his FOIA request.

## ARGUMENT

### I.     DOC has the data files Plaintiff requested; it is simply refusing to release them.

Contrary to the misrepresentations made by DOC to Plaintiff following entry of the Court's Judgment, the Opposition admits that the I-92 and I-94 data files responsive to Plaintiff's FOIA request exist and have not been released to Mr. Yanofsky; DOC concedes that the "standardized" reports that it claimed satisfied Mr. Yanofsky's FOIA request are merely summaries that DOC creates using the data files, and sells for a much lower price.  Opposition at 3; Hill Decl. at ¶ 23.

Like the declaration of Ronald Erdman that DOC submitted in support of its motion for summary judgment, the declaration of Isabel Hill filed with its Opposition makes clear that the I-92 and I-94 data files—which consist of processed, anonymized data about travelers to the United States—exist.  *See* Decl. of Ronald Erdman, ECF No. 20-1 ("Erdman Decl.") at ¶ 4 ("ITA also maintains and utilizes a data file related to the report ('I-92 Data File'), which consists of anonymized data about air travelers between the United States and other countries."); *id.* at ¶ 5 ("ITA also sells quarterly and annual publications of a data file called 'Air Arrivals I-94 Database (Detail Arrival Records)' ('I-94 Data File'), which consists of anonymized data about foreign visitors to the United States."); Hill Decl. at ¶¶ 12–13 (describing, with respect to I-92 data, how CBP sends raw data to DOC, which is then "[p]rocesse[d]" including by "anonymizing it"); *id.* at ¶¶ 17–18 (describing, with respect to I-94 data, how CBP transmits raw data to DOC's contractor, who "extracts, aggregates, and anonymizes data relevant to travel and tourism[]"); *see also* Opposition at 6 (stating that, with respect to I-92 data, raw CBP data is "process[ed]" by ITA "using a program called SQL" and "convert[ed] . . . into a format that can be used by

NTTO.")  The I-92 and I-94 data files containing processed, anonymized data are what Plaintiff requested.  *See, e.g.*, Compl., ECF No. 1, at ¶ 41 & Ex. H; *Yanofsky*, 306 F. Supp. 3d at 295.

The Opposition also makes clear that the I-92 and I-94 data files are separate and distinct from the "raw" data DOC obtains from CBP, *see* Hill Decl. at ¶¶ 10–11, 16–17, and from both the "standardized" summary "reports" sold by DOC for a set price and the "customized" products that DOC will create to the specifications—or "specs"—requested by its "clients" for varying prices, *id.* at ¶¶ 13, 20.[1]  Simply put, the I-92 and I-94 data files are *created from* raw CBP data provided to DOC; those data files are then *used to create* both the "standardized" and "customized" "products" that are "sold" by DOC.  *See, e.g.*, Erdman Decl. ¶¶ 4–5; Hill Decl. ¶¶ 12–13, 17–20.

Further, in its Opposition DOC now concedes that the records it provided to Mr. Yanofsky following this Court's Judgment—the records it told Plaintiff satisfied his FOIA

---

[1] Defendant's Opposition is replete with references to "customized data files", while their own websites make no reference, whatsoever, to such items.  Indeed, Defendant has submitted two incredibly misleading appendices to the Declaration of Isabel Hill that appear to be an attempt to sow confusion.  *See* Hill Decl., ECF No. 42-1, at Appendix I–II (ECF pages 12–15).  Appendix I includes a table of 2015 I-92 "reports" and their "price[s]" that, at first glance, appears to mirror the DOC's website.  *Compare id. with* Ex. C to Decl. of Katie Townsend, ECF No. 41-6 (printout of 2015 I-92 website).  However, the version of this table attached to the Hill Declaration inexplicably renames the "Data Files" on their website "Customized Data Files".  *Id.*  Further, "Data Files, for internal use only", as listed on the DOC's 2015 I-92 website, are identified as "Customized, processed data files for internal use by purchaser" in the Hill Declaration Appendix.  *Id.*  Similarly, the items listed on the DOC's 2015 I-94 website have been inexplicably modified and re-labeled in Appendix II to the Hill Declaration.  *Compare* Ex. E to Decl. of Katie Townsend, ECF No. 41-8 (printout of 2015 I-94 website) *with* Hill Decl. at Appendix II (modified table).  A reproduction of those misleading changes is below:

These data files are for the purchaser's use only. Re-sale arrangements must be made through the National Travel and Tourism Office (NTTO).

| Air Arrivals I-94 Database (Detail Arrival Records) | |
|---|---|
| **2015 Publications** | **Annual Price** |
| Annual datafile | $13,820.00 |
| Quarterly datafile (For internal use only) | $15,510.00 |

| Custom Reports (to your specs) and Trend Data | |
|---|---|
| **2015 Publications** | **Annual Price** |
| Available in print, excel and adobe format. | Call for Quote |

(DOC Website, Ex. E to Decl. of Katie Townsend)

**II.   Customized Reports**

Prices for Customized Reports sold by NTTO in 2015 are listed in the chart below, and are available on NTTO's website.

| 2015 Custom Reports | Price |
|---|---|
| Available in PDF, Excel, and Adobe Format | Call NTTO's Contractor for Quote |

**III.   Customized Data Files**

Prices for Customized Data Files sold by NTTO in 2015 are listed in the chart below, and are available on NTTO's website.

| 2015 | Prices |
|---|---|
| Annual Datafile | $13,820.00 |
| Quarterly Datafile | $15,510.00 |

(Appendix II to Decl. of Isabel Hill)

request—are *not* the I-92 or I-94 data files he requested.  *See* Hill Decl. at ¶ 23.  As Plaintiff's

Motion correctly points out, *see* ECF No. 41-1 at 5–8, the records that have been provided to

Plaintiff by DOC consist of routinely-published "standardized" reports containing aggregate and

summary statistics; they are entirely different records than the I-92 and I-94 data files, and are

"sold" by DOC for a much lower price.  *See, e.g.*, Mem. In Support of Pl.'s Mot to Enforce, ECF

No. 41-1 at 3–8; Exs. C, E to Decl. of Katie Townsend, ECF Nos. 41-6 & 41-8 (showing prices

for 2015 reports).  With respect to the I-92 program, Ms. Hill's declaration states that "[e]ach

Excel file [provided to Plaintiff] is a Standardized Report, known as the *U.S. International Air*

*Travel Statistics Report*[.]"  Hill Decl., at ¶ 23.  And with respect to the I-94 program, Ms. Hill

states that the "five Excel files" provided to Plaintiff contain the "annual report tables . . . [that]

make up the Standardized Report, known as the *Summary of International Travel to the United*

*States* report[.]"  *Id.*  As the Court's Judgment, Plaintiff's Motion, and Defendant's own sworn

declarations all make abundantly clear, those "reports" are not the data files that Plaintiff

requested and that the Court found he was entitled to under FOIA.  *See Yanofsky*, 306 F. Supp.

3d at 295; Mem. In Support of Pl.'s Mot. to Enforce J., ECF No. 41-1, at 2–8; Erdman Decl., at

¶¶ 4–5; Hill Decl., at ¶¶ 12–13, 17–20, 23.

DOC's efforts to pass off its "standardized reports" as the I-92 and I-94 data files

requested by Plaintiff following entry of this Court's Judgment, *see, e.g.*, Decl. of Katie

Townsend at Ex. K, ECF No. 41-14, smacks of incredible bad faith.  And the DOC's current

efforts to oppose enforcement of the Court's Judgment by presenting inapplicable arguments

about "raw CBP data" and "customized" products are no better.  There has never been any

question or dispute—from the moment that Mr. Yanofsky initially requested I-92 and I-94 data

files from DOC under FOIA to now—as to what records he was requesting.  DOC's continued

refusal to release those records to Plaintiff violates the Act and this Court's Judgment.

**II.     DOC cannot re-litigate this FOIA case post-judgment; there is no basis for DOC to refuse to comply with the Court's Judgment.**

DOC devotes much of its Opposition to asserting a slate of brand new arguments that it never made to the Court prior to entry of the Judgment in Plaintiff's favor.  Among other things, Defendant now appears to contend that the I-92 and I-94 data files "have not been created[,]" Opposition at 1, that "raw data requested by Plaintiff belongs to" CBP, *id.* at 2, and that certain "[ c]ustomized" data files that DOC sold to its "clients" contain "business proprietary information[,]" *id.* at 1.  These assertions are either wrong as a factual matter (and belied by DOC's own evidence), *see supra* Section I, or completely irrelevant.  And, in any event, Defendant's attempt to raise new arguments, post-judgment, is wholly improper.

Prior to entry of the Court's Judgment, DOC <u>never</u> asserted that the data files requested by Mr. Yanofsky do not exist, or are "customized" data files that would need to be "created" by it or its contractor; nor did DOC claim that existing "customized data files" it created for its "clients" from 2011 through 2015 are, in its view, "business proprietary information."[2] Opposition at 1–2.  Indeed, DOC's <u>*sole basis*</u> for withholding the data files requested by Mr. Yanofsky was its contention—rejected by this Court—that it was statutorily authorized to withhold them unless and until Mr. Yanofsky paid exorbitant fees.  S*ee* Mem. of L. In Support of Def.'s Mot for Summ. J., ECF No. 20 ("Defendant's MSJ") at 1 (ECF page no. 9) (arguing that "Defendant properly withheld the publications sought by Plaintiff because Plaintiff has refused to pay the fee chargeable, pursuant to statute, for the publications[]"); *id.* at 2 (arguing that the records "sought by Plaintiff were properly withheld, however, because Plaintiff has refused to pay the statutorily-mandated fees required to obtain them[]"); *id.* at 4 (asserting that "Plaintiff— like everyone else—must purchase the publications at issue and may not use FOIA to bypass the

---

[2] Nowhere does Defendant define what "business proprietary information" is or how it is relates to FOIA or DOC's obligations under the Act.  Indeed, DOC makes no attempt to explain its relevance here, or if it has any legal meaning at all.

purchase price."); Reply Mem. of Law. In Further Support of Def.'s Mot. for Summ. J. and in

Opp. to Pl.'s Mot. for Summ. J., ECF No. 23 ("Defendant's Reply"), at 3 (stating that DOC had

not "changed its position since the administrative proceeding[,]" and that in "its summary

judgment motion, DOC argued that its withholding of records is proper under Section

552(a)(4)(A)(vi) because Plaintiff has failed to pay applicable fees.").

During the course of this litigation, DOC admitted that the records requested by Mr.

Yanofsky "are within the possession, custody, and/or control" of DOC.  Answer, ECF No. 14, at

¶¶ 61, 66, 72, 81, & 88; *see also* Opposition at 6 (stating, for I-92 data files, that "[p]rocessed

data is owned by NTTO and can be purchased by clients from NTTO[]"); *id.* at 8 (stating same

for I-94 data files).  During summary judgment briefing, DOC admitted that it "maintains and

uses" the I-92 data files, and that it has "possession, custody, and/or control of the I-92 Data

Files."  Def's Resp. to Pl.'s Statement of Material Facts as to Which There is No Genuine Issue,

ECF No. 23-1, at ¶¶ 18-19.  DOC likewise admitted that it has "possession, custody, and/or

control of the 'Air Arrivals I-94 Database (Detail Arrival Records' (the 'I-94 Data File')."  *Id.* at

¶ 22.  DOC further conceded that the records requested by Plaintiff are not exempt—in whole or

in part—from disclosure under FOIA.  Indeed, DOC made expressly clear to Plaintiff and the

Court that it was "not claiming that the documents sought by Plaintiff are protected from

disclosure by any FOIA exemptions[,]" noting that "[i]ndeed, the agency regularly provides

these materials to members of the public who pay" the fees it charges for them.  Defendant's

Reply at 16.

Defendant never sought to alter or amend the Court's Judgment.  *Cf.* Fed. R. Civ. P. 59(e)

(motion to alter or amend judgment must be filed no later than 28 days after entry of the

judgment).  Nor could it have: "A losing party may not . . . use a Rule 59(e) motion to

relitigate old matters, or to raise new arguments or present evidence that could have been raised

prior to the entry of judgment." *Daniel v. Smoot*, 316 F. Supp. 3d 79, 87 (D.D.C. 2018) (quoting *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008)) (internal quotation omitted).  The Court's Judgment is final, and Defendant cannot attempt to re-litigate this case now on wholly different grounds.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion and order DOC to immediately release to Plaintiff the records he requested.

Dated:  December 14, 2018

Respectfully submitted,

 */s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org

*Counsel for Plaintiff*